# EXHIBIT 1

## Welsh, Kelly (DC)

| | |
|---|---|
| **From:** | Grabowski, Alex (CH) |
| **Sent:** | Thursday, September 26, 2024 10:03 AM |
| **To:** | Welsh, Kelly (DC); akayal@windelsmarx.com; amiller@windelsmarx.com; chuttner@windelsmarx.com; dtaylor@skjlaw.com; mdaughton@skjlaw.com; nbelgam@skjlaw.com; vkm@skjlaw.com; rast-gmoser@windelsmarx.com |
| **Cc:** | #C-M EAGLE BENDAMUSTINE LITIGATION - LW TEAM; Eagle Litigation; DSilver@McCarter.com; amiller@mccarter.com; Proctor, Wyley; ajoyce@mccarter.com; mzare@mccarter.com |
| **Subject:** | RE: Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC, C.A. No. 24-65-JLH (D. Del) |

Counsel,

Please let us know when we can expect a response to the below discovery correspondence.

Best,
Alex

**Alex Grabowski**

**LATHAM & WATKINS** LLP
330 North Wabash Avenue, Suite 2800 | Chicago, IL 60611
D: +1.312.876.6556

---

**From:** Welsh, Kelly (DC) <Kelly.Welsh@lw.com>
**Sent:** Monday, August 26, 2024 3:58 PM
**To:** akayal@windelsmarx.com; amiller@windelsmarx.com; chuttner@windelsmarx.com; dtaylor@skjlaw.com; mdaughton@skjlaw.com; nbelgam@skjlaw.com; vkm@skjlaw.com; rast-gmoser@windelsmarx.com
**Cc:** #C-M EAGLE BENDAMUSTINE LITIGATION - LW TEAM <EAGLEBENDAMUSTINELITIGATION.LWTEAM@lw.com>; Eagle Litigation <EagleLitigation@McCarter.com>; DSilver@McCarter.com; amiller@mccarter.com; Proctor, Wyley <wproctor@McCarter.com>; ajoyce@mccarter.com; mzare@mccarter.com
**Subject:** Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC, C.A. No. 24-65-JLH (D. Del)

Counsel,

Please see the attached correspondence.

Regards,
Kelly

**Kelly A. Welsh**

**LATHAM & WATKINS** LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Direct Dial: +1.202.350.5361
Email: kelly.welsh@lw.com
https://www.lw.com

# EXHIBIT 2

**Shah, Rushabh (CH)**

---

| | |
|---|---|
| **From:** | Vallabhaneni, Ramya (NY) |
| **Sent:** | Thursday, March 20, 2025 6:44 PM |
| **To:** | Hancock, Sydney (ATX); Lief, Jason A.; Welsh, Kelly (DC); Kayal, Ajay; Miller, Andrew; Huttner, Constance; dtaylor@skjlaw.com; mdaughton@skjlaw.com; nbelgam@skjlaw.com; vkm@skjlaw.com; Ast-Gmoser, Robyn |
| **Cc:** | #C-M EAGLE BENDAMUSTINE LITIGATION - LW TEAM; EagleLitigation@McCarter.com |
| **Subject:** | RE: Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC, C.A. No. 24-65-JLH (D. Del.) |
| **Attachments:** | 3.4.2025 Ltr. from R. Vallabhaneni.pdf |

Counsel:

==It has been over two weeks since we raised the multiple deficiencies with Slayback's document productions to date. Please provide your responses to each of the issues outlined in the letter by **Monday, March 24**, or provide your availability to meet and confer next week.==

Regards,
Ramya

**Ramya Sri Vallabhaneni**
*Pronouns: she/her/hers*

**LATHAM & WATKINS** LLP
1271 Avenue of the Americas | New York, NY 10020
D: +1.212.906.2931

---

**From:** Hancock, Sydney (ATX) <Sydney.Hancock@lw.com>
**Sent:** Tuesday, March 4, 2025 4:52 PM
**To:** Lief, Jason A. <jlief@windelsmarx.com>; Welsh, Kelly (DC) <Kelly.Welsh@lw.com>; Kayal, Ajay <akayal@windelsmarx.com>; Miller, Andrew <amiller@windelsmarx.com>; Huttner, Constance <chuttner@windelsmarx.com>; dtaylor@skjlaw.com; mdaughton@skjlaw.com; nbelgam@skjlaw.com; vkm@skjlaw.com; Ast-Gmoser, Robyn <rast-gmoser@windelsmarx.com>
**Cc:** #C-M EAGLE BENDAMUSTINE LITIGATION - LW TEAM <EAGLEBENDAMUSTINELITIGATION.LWTEAM@lw.com>; EagleLitigation@McCarter.com
**Subject:** RE: Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC, C.A. No. 24-65-JLH (D. Del.)

Counsel,

Please see the attached correspondence.

Regards,
Sydney

**Sydney E. Hancock**

**LATHAM & WATKINS** LLP
300 Colorado St., Suite 900
Austin, TX 78701
Direct Dial: +1.737.910.7396
Email: sydney.hancock@lw.com

1

# EXHIBIT 3

**Shah, Rushabh (CH)**

| | |
|---|---|
| **From:** | Vallabhaneni, Ramya (NY) |
| **Sent:** | Thursday, March 27, 2025 10:05 AM |
| **To:** | Hancock, Sydney (ATX); Lief, Jason A.; Welsh, Kelly (DC); Kayal, Ajay; Miller, Andrew; Huttner, Constance; dtaylor@skjlaw.com; mdaughton@skjlaw.com; nbelgam@skjlaw.com; vkm@skjlaw.com; Ast-Gmoser, Robyn |
| **Cc:** | #C-M EAGLE BENDAMUSTINE LITIGATION - LW TEAM; EagleLitigation@McCarter.com |
| **Subject:** | RE: Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC, C.A. No. 24-65-JLH (D. Del.) |

Counsel:

It has now been over three weeks since we sent our March 4 letter, and we have yet to hear anything from Slayback.  Thus, please provide your availability to meet and confer on **Monday, March 31** between 11:30 am ET and 2:30 pm ET regarding two of the issues outlined in the March 4 letter: (1) Slayback's Rule 26(a)(1) and Paragraph 3 disclosures; and (2) Slayback's responses to RFP Nos. 32, and 73-79.  To be clear, Eagle is not waiving any of the other issues raised in the March 4 letter and reserves the right to raise those issues with both Slayback and the Court at a later date if necessary.

If you continue to ignore our requests to meet and confer, we will raise the above two issues with the Court next week.

Regards,
Ramya

**Ramya Sri Vallabhaneni**
*Pronouns: she/her/hers*

**LATHAM & WATKINS** LLP
1271 Avenue of the Americas | New York, NY 10020
D: +1.212.906.2931

---

**From:** Vallabhaneni, Ramya (NY)
**Sent:** Thursday, March 20, 2025 7:44 PM
**To:** Hancock, Sydney (ATX) <Sydney.Hancock@lw.com>; Lief, Jason A. <jlief@windelsmarx.com>; Welsh, Kelly (DC) <Kelly.Welsh@lw.com>; Kayal, Ajay <akayal@windelsmarx.com>; Miller, Andrew <amiller@windelsmarx.com>; Huttner, Constance <chuttner@windelsmarx.com>; dtaylor@skjlaw.com; mdaughton@skjlaw.com; nbelgam@skjlaw.com; vkm@skjlaw.com; Ast-Gmoser, Robyn <rast-gmoser@windelsmarx.com>
**Cc:** #C-M EAGLE BENDAMUSTINE LITIGATION - LW TEAM <EAGLEBENDAMUSTINELITIGATION.LWTEAM@lw.com>; EagleLitigation@McCarter.com
**Subject:** RE: Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC, C.A. No. 24-65-JLH (D. Del.)

Counsel:

It has been over two weeks since we raised the multiple deficiencies with Slayback's document productions to date.  Please provide your responses to each of the issues outlined in the letter by **Monday, March 24**, or provide your availability to meet and confer next week.

Regards,
Ramya

# EXHIBIT 4

**Shah, Rushabh (CH)**

| | |
|---|---|
| **From:** | Grabowski, Alex (CH) |
| **Sent:** | Tuesday, April 1, 2025 11:02 AM |
| **To:** | Vallabhaneni, Ramya (NY); Hancock, Sydney (ATX); Lief, Jason A.; Welsh, Kelly (DC); Kayal, Ajay; Miller, Andrew; Huttner, Constance; dtaylor@skjlaw.com; mdaughton@skjlaw.com; nbelgam@skjlaw.com; vkm@skjlaw.com; Ast-Gmoser, Robyn |
| **Cc:** | #C-M EAGLE BENDAMUSTINE LITIGATION - LW TEAM; EagleLitigation@McCarter.com |
| **Subject:** | RE: Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC, C.A. No. 24-65-JLH (D. Del.) |
| **Attachments:** | Eagle v. Slayback Discovery TC Motion.docx |

Counsel,

<mark>As our third request for a meet and confer has not received any response, we intend to seek relief from the Court. Attached is a copy of the request for a discovery dispute teleconference. If any of the proposed dates present a conflict, please let us know today and provide an alternate date. Absent a response, we plan to file this motion with the current set of dates tomorrow.</mark>

-Alex

**Alex Grabowski**

**LATHAM & WATKINS** LLP
330 North Wabash Avenue, Suite 2800 | Chicago, IL 60611
D: +1.312.876.6556

**From:** Vallabhaneni, Ramya (NY) <Ramya.Vallabhaneni@lw.com>
**Sent:** Thursday, March 27, 2025 10:05 AM
**To:** Hancock, Sydney (ATX) <Sydney.Hancock@lw.com>; Lief, Jason A. <jlief@windelsmarx.com>; Welsh, Kelly (DC) <Kelly.Welsh@lw.com>; Kayal, Ajay <akayal@windelsmarx.com>; Miller, Andrew <amiller@windelsmarx.com>; Huttner, Constance <chuttner@windelsmarx.com>; dtaylor@skjlaw.com; mdaughton@skjlaw.com; nbelgam@skjlaw.com; vkm@skjlaw.com; Ast-Gmoser, Robyn <rast-gmoser@windelsmarx.com>
**Cc:** #C-M EAGLE BENDAMUSTINE LITIGATION - LW TEAM <EAGLEBENDAMUSTINELITIGATION.LWTEAM@lw.com>; EagleLitigation@McCarter.com
**Subject:** RE: Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC, C.A. No. 24-65-JLH (D. Del.)

Counsel:

It has now been over three weeks since we sent our March 4 letter, and we have yet to hear anything from Slayback. Thus, please provide your availability to meet and confer on **Monday, March 31** between 11:30 am ET and 2:30 pm ET regarding two of the issues outlined in the March 4 letter: (1) Slayback's Rule 26(a)(1) and Paragraph 3 disclosures; and (2) Slayback's responses to RFP Nos. 32, and 73-79. To be clear, Eagle is not waiving any of the other issues raised in the March 4 letter and reserves the right to raise those issues with both Slayback and the Court at a later date if necessary.

If you continue to ignore our requests to meet and confer, we will raise the above two issues with the Court next week.

Regards,
Ramya

**Ramya Sri Vallabhaneni**

# EXHIBIT 5

**Shah, Rushabh (CH)**

| | |
|---|---|
| **From:** | Vallabhaneni, Ramya (NY) |
| **Sent:** | Friday, April 11, 2025 10:20 AM |
| **To:** | Ast-Gmoser, Robyn; Grabowski, Alex (CH); Hancock, Sydney (ATX); Lief, Jason A.; Welsh, Kelly (DC); Miller, Andrew; Huttner, Constance; dtaylor@skjlaw.com; mdaughton@skjlaw.com; nbelgam@skjlaw.com; vkm@skjlaw.com |
| **Cc:** | #C-M EAGLE BENDAMUSTINE LITIGATION - LW TEAM; EagleLitigation@McCarter.com |
| **Subject:** | RE: Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC, C.A. No. 24-65-JLH (D. Del.) |

Robyn:

We have yet to receive a response on the below issues, despite Slayback's commitment to respond on or before April 9.  Please promptly provide a response by EOD today, **April 11.**  Absent any response from Slayback by that time, we will bring these issues to the Court.

Regards,
Ramya

**Ramya Sri Vallabhaneni**
*Pronouns: she/her/hers*

**LATHAM & WATKINS LLP**
1271 Avenue of the Americas | New York, NY 10020
D: +1.212.906.2931

---

**From:** Vallabhaneni, Ramya (NY) <Ramya.Vallabhaneni@lw.com>
**Sent:** Wednesday, April 2, 2025 3:41 PM
**To:** Ast-Gmoser, Robyn <rast-gmoser@windelsmarx.com>; Grabowski, Alex (CH) <Alex.Grabowski@lw.com>; Hancock, Sydney (ATX) <Sydney.Hancock@lw.com>; Lief, Jason A. <jlief@windelsmarx.com>; Welsh, Kelly (DC) <Kelly.Welsh@lw.com>; Miller, Andrew <amiller@windelsmarx.com>; Huttner, Constance <chuttner@windelsmarx.com>; dtaylor@skjlaw.com; mdaughton@skjlaw.com; nbelgam@skjlaw.com; vkm@skjlaw.com
**Cc:** #C-M EAGLE BENDAMUSTINE LITIGATION - LW TEAM <EAGLEBENDAMUSTINELITIGATION.LWTEAM@lw.com>; EagleLitigation@McCarter.com
**Subject:** RE: Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC, C.A. No. 24-65-JLH (D. Del.)

Robyn:

Thank you for the productive meet and confer today.

We understand that Slayback will provide and/or update its responses to the following issues by **Wednesday, April 9**:

- Rule 26(a)(1) and Paragraph 3 Disclosures: Slayback will provide updated Rule 26(a)(1) and Paragraph 3 Disclosures, and in particular, will provide the names of custodians relevant to damages, sales, and marketing.
- Azurity: Slayback will confirm whether it will accept service of any deposition notices to relevant Azurity employees.  Slayback will also confirm its position on adding Azurity as a party to the case.
- RFP Nos. 73-79: Slayback stated that it understood these requests were tied to willful infringement. After Eagle explained that RFP Nos. 73-79 were relevant to damages, Slayback agreed to review its responses to RFP Nos. 73-79 and provide any updates.

# EXHIBIT 6

**Shah, Rushabh (CH)**

| | |
|---|---|
| **From:** | Grabowski, Alex (CH) |
| **Sent:** | Tuesday, April 15, 2025 11:41 AM |
| **To:** | Ast-Gmoser, Robyn; Vallabhaneni, Ramya (NY); Hancock, Sydney (ATX); Lief, Jason A.; Welsh, Kelly (DC); Miller, Andrew; Huttner, Constance; dtaylor@skjlaw.com; mdaughton@skjlaw.com; nbelgam@skjlaw.com; vkm@skjlaw.com |
| **Cc:** | #C-M EAGLE BENDAMUSTINE LITIGATION - LW TEAM; EagleLitigation@McCarter.com |
| **Subject:** | RE: Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC, C.A. No. 24-65-JLH (D. Del.) |

Robyn,

Slayback's promised response on these issues in now almost a week overdue.  Please provide Slayback's positions on the below by 5 pm ET tomorrow or Eagle will be forced to seek relief from the Court.

Best,
Alex

**Alex Grabowski**

**LATHAM & WATKINS** LLP
330 North Wabash Avenue, Suite 2800 | Chicago, IL 60611
D: +1.312.876.6556

**From:** Ast-Gmoser, Robyn <rast-gmoser@windelsmarx.com>
**Sent:** Friday, April 11, 2025 11:21 AM
**To:** Vallabhaneni, Ramya (NY) <Ramya.Vallabhaneni@lw.com>; Grabowski, Alex (CH) <Alex.Grabowski@lw.com>; Hancock, Sydney (ATX) <Sydney.Hancock@lw.com>; Lief, Jason A. <jlief@windelsmarx.com>; Welsh, Kelly (DC) <Kelly.Welsh@lw.com>; Miller, Andrew <amiller@windelsmarx.com>; Huttner, Constance <chuttner@windelsmarx.com>; dtaylor@skjlaw.com; mdaughton@skjlaw.com; nbelgam@skjlaw.com; vkm@skjlaw.com
**Cc:** #C-M EAGLE BENDAMUSTINE LITIGATION - LW TEAM <EAGLEBENDAMUSTINELITIGATION.LWTEAM@lw.com>; EagleLitigation@McCarter.com
**Subject:** RE: Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC, C.A. No. 24-65-JLH (D. Del.)

Ramya,
My case team members have been in depositions for most of this week, including today. I will respond as soon as I am able.
Robyn

**From:** Ramya.Vallabhaneni@lw.com <Ramya.Vallabhaneni@lw.com>
**Sent:** Friday, April 11, 2025 11:20 AM
**To:** Ast-Gmoser, Robyn <rast-gmoser@windelsmarx.com>; Alex.Grabowski@lw.com; Sydney.Hancock@lw.com; Lief, Jason A. <jlief@windelsmarx.com>; Kelly.Welsh@lw.com; Miller, Andrew <amiller@windelsmarx.com>; Huttner, Constance <chuttner@windelsmarx.com>; dtaylor@skjlaw.com; mdaughton@skjlaw.com; nbelgam@skjlaw.com; vkm@skjlaw.com
**Cc:** EAGLEBENDAMUSTINELITIGATION.LWTEAM@lw.com; EagleLitigation@McCarter.com
**Subject:** RE: Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC, C.A. No. 24-65-JLH (D. Del.)

This message has originated from an **External Source**. Please use caution when opening attachments, clicking links, or responding to this email.

# EXHIBIT 7

**Alex Grabowski**
Direct Dial: 1.312.876.6556
alex.grabowski@lw.com

330 North Wabash Avenue
Suite 2800
Chicago, Illinois  60611
Tel: +1.312.876.7700  Fax: +1.312.993.9767
www.lw.com

**LATHAM & WATKINS LLP**

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Silicon Valley |
| Hong Kong | Singapore |
| Houston | Tel Aviv |
| London | Tokyo |
| Los Angeles | Washington, D.C. |
| Madrid | |

September 20, 2024

**VIA EMAIL**

Christopher B. Ferenc
Katten Muchin Rosenman LLP
1919 Pennsylvania Ave., NW., Suite 800
Washington, DC 20006

> Re:    *Eagle Pharmaceuticals, Inc. v. Apotex Inc., et al.*, C.A. No. 24-64-JLH (D. Del)

Counsel:

We write to follow up on our September 19, 2024 meet and confer ("Meet and Confer") and confirm our understanding of the parties' agreements and next steps.

## I.    Interrogatories

With respect to Apotex's responses to Eagle's interrogatories, we conveyed that Apotex's responses to at least interrogatories 3-5 were deficient for the reasons laid out in our letter of August 26, 2024 ("Eagle's Letter").  You confirmed that Apotex understood its duties to supplement and would supplement Interrogatory No. 3 by the end of October and endeavor to supplement Interrogatory Nos. 4 and 5 by the end of October as well.

## II.    Requests for Production

With respect to Apotex's Responses to Eagle's Requests for Production ("RFPs"), those addressed on our call are discussed in groups below:

**RFP 4 (Apotex NDA Labelling).**  As described in Eagle's Letter, Apotex's response to this RFP was deficient as it merely agreed to produce Apotex's NDA, rather than the full scope of responsive materials.  During the Meet and Confer, Eagle articulated the relevance of the full scope of the request.  Apotex explained that it had not yet conducted searches of electronically stored information ("ESI Searches") because the parties were still discussing search terms and the scope of the search to be conducted.  During the Meet and Confer, parties discussed search terms and the

LATHAM&WATKINS LLP

scope of the search.  Parties agreed that Eagle will send Apotex a list of search terms and full request and expectation for where/how search terms will be applied.  Apotex confirmed that when the parties reach an agreement on search terms and the scope of the search, it will search for and produce relevant, non-privileged documents responsive to this request to the extent these documents exist.

**RFPs 5-7, 32 (Research and Development Documents).**  As described in Eagle's Letter, Apotex's responses to these RFPs were deficient as it merely agreed to produce Apotex's NDA, rather than the full scope of responsive materials.  During the Meet and Confer, Eagle again articulated the relevance of the full scope of these requests.  Apotex stated that most of these documents are included in the research and development documents produced in the RTU case, which Apotex agreed to produce.  Apotex also reiterated that it had not yet conducted ESI Searches because the parties were still discussing search terms and the scope of the search.  Eagle requested that Apotex search for and provide updated responsive documents created since the RTU case. After further discussion, Apotex confirmed that when the parties reach an agreement on search terms and the scope of the search it will search for and produce relevant, non-privileged documents responsive to these requests to the extent these documents exist.

**RFP 8 (Use of Apotex NDA Product).**  As described in Eagle's Letter, Apotex's response to this RFP was deficient as it merely agreed to produce Apotex's NDA, rather than the full scope of responsive materials.  During the Meet and Confer, Eagle articulated the relevance of the full scope of the request.  Apotex stated that the NDA has all relevant documents because Apotex is beholden to FDA regulations on how its NDA Product is to be used.  However, Apotex confirmed that when the parties reach an agreement on search terms and the scope of the search it will search for and produce relevant, non-privileged documents responsive to this request to the extent these documents exist.

**RFPs 9, 38-40 and 58 (Communications between Apotex and Third Parties re: NDA product, Asserted Patents, This Litigation).**  Apotex indicated it did not understand the full scope of these requests.  Apotex stated that it has not yet run the ESI Searches and therefore did not know what types of responsive documents, if any, would turn up responsive to these requests. Apotex agreed to produce all documents previously produced to Eagle in the RTU case and that when the parties reach an agreement on search terms and the scope of the search it will search for and produce relevant, non-privileged documents to the extent the documents exist.

**RFP 10 (Storage Conditions).**  In Apotex's Response Letter, Apotex indicated information responsive to this request can be located in Apotex's NDA, specifically, Apotex Labeling Section 16.  During the Meet and Confer, Apotex confirmed that when the parties reach an agreement on search terms and the scope of the search it will search for and produce relevant, non-privileged documents responsive to this request to the extent these documents exist.

**RFPs 11, 14, 15, 41, 43-52, 54-57, 59-64 (Damages Documents).**  Apotex requested a meet and confer to discuss the relevance, scope, proportionality, and burden of these requests. During the Meet and Confer, Eagle articulated the relevance of the documents requested and identified specific categories of relevant documents including but not limited to profit and loss

**LATHAM & WATKINS** LLP

statements, pricing documents, projections/forecasts for infringing products, call reports, and marketing surveys. Apotex articulated its position that these requests are not proportional considering some information is available on the third-party database IQVIA. Apotex also requested that Eagle further articulate its damages contentions because it does not understand Eagle's damages theories. Eagle stated that it provided Apotex with its damages model and computation of damages in its Initial Disclosures. Parties discussed the date of first infringement, which Apotex stated was the date of issuance of the Asserted Patents. Eagle stated that as starting point, it needed the specific categories of documents requested as of the date of first infringement and that these documents were relevant to the development of the damages theories Apotex sought. With that clarification, Apotex's counsel stated it would discuss this request with its client. Please let us know your position promptly.

RFP 12 (Substitution Documents). As described in Eagle's Letter, Apotex's response to this RFP was deficient as it merely agreed to produce Apotex's NDA, rather than the full scope of responsive materials. During the Meet and Confer, Eagle articulated the relevance of the full scope of the request, such as its relevance to indirect infringement. Apotex confirmed that when the parties reach an agreement on search terms and the scope of the search it will search for and produce relevant, non-privileged documents responsive to this request to the extent these documents exist.

RFPs 16, 67, 68 (Marketing Documents). In Apotex's Response Letter, Apotex confirmed that it "will produce, additional responsive, relevant, non-duplicative, non-privileged communications to or from the FDA concerning NDA No. 215033, if any exist and are within its possession, custody, or control, in accordance with the document production schedule, Local Rules, and Federal Rules, and located after a reasonable search." During the Meet and Confer, Apotex confirmed that when the parties reach an agreement on search terms and the scope of the search it will search for and produce relevant, non-privileged documents responsive to these requests to the extent these documents exist.

RFPs 17, 18, 23, 24 (Manufacturing, Synthesis, Development, and Supply Documents). As described in Eagle's Letter, Apotex's response to this RFP was deficient as it merely agreed to produce Apotex's NDA, rather than the full scope of responsive materials. During the Meet and Confer, Apotex indicated that these documents are included in the NDA and the RTU case documents that it already agreed to produce. Apotex also confirmed it would not withhold relevant, non-privileged documents responsive to these requests to the extent these documents exist and are located after conducting its ESI Searches.

RFP 25 (Ingredients in NDA Product). During the Meet and Confer, Apotex indicated that documents responsive to this request are contained in Apotex's NDA. Apotex also confirmed that it would provide its updated NDA and will update with any new NDA documents, including any recent communication with the FDA, to the extent such information has not already been produced.

RFP 26 (Communications regarding Asserted Patents). During the Meet and Confer, Apotex stated that while it expected documents responsive to this request will be privileged, it will

**LATHAM&WATKINS**LLP

search for and produce relevant, non-privileged documents responsive to this request to the extent these documents exist.

**RFPs 28, 30 (Licensing and Evaluation/Interpretation of Asserted Patents).**  During the Meet and Confer, Apotex stated that while it expected documents responsive to these requests will be privileged, it will search for and produce relevant, non-privileged documents responsive to these requests to the extent these documents exist.

**RFP 33 and 37 (Organizational Charts and Witness CVs).**  During the Meet and Confer, Eagle explained the relevance of these requests to preparing for depositions and clarified the format and content of an organizational chart.  Eagle also articulated that organizational charts and *curricula vitae* (CVs) are typically kept in the ordinary course of business.  Eagle also clarified that it was only seeking CVs from those witnesses identified in Apotex's Initial Disclosures.  With that clarification, Apotex's counsel stated it would discuss these requests with its client.  Please let us know your position promptly.

**RFP 34 (Board of Directors Meeting Minutes).**  During the Meet and Confer, Eagle explained the relevance of this request to determining Apotex's intent to infringe and willfulness.  Apotex's counsel stated it was unsure how or where these documents are kept and whether the documents are searchable.  Apotex's counsel also stated it will likely be burdensome to produce these documents because of the likely need for significant redactions.  Apotex's counsel stated it would discuss this request with its client.  Please let us know your position promptly.

**RFP 42.**  During the Meet and Confer, Apotex stated the request for fifty samples was burdensome because of the significant cost of the product and the specialized shipping/handling required.  Eagle indicated that if Apotex will adhere to its prior stipulation regarding the 223 nanometer limitation it could likely reduce the number of samples needed.  *See Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC, et al.*, No. 21-1256-CFC-JLH (D. Del.), D.I. 102, Ex. 1 at ¶¶ 77, 79, 80.  Apotex stated it would review any prior stipulation.  Apotex also stated that a significant portion of the burden associated with the production of samples was their cost, and enquired if Eagle would be willing to cover the costs associated with such production.  Apotex's counsel stated it would discuss this request and the prior stipulation with its client.  Eagle's counsel similarly stated it would discuss Apotex's request that Eagle cover the costs associated with production of the samples with its client.  Please let us know your position promptly.  Once Eagle understands Apotex's position regarding the stipulation, Eagle will provide a position regarding payment of the cost to produce the samples.

**III.   ESI Search Terms and Scope**

With respect to the search terms Apotex proposed on September 13, 2024, pursuant to Paragraph 5 of the Default Standard ESI order in Delaware, Eagle stated that it would endeavor to provide a list of additional search terms along with its expectation for where/how search terms will be applied and run by Monday, September 24, 2024.  The parties' discussed the requirements for ESI Searches under the Delaware Local Rules including that any search terms must be run over all ESI, not limited to custodial inboxes.  For clarity's sake, Eagle reserves the right to pursue additional documents responsive to its requests not encompassed by Apotex's ESI search,

LATHAM&WATKINS LLP

including with respect to materials that do not appear to necessitate an ESI search (e.g. RFPs 33 and 37 or the specific damages documents discussed with respect to RFPs 11, 14, 15, 41, 43-52, 54-57, and 59-64).

Apotex stated it may need an extension to the substantial completion deadline depending on the parties' ultimate agreement on search terms and scope. Eagle stated it was open to accommodating a reasonable request to extend the substantial completion of documents deadline. Parties agreed an extension could be discussed after the ESI Searches are complete.

IV.    **Conclusion**

We appreciate you taking the time to discuss these issues during the Meet and Confer. We look forward to your follow up regarding the outstanding items detailed above.

Sincerely,

*/s/ Alex Grabowski*
Alex Grabowski
LATHAM & WATKINS LLP

# EXHIBIT 8

**Ramya Vallabhaneni**
Direct Dial: 1.212.906.2931
ramya.vallabhaneni@lw.com

1271 Avenue of the Americas
New York, New York  10020-1401
Tel: +1.212.906.1200  Fax: +1.212.751.4864
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Silicon Valley |
| Hong Kong | Singapore |
| Houston | Tel Aviv |
| London | Tokyo |
| Los Angeles | Washington, D.C. |
| Madrid | |

February 12, 2025

<u>**VIA EMAIL**</u>

Christopher B. Ferenc
Katten Muchin Rosenman LLP
1919 Pennsylvania Ave., NW., Suite 800
Washington, DC 20006

> Re:   *Eagle Pharmaceuticals, Inc. v. Apotex Inc., et al.,* C.A. No. 24-64-JLH (D. Del.)

Counsel:

We write in regard to the document productions from Defendants Apotex Inc. and Apotex Corp. (together, "Apotex") dated December 18, 2024 and January 13, 2025, (respectively, APOBENDA64_018886-APOBENDA64_036731 and APOBENDA64_036732-APOBENDA64_040638).  At the outset, we note that the Court's Scheduling Order mandated substantial completion of document production by December 18, 2024.  *See* D.I. 78.  Yet, nearly two months after that deadline, we have identified numerous deficiencies in Apotex's productions to date, many of which we initially raised long ago, during the parties' September 19, 2024 meet and confer, and again in our September 20, 2024 correspondence.

Eagle specifically identifies the following deficiencies with Apotex's productions:

- **RFP Nos. 5-7, 32 (Research and Development Documents)**:  During the parties' September 19 meet and confer, Apotex agreed to produce research and development documents from the RTU case—C.A. No. 21-1256-CFC-JLH—and to search for and produce additional responsive documents post-dating the RTU case to the extent such documents exist.  September 20, 2024 Ltr. from A. Grabowski to C. Ferenc at 2.  Based on our review, Apotex has not produced any RTU documents, let alone any responsive documents post-dating the RTU case.  Therefore, please confirm by Wednesday, February 19 that Apotex will produce all responsive documents to the above requests, or provide your availability for a meet and confer.

LATHAM&WATKINS LLP

- **RFP Nos. 17, 18, 23, 24 (Manufacturing, Synthesis, Development, and Supply Documents)**:  During the September 19 meet and confer, Apotex indicated that documents responsive to these requests are included in Apotex's NDA and the RTU case documents, which Apotex confirmed it would produce.  *Id*. at 3.  Apotex further agreed not to withhold relevant, non-privileged documents responsive to these requests to the extent such documents exist and were located after conducting further ESI searches.  *Id*.  However, as noted above, we have not received any RTU documents.  Furthermore, based on our review, Apotex has not made a fulsome production of materials related to its potential use of NaOH to adjust the pH of PEG; instead, Apotex simply produced a handful of documents mentioning the use of NaOH, such as email threads discussing the quantity of NaOH to list in the PDR, the Citizen Petition, and the Stability Study Plan.  *See, e.g.,* APOBENDA64_029104,   APOBENDA64_020498,   APOBENDA64_029408.  However, RFP No. 18 broadly calls for "*[a]ll documents* that refer or relate to the manufacture, *synthesis*, production, *development,* transfer, processing, storage, specification, *or preparation of polyethylene glycol as used in Your NDA Product, including any use of sodium hydroxide to adjust the pH of any batch of polyethylene glycol used in your NDA Product*." (emphasis added).  Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . Information within this scope of discovery need not be admissible in evidence to be discoverable.").  Thus, please confirm by Wednesday, February 19 that Apotex will produce all responsive documents to the above requests, including any documents regarding the decision to use NaOH, or provide your availability for a meet and confer.

- **RFP Nos. 26 (Communications regarding Asserted Patents), 28, 30 (Licensing and Evaluation/Interpretation of Asserted Patents)**:  During the September 19 meet and confer, Apotex agreed to produce relevant, non-privileged documents responsive to this request to the extent such documents exist.  September 20, 2024 Ltr. from A. Grabowski to C. Ferenc at 3-4.  Based on our review, Apotex has not produced *a single* document responsive to these requests.  Therefore, please confirm by Wednesday, February 19 that Apotex will produce all responsive documents to the above request, or provide your availability for a meet and confer.

- **RFP Nos. 33, 37 (Organizational Charts and Witness CVs)**:  During the September 19 meet and confer, we explained the relevance of these requests in preparing for upcoming depositions and clarified the format and content of an organizational chart.  *Id*.  In response, Apotex stated that it would discuss these requests with its client and inform us of Apotex's position.  *Id*.  Nearly five months later, Apotex has yet to provide Eagle with its position, or produce *any* organizational charts or witness CVs.  Therefore, please confirm by Wednesday, February 19 that Apotex will produce all responsive documents to the above requests, or provide your availability for a meet and confer.

LATHAM&WATKINS LLP

- **RFP 34 (Board of Directors Meeting Minutes)**:  During the September 19 meet and confer, we explained the necessity and relevance of Apotex's Board of Directors meeting minutes to various issues, including Apotex's intent to infringe and willfulness.  Apotex stated that you would discuss this request with its client and promptly inform us of Apotex's position.  *Id*.  Again, nearly five months later, Apotex has yet to provide Eagle with its position or produce any Board of Directors Meeting Minutes.  Please confirm by Wednesday, February 19 that Apotex will produce all responsive documents to the above requests, or provide your availability for a meet and confer.

- **RFP 42 (Samples)**:  During the  September 19 meet and confer, the parties discussed the logistics of providing samples of Apotex's NDA product to Eagle.  Specifically, you expressed that providing fifty (50) samples was burdensome due to high costs and specialized shipping/handling requirements.  *Id*.  We suggested that fewer samples may be sufficient if Apotex adhered to its prior stipulation in C.A. No. 21-1256-CFC-JLH regarding the 223 nanometer limitation.  *Id.*; *see also Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC, et al.*, No. 21-1256-CFC-JLH (D. Del.), D.I. 102, Ex. 1 at ¶¶ 77, 79, 80.  In response, Apotex agreed to review the stipulation and discuss the issue further internally.  September 20, 2024 Ltr. from A. Grabowski to C. Ferenc at 4.  Apotex also asked whether Eagle would cover the sample production costs.  *Id*.  Eagle requested a prompt response from Apotex on its position on the stipulation so it could in turn determine Eagle's position on cost coverage.  *Id*.  We have yet to hear from Apotex on this issue, and Apotex has yet to produce any samples of its NDA product.  Please confirm by Wednesday, February 19 that Apotex will produce fifty samples of its NDA product, or provide your availability for a meet and confer.

We look forward to your prompt response.

Sincerely,

*/s/ Ramya Vallabhaneni*
Ramya Vallabhaneni
LATHAM & WATKINS LLP

# EXHIBIT 9

**Ramya Vallabhaneni**
Direct Dial: 1.212.906.2931
ramya.vallabhaneni@lw.com

1271 Avenue of the Americas
New York, New York  10020-1401
Tel: +1.212.906.1200  Fax: +1.212.751.4864
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Silicon Valley |
| Hong Kong | Singapore |
| Houston | Tel Aviv |
| London | Tokyo |
| Los Angeles | Washington, D.C. |
| Madrid | |

March 14, 2025

**VIA EMAIL**

Christopher B. Ferenc
Katten Muchin Rosenman LLP
1919 Pennsylvania Ave., NW, Suite 800
Washington, DC 20006

Re:     *Eagle Pharmaceuticals, Inc. v. Apotex Inc., et al.,* C.A. No. 24-64-JLH (D. Del.)

Counsel:

We write in response to your February 21, 2025 and February 28, 2025 letters.  We also write to highlight additional deficiencies with Apotex's productions to date, as well as Apotex's incomplete custodial disclosures.  Please provide Apotex's responses to the below issues by **Friday, March 21**, or provide your availability for a meet and confer.

## I.    Eagle Requires Additional Account Information and Custodians from Apotex

We note first that Apotex has failed to produce large categories of relevant damages-related documents and communications.  Please confirm that Apotex will remedy all of the identified deficiencies to its damages-related document production or provide your availability to meet and confer.

**RFP Nos. 45, 46, and 55** request documents, things, and communications that refer or relate to both *actual* and forecasted unit sales, gross revenue, net revenue, gross profits, operating profits, net profits, and costs.  However, to date, we have only received documents relating to forecasted sales, gross revenue, net revenue, gross profits, operating profits, net profits, and costs through the first quarter of 2024.  *See, e.g.*, APOBENDA64_018770.  Therefore, please confirm that Apotex will produce actual sales, gross revenue, net revenue, gross profits, operating profits, net profits, and costs information through at least the end of 2024.

**RFP No. 41** requests documents related to current, former, or planned agreements, including any agreements between Apotex and those entities related to design, development,

LATHAM&WATKINS LLP

marketing, sale, or distribution of Apotex's NDA Product. However, to date, it appears that Apotex has not produced all agreements or documents related thereto for several relevant marketing and manufacturing entities with whom it appears to have agreements. *See, e.g.*, APOBENDA64_036601 ███████████████ APOBENDA64_024960 ███████ APOBENDA64_023479 ███████ Therefore, please confirm that Apotex will produce all documents related to current, former, or planned agreements, including any agreements between Apotex and those entities related to design, development, marketing, sale, or distribution of Apotex's NDA Product.

**RFP No. 52** requests all advertising and/or promotional materials that refer or relate to Apotex's NDA Product, which includes training materials and marketing materials used by Apotex's sales team. However, to date, it appears that Apotex has not produced any of the materials it uses to train its sales team or that its sales team uses to market and promote the Apotex NDA Product. These documents are clearly relevant to at least issues associated with inducement and damages. Therefore, please confirm that Apotex will produce all materials responsive to RFP No. 52.

**RFP Nos. 47-49, 54, and 56** request all documents and communications between Apotex and third parties concerning the marketing, distribution, or sale of Apotex's NDA Product. However, to date, it appears that Apotex has only produced summary reports of its communications with third parties concerning marketing, distribution, or sale of Apotex's NDA Product. *See, e.g.*, APOBENDA64_023479 (providing summary of unit increases sent by ████████████████ This is not sufficient. Apotex also has not produced any communications between Apotex and providers or clinicians regarding Apotex's NDA Product or pricing terms for Apotex's NDA Product despite it being clear that Apotex does communicate with these parties. *See, e.g.*, APOBENDA64_024660. Therefore, please confirm that Apotex will produce the documents responsive to the subject RFPs.

**RFP No. 57** requests all communications between Apotex's sales force, sales personnel, or marketing personnel that refer or relate to the sale, marketing, pricing, and/or promotion of Apotex's NDA Product, including but not limited to, by way of any group chat, texts, text chains, or chat function. However, to date, Apotex has not produced *any* communications between its sales force regarding the sale, marketing, pricing, and/or promotion of Apotex's NDA Product. It appears Apotex has not identified any custodian in its Paragraph 3 disclosures who communicates with Apotex's sales force, sales personnel, or marketing personnel, or any custodian who is a member of Apotex's sales force team such that no documents have been collected or produced. Therefore, please confirm that Apotex will identify any relevant custodian(s) who communicates with the sales team and/or is a member of the sales team and collect and produce such communications (which are clearly relevant at least to issues associated with inducement and damages).

## II.    Apotex's Responses and Objections to Eagle's Requests for Production

**RFP Nos. 5-7, 17, 18, 23, 24, 32**:  Eagle appreciates Apotex's confirmation regarding its production of the RTU documents. However, Apotex has failed to substantively respond Eagle's

**LATHAM&WATKINS**LLP

requests from its February 12 letter. Instead, Apotex simply claimed that it produced "all non-privileged documents uncovered from the parties' agreed-upon ESI search," which it applied across the documents of only five Apotex custodians. 2/21/2025 Ltr.; A. Grabowski Email to C. Ferenc (Oct. 1, 2024). But that is not enough, especially here where there is a dearth of material related to, by way of example only, the use of NaOH in the manufacture of Apotex's bendamustine product. *See* 2/12/2025 Ltr. at 2. Therefore, please confirm that Apotex has produced all non-privileged research and development documents post-dating the RTU litigation that are responsive to RFP Nos. 5-7, and 32, and all non-privileged documents post-dating the RTU litigation that are responsive to RFP Nos. 17, 18, 23 and 24.

    **RFP Nos. 26, 28, 30**: Apotex misunderstands the nature of Eagle's requests. The fact that Apotex produced "all non-privileged documents uncovered from the parties' agreed-upon ESI search" does not necessarily mean Apotex's discovery obligations under the FEDERAL RULES OF CIVIL PROCEDURE are fulfilled. For example, it could be that all responsive documents were withheld for privilege. As another example, it could be that no documents hit on the agreed-upon search terms. That would demonstrate that Apotex should, at the very least, apply the agreed-upon ESI search terms across a new set of custodians to confirm there are actually no further responsive documents to these requests. Therefore, please confirm the number of non-privileged, responsive documents that hit on these requests so that Eagle can determine whether additional Apotex custodians are required.

    **RFP Nos. 33, 37**: Apotex has not satisfied its obligations with respect to these requests. *First*, Apotex has not provided sufficient identification of individuals involved with Apotex's bendamustine product. Apotex simply cited to two documents – APOBENDA64_029104 and its Rule 26(a)(1) Disclosures. 2/21/2025 Ltr. at 2. But Apotex's Rule 26(a)(1) disclosures list only five individuals, and APOBENDA64_029104 discloses over a dozen individuals in an email chain with no further information regarding each individual's position or involvement in Apotex's bendamustine product. Apotex's disclosure is plainly insufficient. Thus, these documents do not satisfy RFP Nos. 33 and 37. *Second*, each of Apotex's cited cases are inapposite. For example, in *Novanta Corp. v. Iradion Laser, Inc*., plaintiffs requested a far broader category of documents than those listed in RFP No. 33 or 37, and included requests for "corporate by-laws," "ownership records," "SEC filings," "business licenses," "stockholder agreements" and more. No. 15-1033-SLR-SRF, 2016 WL 4987110, at *4 (D. Del. Sept. 16, 2016). Moreover, the court noted that "the request for general corporate documents unrelated to infringement and the damages claims" was overbroad. *Id*. Here, by contrast, Eagle simply requests organizational charts or other documents sufficient to determine the relevant Apotex employees involved in Apotex's bendamustine product. *Westport Insurance Corp. v. Hippo Fleming & Pertile Law Offices* is similarly irrelevant to the facts of this case. There, defendant requested the personnel files (i.e., the HR files) of three specific employees in order to obtain information about the plaintiff's corporate policies and training policies. 319 F.R.D. 214, 218 (W.D. Pa. 2017). In contrast, here, Eagle simply seeks to obtain information regarding the relevant Apotex employees to depose. There is no "heighted relevancy standard" at issue here. 2/21/2025 Ltr. at 1-2. Finally, *National Retail Systems, Inc. v. Markel Insurance Co*. is inapposite for the same reason as *Westport*. There, defendant requested personnel files of specific employees, and further requested payroll and health coverage documents. No. 17-672, 2018 WL 1960868, at *4 (E.D. Pa. Apr. 25, 2018). Here, RFP Nos. 33

LATHAM&WATKINS LLP

and 37 are neither that broad nor that invasive.  Therefore, to the extent Apotex maintains its position that it will not provide additional documents responsive to these requests, please confirm your availability for a meet and confer.

**RFP No. 34**:  Apotex's objections to RFP No. 34 are baseless.  First, the fact that Apotex's board of director meeting minutes contains some irrelevant information does not render it overbroad.  Fed. R. Civ. P. 26(b)(1).  Indeed, Apotex can redact the irrelevant information from the meeting minutes.  Second, the fact that RFP No. 34 is not time-bound does not mean it is overbroad.  Indeed, the request is narrowly tailored to any board of directors meetings in which Apotex's "NDA, [Apotex's] NDA Product, BELRAPZO®, or BENDEKA®" were discussed.  Third, Apotex's claim of privilege is misplaced.[1]  "If the primary purpose of a communication is to solicit or render advice on non-legal matters, the communication is not within the scope of the attorney-client privilege."  *Idenix Pharms., Inc. v. Gilead Scis., Inc*., 195 F. Supp. 3d 639, 644 (D. Del. 2016) (citation omitted).  Thus, the attorney-client privilege only applies to the extent an attorney was present at the board of directors meetings or if the allegedly privileged information relayed legal advice from an attorney to Apotex regarding the bendamustine litigation.  The mere existence of ongoing litigation does not automatically render all discussions privileged, especially if the primary focus of the meetings was business-oriented rather than legal.  *TC Tech. LLC v. Sprint Corp.*, No. 16-153-RGA, 2018 WL 6584122, at *3 (D. Del. Dec. 13, 2018) (noting non-legal business communications are not privileged and that courts look to the primary purpose of a document to determine whether attorney-client privilege applies).  Finally, Apotex's contention that "the same information ostensibly sought by this Request – 'Apotex's intent to infringe and willfulness' – is the express subject of Eagle's Interrogatories Nos. 3 and 5" is overstated.  2/21/2025 Ltr. at 2.  Eagle is not requesting the same information in RFP No. 34 as in Interrogatories 3 and 5, which relate to Apotex's awareness of the Asserted Patents, and willfulness, respectively.  While documents responsive to RFP No. 34 may relate to willfulness, they will not reflect the same exact information as in Apotex's interrogatory responses.  Therefore, please confirm your availability for a meet and confer.

**RFP No. 42**:  Apotex mischaracterizes Eagle's September 20, 2024 letter.  Eagle clearly stated "if Apotex will adhere to its prior stipulation regarding the 223 nanometer limitation it could likely reduce the number of samples needed . . . Apotex stated it would *review any prior stipulation*."  9/20/2024 Ltr. (emphasis added).  To be clear, Eagle requests fifty samples of Apotex's bendamustine product.  However, if Apotex agrees to the prior stipulation entered in C.A. No. 21-1256-CFC-JLH, Eagle would be amenable to reducing the number of samples required.  Before Eagle determines whether it will cover the costs associated with the samples, Eagle first requires Apotex's agreement, at least in principle, to a stipulation regarding the "223 nm" limitation.  Once Apotex agrees in principle to adhere to a stipulation, the parties can discuss the appropriate number of samples and Eagle will provide a proposed stipulation.  To that end,

---

[1] Apotex's citation to *In re Ford Motor Co.* is inapposite because it involved documents that were directly related to obtaining legal advice where legal counsel was present and actively involved in such discussions.  110 F.3d 954, 965–66 (3d Cir. 1997).  Here, Apotex has not demonstrated that its board meetings were specifically convened for the purpose of obtaining legal advice.

LATHAM&WATKINS LLP

please confirm whether Apotex agrees in principle to the following, as it did in the C.A. No. 21-1256-CFC-JLH litigation, or provide your availability for a meet and confer:

- "Apotex's Proposed NDA Product has less than about 5% peak area response of total impurities resulting from the degradation of the bendamustine, as determined by HPLC as a wavelength of 223 nm after at least 15 months at a temperature of from about 5º C. to about 25º C."

- "Apotex's Proposed NDA Product has less than about 5% peak area response of total impurities resulting from the degradation of the bendamustine, as determined by HPLC as a wavelength of 223 nm after at least 15 months at a temperature of about 25° C."

- "Apotex's Proposed NDA Product has less than about 5% peak area response of total impurities resulting from the degradation of the bendamustine, as determined by HPLC as a wavelength of 223 nm after at least 15 months at a temperature of about 5° C."

*Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC, et al.*, No. 21-1256-CFC-JLH (D. Del.), D.I. 102, Ex. 1 at ¶¶ 77, 79, 80.

## III.   Eagle's Responses and Objections to Apotex's Requests for Production and First Set of Interrogatories

At the outset, Eagle notes that Apotex fails to explain the relevance of many of its requested categories of documents.  "Once an objection is raised as to relevancy, the party seeking discovery bears the burden of demonstrating the relevance of the sought information to either the claims, defenses, or the subject matter of the litigation."  *Inventio AG v. ThyssenKrupp Elevator Americas Corp.*, 662 F. Supp. 2d 375, 381 (D. Del. 2009).  Here, Apotex has failed to do so.

**RFP Nos. 16-20, 22-23, and 48:**  Eagle has produced all relevant, non-privileged documents responsive to RFP Nos. 16-20, 22-23, and 48 currently in its possession.  Furthermore, Eagle has already produced financial sales projections. *See, e.g.,* EAGLEBEN-SA_00002634; *see also* 2024.12.13 Plaintiff's Second Supp. Resp. to Defendants' First Set of Joint Interrogatories at No. 9.  Regarding the "(i) strategy documents such as brand plans, long-range planning document, market research, SWOT analyses, etc.; (ii) prescription and sales data from IQVIA/Symphony Health for bendamustine products and any of their potential therapeutic alternatives; (iii) surveys of physicians and patients regarding attitudes, experiences, and uses of bendamustine products; … and (v) documents describing marketing efforts (e.g., commercialization plans, marketing team analyses, communications with customers, etc.)" that Apotex specifically calls out, we are continuing to investigate whether Eagle maintains such documents and will revert back in due course.  2/28/2025 Ltr. at 1-2.

**RFP No. 29**:  Eagle maintains its objections to RFP No. 29 as written.  Apotex bears the burden of explaining the relevance of these documents, and here, it has failed to do so.  *Inventio AG*, 662 F. Supp. 2d at 381.  Indeed, it is unclear why documents related to *any* "Citizen Petition or other submission to the FDA" is relevant to "Defendants' invalidity positions for those asserted

LATHAM&WATKINS LLP

claims directed to bendamustine degradants, impurities, and antioxidants." 2/28/2025 Ltr. at 2. RFP No. 29 is so broadly written that it would subsume any documents relating to *any* bendamustine product, some of which have no bearing on the claims in this case. As a result, Eagle will not produce documents responsive to RFP No. 29 as written.

**RFP No. 38**: Eagle maintains its objections to RFP No. 38 as written. RFP No. 38 requests all documents that "refer or relate to *any supplier or potential supplier* of bulk bendamustine . . . any relationship or potential relationship between Eagle and such supplier," and all contact, purchase orders and communications with such supplier. 2024.06.18 Defendants' First Set of Requests for Production at 17. This would be an enormous amount of documents. Moreover, Apotex has failed to properly explain how these documents are relevant to the issues in this case. While Apotex claims that these documents are related to its noninfringement positions, Apotex's mere assertion of relevance without anything more, is insufficient. *Avago Techs. U.S., Inc v. IPtronics Inc*, 309 F.R.D. 294, 298–99 (E.D. Pa. 2015) (denying a motion to compel production of documents based on a mere assertion of relevance). Thus, Eagle will not produce documents responsive to Request No. 38 as written, but is willing to meet and confer to discuss a potential narrowing of the request.

**RFP Nos. 40 and 41**: Eagle maintains its objections to RFP Nos. 40 and 41 as written. RFP No. 40 seeks all "documents that refer or relate to any Bendamustine Product as listed on a drug formulary" and RFP No. 41 requests all "documents that refer or relate to the prescription of any Bendamustine Product[.]" 2024.06.18 Defendants' First Set of Requests for Production at 17-18. These requests are plainly overbroad as written. Indeed, they would subsume documents from third parties over which Eagle has no control. Moreover, Eagle does not appear to be in possession of documents responsive to RFP No. 40. Furthermore, Apotex has not sufficiently described why these documents would be relevant in this case besides stating in a conclusory manner that "drug formularies influence how products are prescribed, priced and marketed." 2/28/2025 Ltr. at 2. That is not enough to require production of documents. *See Avago*, 309 F.R.D. at 298-99; *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1326 (Fed. Cir. 1990) ("[R]equested information is not relevant to 'subject matter involved' in the pending action if the inquiry is based on the party's mere suspicion or speculation."). Thus, Eagle will not produce documents responsive to Request Nos. 40 and 41 as written.

**RFP No. 45**: Subject to and without waiving the general and specific objections raised in Eagle's Response to Defendants' First Set of RFPs as served on July 18, 2024, and to the extent that Eagle understands this request, Eagle has conducted and/or will conduct a reasonable search for and, if found, produce non-privileged documents sufficient to show the reasons Eagle developed and sought FDA approval for Belrapzo®.

**RFP No. 50**: Subject to and without waiving the general and specific objections raised in Eagle's Response to Defendants' First Set of RFPs as served on July 18, 2024, and to the extent that Eagle understands this request, Eagle has conducted and/or will conduct a reasonable search for and, if found, produce non-privileged documents that describe the role of Belrapzo® in Eagle's overall business.

LATHAM&WATKINS LLP

**RFP No. 53**: Eagle maintains its objections to RFP No. 53 as written.  RFP No. 53 seeks all documents and communications with "Third Parties Relating to any United States patent purporting to claim any Bendamustine Product[.]"  2024.08.27 Defendants' Second Set of Requests for Production at 3.  Such a request is plainly overbroad.  Eagle attempted to narrow this RFP in its response by stating that it would produce the Financial Documents and Settlement and License Agreement Documents.  Eagle will not produce documents responsive to Request No. 53 as written, but is willing to meet and confer to discuss a potential narrowing of the request.

**RFP Nos. 54, 55, 57, 58, 60, and 61**: Eagle maintains its objections to RFP Nos. 54-55, 57-58, and 60-61.  RFP Nos. 54-55 request documents and communications relating to the "Eagle-Teva Agreement," RFP Nos. 57-58 requests documents and communications relating to the "Eagle-SymBio Agreement," and RFP Nos. 60-61 requests documents and communications relating to the "Eagle-Hospira Agreement."  2024.08.27 Defendants' Second Set of Requests for Production at 3-4.  Eagle agreed to produce executed patent settlement or license agreements because all prior communications and/or document related to the settlement agreements are privileged.  *Intell. Ventures I LLC v. AT&T Mobility LLC*, No. 12-193-LPS, 2016 WL 3213585, at *2 (D. Del. June 2, 2016) (determining that a draft containing settlement negotiation details was privileged).  Regarding Apotex's request for "joint steering committee meeting minutes and related documents," "commercialization plans," "promotional materials," "documents concerning the prosecution and maintenance of patents," "indemnification claims," and "notices provided" pursuant to the settlement agreements, Apotex has not clearly demonstrated the relevance of these documents for any issue in this case.  *See Micro Motion*, 894 F.2d at 1326.  Regarding Apotex's request for "manufacturing and supply agreements," Eagle has produced executed manufacturing and supply agreements consistent with its representations that it would do so.  *See, e.g.*, EAGLEBEN-SA_00321346; EAGLEBEN-SA_00332859.  Thus, Eagle will not produce any additional documents responsive to Request Nos. 54-55, 57-58, and 60-61 as written.

**Interrogatory Nos. 1, 2, 5, and 8**: Eagle disagrees that its responses were deficient at the time of Apotex's First Set of Interrogatories.  In order to properly answer Apotex's interrogatories, Eagle required Apotex's financial information, which is still lacking, as explained above.  For example, in order to assess the "direct competition from Apotex's infringing NDA Product," Eagle first needs access to Apotex's own pricing documents.  Nonetheless, Eagle will endeavor to supplement its responses to Interrogatory Nos. 1, 2, 5, and 8 by April 11, 2025.

**Interrogatory No. 7**: Eagle will endeavor to supplement its response to Interrogatory No. 7 and identify individuals who have knowledge regarding the licenses or grants under the Patents-in-Suit by April 11, 2025.

We look forward to your prompt response.

Sincerely,

*/s/ Ramya Vallabhaneni*
Ramya Vallabhaneni
LATHAM & WATKINS LLP

# EXHIBIT 10

**Ramya Vallabhaneni**
Direct Dial: 1.212.906.2931
ramya.vallabhaneni@lw.com

330 North Wabash Avenue
Suite 2800
Chicago, Illinois 60611
Tel: +1.312.876.7700  Fax: +1.312.993.9767
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Silicon Valley |
| Hong Kong | Singapore |
| Houston | Tel Aviv |
| London | Tokyo |
| Los Angeles | Washington, D.C. |
| Madrid | |

## LATHAM & WATKINS LLP

April 17, 2025

**VIA EMAIL**

Christopher B. Ferenc
Katten Muchin Rosenman LLP
1919 Pennsylvania Ave., NW., Suite 800
Washington, DC 20006

> Re:    *Eagle Pharmaceuticals, Inc. v. Apotex Inc., et al.*, C.A. No. 24-64-JLH (D. Del.)

Counsel:

We write to follow up on our April 8, 2025 meet and confer ("Meet and Confer") and to confirm our understanding of the parties' agreements and next steps.

### I.    Follow-Up Required by Apotex

With respect to the deficiencies Eagles identified in Apotex's production of damages-related documents in its March 14, 2025 letter ("letter"), the issues addressed during our call are summarized below:

**RFP Nos. 45, 46, and 55:** During the Meet and Confer, Eagle acknowledged receipt of forecasted financials but articulated the absence of *actual* sales information such as *actual* unit sales, gross revenue, net revenue, gross profits, operating profits, net profits, and costs through the end of the 2024 fiscal year.  Apotex's counsel confirmed that they were currently in active discussions with Apotex regarding the production of updated financial information and confirmed that they would provide an update regarding the actual financials.  Having received no such update, we believe we have come to an impasse on these issues and intend to seek relief from the Court.

**RFP No. 41:** Apotex has not produced all responsive agreements or documents for several relevant marketing and manufacturing entities with whom Apotex has agreements, such as ███████████.  During the Meet and Confer, Eagle requested that Apotex produce all relevant documents because Eagle had only received a fraction, rather than the totality, of documents responsive to RFP No. 41.  Apotex confirmed that it was reviewing the specific

LATHAM&WATKINS LLP

documents that Eagle identified in the March 14, 2025 letter and confirmed that Apotex would provide an update early in the following week of Monday, April 14, 2025.  Having received no such update, we believe we have come to an impasse on these issues and intend to seek relief from the Court.

**RFP No. 52:** Eagle noted that thus far, Apotex has not produced any of the materials used to train its sales team or any of the materials that the sales team uses to market and promote the Apotex NDA product.  Eagle explained that these documents are relevant to, at least, issues associated with inducement and damages.  Apotex maintained that it had searched for and produced all relevant documents but also that Apotex's counsel had not had the opportunity to discuss the issue with Apotex and would do so.  Apotex's counsel also confirmed that it would speak with Apotex about whether the relevant documents would include third-party materials. Having received no such update, we believe we have come to an impasse on these issues and intend to seek relief from the Court.

**RFP Nos. 47-49, 54, and 56:** During the Meet and Confer, Eagle reiterated that Apotex had not produced any communications regarding pricing and had again only produced insufficient summary reports.  Eagle noted that the existence of such pricing communications was clear from the existence of the summary reports, further noting that Apotex had not produced the communications themselves.  Apotex's counsel stated that there were no documents from the initial ESI searches that had not been produced but that they would discuss and investigate the issue further with Apotex.  Please confirm that Apotex will produce any communications regarding pricing by **April 23, 2025**.

**RFP No. 57:** During the Meet and Confer, Eagle reiterated that Apotex had not produced any communications between its sales force regarding the sale, marketing, pricing and/or promotion of Apotex's NDA product nor identified a relevant custodian who communicates with Apotex's sales force, sales personnel, or marketing personnel.  Apotex stated that it had identified Michael Bohling—Vice President of Sales and Marketing—as a relevant custodian in Apotex's Paragraph 3 disclosures; however, Apotex's counsel acknowledged the need to discuss further with Apotex. Eagle articulated concerns that Michael Bohling was not a relevant custodian because of the absence of relevant documents that Eagle would otherwise have received.  However, Eagle also stated that Apotex's identification and production of relevant documents would be the preferred solution but acknowledged that Apotex's disclosure of a relevant custodian would be an acceptable alternative.  Apotex's counsel agreed to investigate and discuss the issue further with Apotex and provide an update by earlier this week.  Having received no such update, we believe we have come to an impasse on these issues and intend to seek relief from the Court.

## II.    Apotex's Responses and Objections to Eagle's Requests for Production

With respect to Apotex's Responses and Objections to Eagle's Requests for Production ("RFPs"), the issues addressed during the Meet and Confer are summarized below:

**RFP Nos. 5-7, 17, 18, 23, 24, and 32:** As acknowledged in Eagle's letter, Apotex had previously confirmed the reproduction of all the documents produced in the prior RTU litigation

LATHAM&WATKINS LLP

(C.A. No. 21-1256-CFC-JLH) in the current matter.  Following the letter, Apotex had provided a range of Bates numbers in the current productions that correspond to the documents from the prior RTU litigation.  Christopher B. Ferenc, Email to Rushabh Shah, "Eagle Pharmaceuticals, Inc. v. Apotex Inc., et al., C.A. No. 24-64-JLH (D. Del): Prior RTU Litigation Document Production," (Apr. 1, 2025) (on file with author).  During the Meet and Confer, Eagle explained that Eagle's vendor had analyzed the current document production and was unable to confirm whether more than 1,000 documents from the prior RTU litigation were, in fact, reproduced.  Eagle requested a cross-reference list to verify Apotex's claim that it had reproduced all of the documents from the previous RTU litigation.  Apotex represented that Eagle has been in receipt of all documents produced in the prior RTU litigation as of September 2024 and that it did not have a cross-reference list to provide to Eagle but that Eagle could identify specific documents from the prior RTU litigation that may not be included in the current document production.  Eagle confirmed that it would identify any missing documents and subsequently inform Apotex.

**RFP Nos. 26, 28, and 30:** Eagle identified an obvious absence of marketing and sales documents which suggested that Apotex had not identified the correct custodians in its Paragraph 3 disclosures.  Apotex noted that the parties had negotiated the ESI search terms and, at that time, Eagle had not identified any additional custodians, noting further that Apotex had not withheld any documents for privilege or responsiveness.  The parties disagree on whether Apotex has met its discovery obligations, but Apotex agreed to review documents to the extent Eagle could identify specific documents. Apotex stated that sales or marketing documents did not fall within the ambit of RFP Nos. 26, 28, and 30, and that the NDA documents that Apotex had produced were responsive to RFP No. 26.  Apotex represented that it was unaware of nonprivileged documents responsive to RFPs Nos. 28 and 30.  Apotex further represented that there were no additional non-privileged documents responsive to RFP No. 26 apart from the documents that Apotex had already produced.

**RFP Nos. 33 and 37:** Eagle requested organizational charts and the curricula vitae of the individuals identified in Apotex's initial disclosures. Eagle further clarified that it was narrowly requesting the curricula vitae and not the entire personnel files of relevant individuals and that even curricula vitae that was not up to date would be acceptable.  Apotex agreed to confirm the existence of the documents and then to revisit the discussion with Eagle. Please confirm that Apotex will confirm the existence of the documents by **April 23rd**.

**RFP No. 34:** During the Meet and Confer, Apotex objected to Eagle's request to produce board of directors meeting minutes because the request was not timebound, claiming further that any board of directors meeting minutes would likely be privileged because of previous litigation with Eagle during the relevant time period.  Eagle requested board of directors minutes from December 2021 onwards, articulating the relevance of these minutes to damages and business information regarding the lead up to the Apotex product launch.  Eagle further clarified that it was requesting information regarding Apotex's strategy—such as, competitive landscape considerations—over and above relevant financial information.  Apotex proposed producing board of directors minutes from June 2022 onwards, i.e., board of director minutes from prior to the trial in the first litigation.  Eagle agrees to Apotex's proposal of producing board of directors minutes

LATHAM&WATKINS LLP

from June 2022 onwards to determine the adequacy of such a production. Please confirm that Apotex will produce board of director minutes from June 2022 onwards by **April 23rd**.

**RFP No. 42:** As explained in Eagle's letter, Eagle requested fifty (50) samples of Apotex's bendamustine product but stated that it would be amenable to reducing the number of samples if Apotex were to agree to—at least in principle—adhere to the prior stipulation entered in C.A. No. 21-1256-CFC-JLH. Apotex stated that it considered fifty (50) samples to be excessive and that the parties were unlikely to reach a comprise regarding the number of samples. Though Apotex confirmed it would provide the approximate cost of producing fifty (50) samples so that Eagle may make an informed decision as to cost coverage, we understand that the parties are at an impasse regarding the samples of Apotex's NDA Product.

### III.   Responses to Apotex's Requests for Further Searches

**IQVIA Data for Bendamustine Products**: Eagle confirms that all accessible IQVIA documents have been produced to Apotex. *See, e.g.*, EAGLEBEN-SA_00002634.

**Physician/Patient Surveys**: Eagle confirms that Eagle ▇▇▇▇▇ reach out to doctors and/or patients regarding their experience(s) or attitude(s)/use(s) of any bendamustine product.

**Citizen's Petitions**: Eagle confirms that ▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, related to any bendamustine product.

**Documents Related to Patient Assistance Programs**: Upon further investigation, Eagle has located documents regarding a Patient Assistance Program starting in ▇▇▇▇▇▇▇. Eagle will produce documents related to Patient Assistance Programs in due course.

**Joint Steering Committee Documents**: Upon further investigation, we have located a few meeting agenda from 2023-2024. We have further investigated and can confirm there were no other meetings or meeting agendas after this time period. Eagle will produce any meeting agendas in due course.

**Third Party Supplier Documents**: Eagle confirms that it has already produced many manufacturing and supply documents, including relevant contracts. *See, e.g.*, EAGLEBEN-SA_00321346; EAGLEBEN-SA_00332859.

### IV.   Conclusion

Thank you for taking the time to discuss these issues during the Meet and Confer. We look forward to your follow-up regarding the outstanding items detailed above.

Sincerely,

*/s/ Ramya Vallabhaneni*
Ramya Vallabhaneni
LATHAM & WATKINS LLP

# EXHIBIT 11

**Welsh, Kelly (DC)**

| | |
|---|---|
| **From:** | Eiten, Lauren <lauren.eiten@katten.com> |
| **Sent:** | Thursday, May 1, 2025 1:13 PM |
| **To:** | Vallabhaneni, Ramya (NY); Chin, Michelle (CH); Ferenc, Christopher B.; Kenneth Dorsney; Cortlan Hitch; ippara@morrisjames.com; El-Khoury, Dawn S.; Soderstrom, Lance A.; Janusz, Joe; Mukerjee, Deepro R.; Malik, Jitty; Schweers, Rachel |
| **Cc:** | #C-M EAGLE BENDAMUSTINE LITIGATION - LW TEAM; EagleLitigation@McCarter.com |
| **Subject:** | RE: Eagle Pharmaceuticals, Inc. v. Apotex Inc., et al., C.A. No. 24-64-JLH (D. Del) |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Ramya,

Further to Magistrate Judge Burke's order this morning, we are writing to provide Eagle with additional information regarding its request for samples. The estimated cost to supply Eagle with 50 vials of Apotex's liquid bendamustine product is ██████████ Apotex maintains its objections to this request. However, please let us know if Eagle is willing to pay for the cost of the requested samples.

Best,

Lauren

**Lauren Eiten**
Associate

**Katten**
Katten Muchin Rosenman LLP
525 W. Monroe Street | Chicago, IL 60661-3693
direct +1.312.902.5268
lauren.eiten@katten.com | katten.com

**From:** Ramya.Vallabhaneni@lw.com <Ramya.Vallabhaneni@lw.com>
**Sent:** Wednesday, April 30, 2025 3:31 PM
**To:** Eiten, Lauren <lauren.eiten@katten.com>; Michelle.Chin@lw.com; Ferenc, Christopher B. <christopher.ferenc@katten.com>; Kenneth Dorsney <kdorsney@morrisjames.com>; Cortlan Hitch <chitch@morrisjames.com>; ippara@morrisjames.com; El-Khoury, Dawn S. <dawn.el-khoury@katten.com>; Soderstrom, Lance A. <lance.soderstrom@katten.com>; Janusz, Joe <joe.janusz@katten.com>; Mukerjee, Deepro R. <deepro.mukerjee@katten.com>; Malik, Jitty <jitty.malik@katten.com>; Schweers, Rachel <rachel.schweers@katten.com>
**Cc:** EAGLEBENDAMUSTINELITIGATION.LWTEAM@lw.com; EagleLitigation@McCarter.com
**Subject:** RE: Eagle Pharmaceuticals, Inc. v. Apotex Inc., et al., C.A. No. 24-64-JLH (D. Del)

*EXTERNAL EMAIL – EXERCISE CAUTION*
Lauren:

We are reviewing the items outlined in your April 25 letter and will respond in due course.

Regards,
Ramya

# EXHIBIT 12

**Shah, Rushabh (CH)**

| | |
|---|---|
| **From:** | Vallabhaneni, Ramya (NY) |
| **Sent:** | Friday, May 2, 2025 3:03 PM |
| **To:** | Ast-Gmoser, Robyn |
| **Cc:** | wproctor@mccarter.com; EagleLitigation@mccarter.com; #C-M EAGLE BENDAMUSTINE LITIGATION - LW TEAM; dsilver@mccarter.com; mzare@mccarter.com; Welsh, Kelly (DC); Grabowski, Alex (CH); Brown, Daniel (DC-NY); DAT@skjlaw.com; NCB@skjlaw.com; Miller, Andrew; Pollack, Alan; Lief, Jason A.; Huttner, Constance |
| **Subject:** | RE: Bendamustine Litigations:  Buxton Deposition |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

| | |
|---|---|
| **Categories:** | KEEP |

Counsel:

We write to memorialize the April 30 meet and confer, and to provide additional updates, as promised.

First, Eagle confirms that its document requests do not seek documents related to Slayback's potential new formulation and share your understanding that said materials are not implicated in the lawsuit. *See* First Set of RFPs at Def. 31 ("As used herein, the term 'Slayback NDA Product' refers to the Slayback Bendamustine Hydrochloride Injection, 100 mg/4 mL (25 mg/mL) product that is the subject of the Slayback NDA, commercially sold under the name 'Vivimusta.'").

Regarding the issue of samples, Eagle continues to believe that the parties are at an impasse. As detailed in our 4/23/2025 email, Eagle has repeatedly requested an answer from Slayback on the issue of samples and received no response from Slayback until Eagle indicated that it would move on the issue.  4/23/2025 email from R. Vallabhaneni to R. Ast-Gmoser.  During the meet and confer, Slayback indicated that it may be willing to produce 30 total samples, 10 per batch.  Slayback also indicated that at this point, it would not enter into a stipulation with Eagle.  However, we understand that Slayback needs to discuss these issues further with its client.  Thus, Eagle believes the parties are still at an impasse.  Of course, if Slayback puts forth a proposal that would moot this issue, we are happy to consider it. Furthermore, we confirm that Eagle will not commit to producing every result of the testing it performs on the samples.

Regarding RFP No. 48, Eagle explained that this request includes messaging between sales force and potential customers including those conducted outside email (e.g., text, Slack, Teams, etc.).  Slayback stated it would not produce "that type of minutia" and believed it was too burdensome.  Slayback asked Eagle to further explain the relevance and provide authority from a Court ordering production of these alternative forms of communications.  Courts in this District have repeatedly held that documents regarding pricing, marketing, and sales are relevant to at least willfulness and damages. *See, e.g.*, *Commissariat a L'energie Atomique v. Samsung Elecs. Co.*, No. 03-484 KAJ, 2006 WL 8452836, at *20 (D. Del. Apr. 13, 2006) (granting motion to compel production of "sales, cost and profit information" as relevant to damages and willfulness). And Courts have required production of all communications between sales force and potential customers. *Eisai Inc. v. Sanofi-Aventis U.S.*, No. 08-4168 MLC, 2011 WL 5416844, at *2 (D.N.J. Nov. 7, 2011) (compelling production of "[a]ll communications between [parties' sales force] and any of its customers or potential customers"). Courts regularly require production of communications in forms other than email. *See, e.g.*, *D'Angelo v. Coatesville Area Sch. Dist.*, No. 14-7325, 2016 WL 3388326, at *7 (E.D. Pa. June 20, 2016) ("Plaintiff is entitled to any [relevant] documentation, communications, email, text messages."); *Sandoz, Inc. v. United Therapeutics Corp.*, No. 19-10170, 2021 WL 2453142, at *2 (D.N.J. June 16, 2021) (ordering production of text messages); *Benebone LLC v. Pet Qwerks, Inc.*, No. 20-850-ABA-FMX, 2021 WL 831025, at *3 (C.D. Cal. Feb. 18, 2021) (finding production of Slack messages not unduly burdensome). Please confirm that Slayback will produce all communications (including those done via text message

and/or using a collaboration platform like Teams or Slack) between its sales force and potential customers regarding pricing, sales, and marketing of Vivimusta by May 6.

Finally, regarding Slayback's proposal on the Azurity deal documents (RFP Nos. 73-79), Eagle will not agree to Slayback only producing final deal documents. However, Eagle agrees to narrow these requests to any and all final deal documents and any and all underlying financial modelling showing the valuations of Slayback and/or Vivimusta. Please confirm whether Slayback will agree to Eagle's counter-proposal.

We further understand that Slayback will revert on the following issues after conducting additional searches and conferring with its client:

- **Rule 26(a)(1) Disclosures**: Eagle explained that Slayback's 26(a)(1) responses were deficient because they did not specify what knowledge each individual had. Slayback confirmed it would put in writing either in revised 26(a)(1) disclosures or an email/letter an explanation of the general field of knowledge of each individual listed in Slayback's initial disclosures.
- **RFP Nos. 5-6 (Lab Notebooks):** Slayback confirmed it produced all lab notebooks that go to its current NDA Product and would provide Eagle the bates-numbers for the produced documents.
- **RFP Nos. 13, 27-31 (Documents Related to Slayback Patent Applications):** Eagle asked whether Slayback searched for relevant non-privileged documents like those between the scientists discussing prior art or Eagle patents. Slayback said it had not reviewed for relevant non-privileged documents but confirmed it will do so and produce anything not privileged that is responsive.
- **RFP Nos. 25 (Changes in Ingredients in NDA Product During Manufacturing):** Thank you for confirming that Slayback does not have any other responsive documents beyond the R&D documents it has already produced in response to this request.
- **RFP No. 32 (Design Around Documents):** Thank you for confirming that Slayback does not have any other responsive documents beyond the R&D documents it has already produced in response to this request.
- **RFP No. 33 (Organizational Charts):** Slayback asked for clarification on the time frame of these charts and if they were needed for all departments. Eagle stated it would like organizational charts dating back the last couple of years for Slayback's R&D team and its sales/marketing team. Slayback committed to looking for these and producing it they could be found after a reasonable search.
- **RFP No. 37 (Witness CVs):** Slayback stated it was willing to commit to searching company files for individuals to be deposed (and trial witnesses) and producing CVs if they exist.
- **RFP No. 34 (Meeting Minutes):** Slayback stated it believes it produced all of the meeting minutes related to the NDA Product and did not intentionally withhold meeting minutes. Slayback said it would confirm in writing it produced all meeting minutes after doing another search.
- **RFP No. 51 (Valuation of Slayback's NDA product):** Slayback stated that it was unprepared to discuss RFP No. 51, but that it would provide a written response shortly. Please confirm that Slayback will provide a written response by May 6.
- **ROGs 12-13:** Slayback stated that it was unprepared to discuss its responses to Interrogatories Nos. 12-13, but that it was in receipt of Eagle's 4/9/2025 letter regarding the interrogatories and would provide a written response shortly. Please confirm that Slayback will provide a written response by May 6.

Regards,
Ramya

**Ramya Sri Vallabhaneni**
*Pronouns: she/her/hers*

**LATHAM & WATKINS LLP**
1271 Avenue of the Americas | New York, NY 10020
D: +1.212.906.2931

# EXHIBIT 13

**Chin, Michelle (CH)**

| | |
|---|---|
| **From:** | Welsh, Kelly (DC) |
| **Sent:** | Wednesday, May 7, 2025 11:40 AM |
| **To:** | Ferenc, Christopher B.; Kenneth Dorsney; Cortlan Hitch; ippara@morrisjames.com; El-Khoury, Dawn S.; Soderstrom, Lance A.; Soderstrom, Lance A.; Janusz, Joe; Mukerjee, Deepro R.; Malik, Jitty; Schweers, Rachel |
| **Cc:** | #C-M EAGLE BENDAMUSTINE LITIGATION - LW TEAM; EagleLitigation@McCarter.com |
| **Subject:** | Eagle Pharmaceuticals, Inc., et al. v. Apotex Inc., et al., C.A. Nos. 24-64-JLH & 25-74-JLH (D. Del.) - Infringement Stipulation |
| **Attachments:** | Stipulation - Impurities Limitations (Apotex).docx |

Counsel,

Please see attached a draft infringement stipulation regarding the impurities limitations of the asserted claims. As Eagle proposed during the parties' meet and confer, if Apotex agrees to stipulate to infringement of the impurities claim limitations, Eagle agrees that Apotex does not need to produce samples of its NDA Product. This would fully resolve the parties dispute regarding samples.

Regards,
Kelly

**Kelly A. Welsh**

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Direct Dial: +1.202.350.5361
Email: kelly.welsh@lw.com
https://www.lw.com

# EXHIBIT 14

**Chin, Michelle (CH)**

| | |
|---|---|
| **From:** | Welsh, Kelly (DC) |
| **Sent:** | Wednesday, May 7, 2025 11:43 AM |
| **To:** | Ast-Gmoser, Robyn; DAT@skjlaw.com; NCB@skjlaw.com; Miller, Andrew; Pollack, Alan; Lief, Jason A.; Huttner, Constance |
| **Cc:** | #C-M EAGLE BENDAMUSTINE LITIGATION - LW TEAM; Eagle Litigation |
| **Subject:** | Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC et al., C.A. Nos. 24-65-JLH & 25-75-JLH (D. Del.) - Infringement Stipulation |
| **Attachments:** | Stipulation - Impurities Limitations (Slayback_Azurity).docx |

Counsel,

Please see attached a draft infringement stipulation regarding the impurities limitations of the asserted claims. As Eagle proposed during the parties' meet and confer, if Slayback and Azurity agree to stipulate to infringement of the impurities claim limitations, Eagle agrees that Slayback and Azurity do not need to produce samples of their NDA Product. This would fully resolve the parties dispute regarding samples.

Regards,
Kelly

**Kelly A. Welsh**

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Direct Dial: +1.202.350.5361
Email: kelly.welsh@lw.com
https://www.lw.com

# EXHIBIT 15

**Shah, Rushabh (CH)**

| | |
|---|---|
| **From:** | Vallabhaneni, Ramya (NY) |
| **Sent:** | Wednesday, April 2, 2025 2:41 PM |
| **To:** | Ast-Gmoser, Robyn; Grabowski, Alex (CH); Hancock, Sydney (ATX); Lief, Jason A.; Welsh, Kelly (DC); Miller, Andrew; Huttner, Constance; dtaylor@skjlaw.com; mdaughton@skjlaw.com; nbelgam@skjlaw.com; vkm@skjlaw.com |
| **Cc:** | #C-M EAGLE BENDAMUSTINE LITIGATION - LW TEAM; EagleLitigation@McCarter.com |
| **Subject:** | RE: Eagle Pharmaceuticals, Inc. v. Slayback Pharma LLC, C.A. No. 24-65-JLH (D. Del.) |

Robyn:

Thank you for the productive meet and confer today.

We understand that Slayback will provide and/or update its responses to the following issues by **Wednesday, April 9**:

- Rule 26(a)(1) and Paragraph 3 Disclosures: Slayback will provide updated Rule 26(a)(1) and Paragraph 3 Disclosures, and in particular, will provide the names of custodians relevant to damages, sales, and marketing.
- Azurity: Slayback will confirm whether it will accept service of any deposition notices to relevant Azurity employees. Slayback will also confirm its position on adding Azurity as a party to the case.
- RFP Nos. 73-79: Slayback stated that it understood these requests were tied to willful infringement. After Eagle explained that RFP Nos. 73-79 were relevant to damages, Slayback agreed to review its responses to RFP Nos. 73-79 and provide any updates.
- March 4, 2025 Letter: Eagle stated that it did not waive the remaining issues outlined in its March 4, 2025 letter and still expected a response from Slayback. Slayback stated that it understood and would respond to the remaining issues (e.g., RFP Nos. 5-6, 13, 27-31, 25, 33, 34, 37, and 48).
- Samples: Slayback explained that any current samples it had were commercial batches, and that fifty batches would be too burdensome to produce. Eagle stated that it would be amenable to receiving fewer commercial batches from Slayback to the extent that Slayback would stipulate that every commercial batch was representative of its product. Slayback further agreed to review the stipulation in the 2021 litigation regarding infringement of the 223 nanometer limitation and provide its position on whether it agreed that the stipulation still stands, which would reduce the number of samples Eagle needed for testing. Slayback also agreed to get back to Eagle regarding the number of samples it would be willing to produce.

We further understand that Slayback has already produced any relevant, non-privileged documents in response to RFP No. 32. We also understand that Slayback is working with a third party to produce lab notebooks that are responsive to RFP Nos. 5-6.

Regards,
Ramya

**Ramya Sri Vallabhaneni**
*Pronouns: she/her/hers*

**LATHAM & WATKINS LLP**
1271 Avenue of the Americas | New York, NY 10020
D: +1.212.906.2931

---

**From:** Ast-Gmoser, Robyn <rast-gmoser@windelsmarx.com>
**Sent:** Wednesday, April 2, 2025 7:58 AM
**To:** Grabowski, Alex (CH) <Alex.Grabowski@lw.com>; Vallabhaneni, Ramya (NY) <Ramya.Vallabhaneni@lw.com>;

# EXHIBIT 16

**Ramya Vallabhaneni**
Direct Dial: 1.212.906.2931
ramya.vallabhaneni@lw.com

330 North Wabash Avenue
Suite 2800
Chicago, Illinois  60611
Tel: +1.312.876.7700  Fax: +1.312.993.9767
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Silicon Valley |
| Hong Kong | Singapore |
| Houston | Tel Aviv |
| London | Tokyo |
| Los Angeles | Washington, D.C. |
| Madrid | |

April 17, 2025

<u>**VIA EMAIL**</u>

Christopher B. Ferenc
Katten Muchin Rosenman LLP
1919 Pennsylvania Ave., NW., Suite 800
Washington, DC 20006

> Re:   *Eagle Pharmaceuticals, Inc. v. Apotex Inc., et al.*, C.A. No. 24-64-JLH (D. Del.)

Counsel:

We write to follow up on our April 8, 2025 meet and confer ("Meet and Confer") and to confirm our understanding of the parties' agreements and next steps.

### I.    <u>Follow-Up Required by Apotex</u>

With respect to the deficiencies Eagles identified in Apotex's production of damages-related documents in its March 14, 2025 letter ("letter"), the issues addressed during our call are summarized below:

**RFP Nos. 45, 46, and 55:** During the Meet and Confer, Eagle acknowledged receipt of forecasted financials but articulated the absence of *actual* sales information such as *actual* unit sales, gross revenue, net revenue, gross profits, operating profits, net profits, and costs through the end of the 2024 fiscal year.  Apotex's counsel confirmed that they were currently in active discussions with Apotex regarding the production of updated financial information and confirmed that they would provide an update regarding the actual financials.  Having received no such update, we believe we have come to an impasse on these issues and intend to seek relief from the Court.

**RFP No. 41:** Apotex has not produced all responsive agreements or documents for several relevant marketing and manufacturing entities with whom Apotex has agreements, such as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  During the Meet and Confer, Eagle requested that Apotex produce all relevant documents because Eagle had only received a fraction, rather than the totality, of documents responsive to RFP No. 41.  Apotex confirmed that it was reviewing the specific

documents that Eagle identified in the March 14, 2025 letter and confirmed that Apotex would provide an update early in the following week of Monday, April 14, 2025.  Having received no such update, we believe we have come to an impasse on these issues and intend to seek relief from the Court.

**RFP No. 52:** Eagle noted that thus far, Apotex has not produced any of the materials used to train its sales team or any of the materials that the sales team uses to market and promote the Apotex NDA product.  Eagle explained that these documents are relevant to, at least, issues associated with inducement and damages.  Apotex maintained that it had searched for and produced all relevant documents but also that Apotex's counsel had not had the opportunity to discuss the issue with Apotex and would do so.  Apotex's counsel also confirmed that it would speak with Apotex about whether the relevant documents would include third-party materials. Having received no such update, we believe we have come to an impasse on these issues and intend to seek relief from the Court.

**RFP Nos. 47-49, 54, and 56:** During the Meet and Confer, Eagle reiterated that Apotex had not produced any communications regarding pricing and had again only produced insufficient summary reports.  Eagle noted that the existence of such pricing communications was clear from the existence of the summary reports, further noting that Apotex had not produced the communications themselves.  Apotex's counsel stated that there were no documents from the initial ESI searches that had not been produced but that they would discuss and investigate the issue further with Apotex.  Please confirm that Apotex will produce any communications regarding pricing by **April 23, 2025**.

**RFP No. 57:** During the Meet and Confer, Eagle reiterated that Apotex had not produced any communications between its sales force regarding the sale, marketing, pricing and/or promotion of Apotex's NDA product nor identified a relevant custodian who communicates with Apotex's sales force, sales personnel, or marketing personnel.  Apotex stated that it had identified Michael Bohling—Vice President of Sales and Marketing—as a relevant custodian in Apotex's Paragraph 3 disclosures; however, Apotex's counsel acknowledged the need to discuss further with Apotex. Eagle articulated concerns that Michael Bohling was not a relevant custodian because of the absence of relevant documents that Eagle would otherwise have received.  However, Eagle also stated that Apotex's identification and production of relevant documents would be the preferred solution but acknowledged that Apotex's disclosure of a relevant custodian would be an acceptable alternative.  Apotex's counsel agreed to investigate and discuss the issue further with Apotex and provide an update by earlier this week.  Having received no such update, we believe we have come to an impasse on these issues and intend to seek relief from the Court.

## II.    Apotex's Responses and Objections to Eagle's Requests for Production

With respect to Apotex's Responses and Objections to Eagle's Requests for Production ("RFPs"), the issues addressed during the Meet and Confer are summarized below:

**RFP Nos. 5-7, 17, 18, 23, 24, and 32:** As acknowledged in Eagle's letter, Apotex had previously confirmed the reproduction of all the documents produced in the prior RTU litigation

LATHAM&WATKINSLLP

(C.A. No. 21-1256-CFC-JLH) in the current matter.  Following the letter, Apotex had provided a range of Bates numbers in the current productions that correspond to the documents from the prior RTU litigation.  Christopher B. Ferenc, Email to Rushabh Shah, "Eagle Pharmaceuticals, Inc. v. Apotex Inc., et al., C.A. No. 24-64-JLH (D. Del): Prior RTU Litigation Document Production," (Apr. 1, 2025) (on file with author).  During the Meet and Confer, Eagle explained that Eagle's vendor had analyzed the current document production and was unable to confirm whether more than 1,000 documents from the prior RTU litigation were, in fact, reproduced.  Eagle requested a cross-reference list to verify Apotex's claim that it had reproduced all of the documents from the previous RTU litigation.  Apotex represented that Eagle has been in receipt of all documents produced in the prior RTU litigation as of September 2024 and that it did not have a cross-reference list to provide to Eagle but that Eagle could identify specific documents from the prior RTU litigation that may not be included in the current document production.  Eagle confirmed that it would identify any missing documents and subsequently inform Apotex.

**RFP Nos. 26, 28, and 30:** Eagle identified an obvious absence of marketing and sales documents which suggested that Apotex had not identified the correct custodians in its Paragraph 3 disclosures.  Apotex noted that the parties had negotiated the ESI search terms and, at that time, Eagle had not identified any additional custodians, noting further that Apotex had not withheld any documents for privilege or responsiveness.  The parties disagree on whether Apotex has met its discovery obligations, but Apotex agreed to review documents to the extent Eagle could identify specific documents. Apotex stated that sales or marketing documents did not fall within the ambit of RFP Nos. 26, 28, and 30, and that the NDA documents that Apotex had produced were responsive to RFP No. 26.  Apotex represented that it was unaware of nonprivileged documents responsive to RFPs Nos. 28 and 30.  Apotex further represented that there were no additional non-privileged documents responsive to RFP No. 26 apart from the documents that Apotex had already produced.

**RFP Nos. 33 and 37:** Eagle requested organizational charts and the curricula vitae of the individuals identified in Apotex's initial disclosures. Eagle further clarified that it was narrowly requesting the curricula vitae and not the entire personnel files of relevant individuals and that even curricula vitae that was not up to date would be acceptable.  Apotex agreed to confirm the existence of the documents and then to revisit the discussion with Eagle. Please confirm that Apotex will confirm the existence of the documents by **April 23rd**.

**RFP No. 34:** During the Meet and Confer, Apotex objected to Eagle's request to produce board of directors meeting minutes because the request was not timebound, claiming further that any board of directors meeting minutes would likely be privileged because of previous litigation with Eagle during the relevant time period.  Eagle requested board of directors minutes from December 2021 onwards, articulating the relevance of these minutes to damages and business information regarding the lead up to the Apotex product launch.  Eagle further clarified that it was requesting information regarding Apotex's strategy—such as, competitive landscape considerations—over and above relevant financial information.  Apotex proposed producing board of directors minutes from June 2022 onwards, i.e., board of director minutes from prior to the trial in the first litigation.  Eagle agrees to Apotex's proposal of producing board of directors minutes

LATHAM&WATKINS LLP

from June 2022 onwards to determine the adequacy of such a production. Please confirm that Apotex will produce board of director minutes from June 2022 onwards by **April 23rd**.

**RFP No. 42:**  As explained in Eagle's letter, Eagle requested fifty (50) samples of Apotex's bendamustine product but stated that it would be amenable to reducing the number of samples if Apotex were to agree to—at least in principle—adhere to the prior stipulation entered in C.A. No. 21-1256-CFC-JLH.  Apotex stated that it considered fifty (50) samples to be excessive and that the parties were unlikely to reach a comprise regarding the number of samples.  Though Apotex confirmed it would provide the approximate cost of producing fifty (50) samples so that Eagle may make an informed decision as to cost coverage, we understand that the parties are at an impasse regarding the samples of Apotex's NDA Product.

### III.    Responses to Apotex's Requests for Further Searches

**IQVIA Data for Bendamustine Products**: Eagle confirms that all accessible IQVIA documents have been produced to Apotex. *See, e.g.*, EAGLEBEN-SA_00002634.

**Physician/Patient Surveys**:  Eagle confirms that Eagle ▮▮▮▮▮ reach out to doctors and/or patients regarding their experience(s) or attitude(s)/use(s) of any bendamustine product.

**Citizen's Petitions**:  Eagle confirms that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, related to any bendamustine product.

**Documents Related to Patient Assistance Programs**: Upon further investigation, Eagle has located documents regarding a Patient Assistance Program starting in ▮▮▮▮▮▮▮.  Eagle will produce documents related to Patient Assistance Programs in due course.

**Joint Steering Committee Documents**:  Upon further investigation, we have located a few meeting agenda from 2023-2024.  We have further investigated and can confirm there were no other meetings or meeting agendas after this time period.  Eagle will produce any meeting agendas in due course.

**Third Party Supplier Documents**:  Eagle confirms that it has already produced many manufacturing and supply documents, including relevant contracts. *See, e.g.*, EAGLEBEN-SA_00321346; EAGLEBEN-SA_00332859.

### IV.    Conclusion

Thank you for taking the time to discuss these issues during the Meet and Confer.  We look forward to your follow-up regarding the outstanding items detailed above.

Sincerely,

*/s/ Ramya Vallabhaneni*
Ramya Vallabhaneni
LATHAM & WATKINS LLP

# EXHIBIT 17

# Katten

**525 W. Monroe Street**
**Chicago, IL 60661-3693**
**+1.312.902.5200 tel**
**katten.com**

LAUREN EITEN
lauren.eiten@katten.com
+1.312.902.5268 direct
   fax

April 25, 2025

**VIA EMAIL**

Maliheh Zare
MCCARTER & ENGLISH, LLP
405 N. King Street, 8th Floor
Wilmington, DE 19801

Alex Grabowski
LATHAM & WATKINS
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611

*Re:*    *Eagle Pharmaceuticals, Inc. v. Apotex Inc., et al.*, C.A. No. 24-64-JLH (D. Del.) – **Discovery Disputes**

Counsel:

We write in response to your April 16, 2025 letter and the parties' April 8, 2025 meet and confer ("Meet and Confer").

## I.   Eagle's Responses and Objections to Defendants' First Set of Request for Production

We have reviewed Eagle's responses to Defendants' First Set of Request for Production and Eagle's document production, and we have identified several remaining deficiencies as set forth below. We request supplementation of your production. If you believe supplementation of discovery is not required, we request a meet and confer for the week of April 28.

### a)  RFP Nos. 16-20, 22-23, and 48

As discussed during the parties' April 8, 2025 meet and confer, documents responsive to these requests are relevant to several issues in the case, including damages. As previously discussed, at least the following categories of documents are contemplated by these requests: (i) strategy documents such as brand plans, long-range planning document, market research, SWOT analyses, etc.; (ii) prescription and sales data from IQVIA/Symphony Health for bendamustine products and any of their potential therapeutic alternatives; (iii) surveys of physicians and patients regarding attitudes, experiences, and uses of bendamustine products; (iv) financial sales projections; and (v) documents describing marketing efforts (e.g., commercialization plans, marketing team analyses, communications with customers, etc.). On April 7, 2025, Eagle produced a limited number of

KATTEN MUCHIN ROSENMAN LLP

CHARLOTTE   CHICAGO   DALLAS   LOS ANGELES   NEW YORK
ORANGE COUNTY   SHANGHAI   WASHINGTON, DC
A limited liability partnership including professional corporations
LONDON: KATTEN MUCHIN ROSENMAN UK LLP

# Katten

{name}|\n
April 25, 2025
Page 2

brand strategy and marketing documents responsive to these requests, including at least the following responsive documents:

| | | |
|---|---|---|
| EAGLEBEN-SA_00344354 | ██████████ | 10/11/23 |
| EAGLEBEN-SA_00344370 | ██████████ | 12/11/2024 |
| EAGLEBEN-SA_00344388 | ██████████ | Date Unknown |
| EAGLEBEN-SA_00344399 | ██████████ | Date Unknown |
| EAGLEBEN-SA_00344400 | ██████████ | 3/5/2024 |
| EAGLEBEN-SA_00344611 | ██████████ | 3/22/2023 |
| EAGLEBEN-SA_00344763-EAGLEBEN-SA_00345610 | Eagle 10Ks | 2018-2021 |

Eagle's production remains deficient. Notably, Eagle's production suggests that additional responsive documents likely exist. For example, Eagle produced certain "Q1" versions of documents but not other versions from different quarters. *See, e.g.*, EAGLEBEN-SA_00344611. Similarly, the limited brand plan documents produced only go back as far ████. Apotex is entitled to receive all brand strategy and marketing documents from at least 2021 when Eagle first sued Apotex in connection with NDA No. 215033. As you know, Apotex defeated Eagle's claims of infringement at trial in September 2022, which was upheld on appeal, and subsequently launched its product. Similarly, in December 2022, several generic bendamustine powder products entered the market, which are referenced throughout the documents already produced. *See, e.g.*, EAGLEBEN-SA_00344611; EAGLEBEN-SA_00344400 (identifying ██████████ ███████████). Accordingly, Eagle's communications and documents regarding its brand strategy before, during, and after these events are relevant to at least Eagle's damages theories including lost profits and price erosion. Indeed, Apotex has not been able to identify a single email communication produced by Eagle in these time frames regarding these events, despite Eagle's contentions regarding their relevance to Eagle's sales of its bendamustine products. Apotex is entitled to discovery into these. Please confirm that Eagle will produce all versions of its brand strategy documents (or similarly titled documents) regarding its bendamustine products from 2021 to present day and any related communications by April 30.

In its April 17 letter, Eagle confirms it has produced all accessible IQVIA documents. Please also confirm Eagle does not have access to any prescription and sales data from Symphony Health by April 30.

# Katten

{name}|\n
April 25, 2025
Page 3

While Apotex appreciates Eagle confirming it ████ reach out to doctors and/or patients regarding their experiences, please confirm Eagle does not have any patient and/or physician surveys in their possession, custody or control. For example, does a third party conduct patient or physician surveys on its behalf and Eagle would have these surveys in its possession and/or has Eagle reached out to ████████████████████ for any such surveys? Please provide confirmation by April 30.

Additionally, we have still not been able to identify any "documents describing marketing efforts (e.g., commercialization plans, marketing team analyses, communications with customers, etc.)" in Eagle's production even though Eagle implements a comprehensive SalesForce database that can track "████████████████████████████████████████████████████" with customers. *See*, *e.g.*, EAGLEBEN-SA 00344486. Indeed, Apotex has not received any information from Eagle to date that tracks the marketing expenditures regarding the promotion and sale of its bendamustine products. Accordingly, please confirm that Eagle will produce all its commercialization plans and relevant marketing documents from its SalesForce database by April 30.

Further, the documents produced on April 7 referenced additional responsive documents that have not been produced in this case. For example, the documents reference contracts between Eagle and a third party (*e.g.*, ████████████████████████████ ). *See*, *e.g.*, EAGLEBEN-SA_00344354; EAGLEBEN-SA_00340052; EAGLEBEN-SA_00340050; and EAGLEBEN-SA_00344400. These agreements are responsive to RFP No. 19, which seeks contracts concerning any strategic, business, or marketing plans with respect to BELRAPZO®, BENDEKA®, or any other Bendamustine Product. Accordingly, please confirm that Eagle will produce by April 30 copies of these agreements, including any draft agreements exchanged between the contracting parties and communications regarding the same.

**b)  RPF No. 21**

Eagle's April 7 production also revealed that Eagle's response to RFP 21 is deficient. For example, Eagle has failed to produce customer contracts it has entered into for its bendamustine products. For example, the ████████████████████ presentation produced by Eagle identifies several customer contracts by name and contract ID (*e.g.*, ████████████████████████████████████ ). *See, e.g.,* EAGLEBEN-SA_00344400; EAGLEBEN-SA_00344354; EAGLEBEN-SA_00344466; and EAGLEBEN-SA_00344370. Each of these contracts contains information relevant and proportional to the damages theories raised by Eagle in this case. Accordingly, please confirm that Eagle will produce by April 30 copies of every customer agreement entered into by Eagle concerning its bendamustine products and a copy of the underlying database indicated on EAGLEBEN-SA_00344466-EAGLEBEN-SA_00344467.

# Katten

{name}|\n
April 25, 2025
Page 4

### c) RFP No. 41

As discussed during the meet and confer, and as confirmed by Eagle's recently produced documents, Eagle provides one or more patient assistance programs regarding its bendamustine products. *See, e.g.*, EAGLEBEN-SA_00333264. Further, Eagle's recently produced documents suggest Eagle also provides one or more provider support programs. *See, e.g.,* EAGLEBEN-SA_00344370. Please confirm that Eagle will produce all documents, not just documents from ███████████ onward, relating to its patient assistance programs and/or provider support programs by April 30.

## RFP Nos. 54-55, 57-58, and 60-61

As discussed during the parties' April 8, 2025 meet and confer, Apotex agreed to narrow the scope of these requests to joint steering committee meeting minutes and commercialization plans. In its April 17 letter, Eagle represents it will produce "a few meeting agenda from 2023-2024." This response is deficient for two reasons. First, Apotex is entitled to receive all joint steering committee documents from at least 2021 when Eagle first sued Apotex in connection with NDA No. 215033. Second, Apotex's request is not limited to agendas. Please confirm that Eagle will produce all joint steering committee agendas and minutes from 2021 to present day by April 30.

## II. Eagle's Supplemental Objections and Responses to Apotex's First Set of Interrogatories

Eagle's initial and supplemented responses to Apotex's First Set of Interrogatories Nos. 1, 2, 5, and 8 remain deficient.

### a) Interrogatory No. 1

As to Interrogatory No. 1, Eagle's supplemental identification of documents pursuant to Fed. R. Civ. P. 33(d) does not fulfill its obligations under the Federal Rules. For example, none of the documents provide Eagle's plan to seek lost profits, including at least due to ████████████████████ caused by Apotex's alleged infringement; the time period for when it will seek lost profits damages; and the facts Eagle's experts plan to rely on to support their calculation of the total damages owed by Apotex pursuant to Eagle's lost profits damages model. Eagle cannot withhold this information until the disclosure of expert reports. Apotex is entitled to discovery regarding the facts that support Eagle's damages theories in this case now, so that it may explore them during depositions in the fact discovery phase of the case. *See Integra Lifesciences Corp. v. Hyperbranch Med. Tech., Inc.*, No. CV 15-819-LPS-CJB, 2017 WL 11558096, at *8 (D. Del. Dec. 11, 2017) ("Defendant was entitled to learn something about the facts that Plaintiffs' damages expert would

# Katten

{name}|\n
April 25, 2025
Page 5

be relying upon prior to being served with the [Expert] Report, so that those facts could then be vetted in discovery."). Moreover, Eagle identifies large swaths of documents that presumably support its wide-ranging damages theories yet fails to provide any explanation as to how these documents support Eagle's contentions. As the party claiming damages, Eagle bears the burdens of production and persuasion as to these issues. Rule 33(d) is unavailable to Eagle in this context because the burden of deriving or ascertaining the answer to Apotex's interrogatory from the multitude of documents cited by Eagle is not the substantially the same for either party. Eagle's continued failure to support its expansive damages contentions only works to prejudice Apotex by depriving it of the ability to explore the veracity of Eagle's damages claims during fact depositions. The parties, therefore, are at an impasse on this issue, and Apotex will seek relief from the Court.

### b)  Interrogatory No. 2

As to Interrogatory No. 2, Eagle's supplemental identification of documents pursuant to Fed. R. Civ. P. 33(d) does not address the deficiencies previously raised by Apotex. For example, none of the documents provide Eagle's contention for the ███████████████████████████████████ ████████████████████████████████████████████████████████████████. Eagle cannot withhold this information until the disclosure of expert reports. Apotex is entitled to discovery regarding the facts that support Eagle's damages theories in this case now. *Id.* Similarly, it is unclear which documents identified pursuant to Rule 33(d) pertain to the specific damages contentions provided by Eagle. For example, Eagle identifies large swaths of documents that presumably support its wide-ranging damages theories yet fails to provide any explanation as to how these documents support Eagle's contentions. As the party claiming damages, Eagle bears the burdens of production and persuasion as to these issues. Rule 33(d) is unavailable to Eagle in this context because the burden of deriving or ascertaining the answer to Apotex's interrogatory from the multitude of documents cited by Eagle is not the substantially the same for either party. Eagle's continued failure to support its expansive damages contentions only works to prejudice Apotex by depriving it of the ability to explore the veracity of Eagle's damages claims during fact depositions. The parties, therefore, are at an impasse on this issue, and Apotex will seek relief from the Court.

### c)  Interrogatory No. 5

Eagle failed to provide any supplemental response to Interrogatory No. 5. Eagle's initial response to this interrogatory is and remains deficient. As noted in Apotex's February 28, 2025 to Eagle's counsel, Eagle has provided no factual bases to support its contention that it is entitled to injunctive relief. For example, Eagle must identify factual support for its contentions that: (i) "███████████████████████████████████████████████"; (ii) "████████████████████████████████ ██████████████████████████████████████████████████████████████████"; and (iii) "█████████ ████████████████████████████████████████████████████████████████████████████████████████████

# Katten

{name}|\n
April 25, 2025
Page 6

█████████████████████████" *See* 2025.02.28 – Apotex Discovery Deficiency Letter. Full factual bases for each of Eagle's damages theories are plainly relevant. Eagle must provide them. The parties, therefore, are at an impasse on this issue, and Apotex will seek relief from the Court.

### d) Interrogatory No. 8

As to Interrogatory No. 8, Eagle's supplemental response remains deficient because Eagle exclusively relied on identification of documents pursuant to Fed. R. Civ. P. 33(d), and none of the documents Eagle cited included any communications among Eagle employees regarding the entry of the generic bendamustine products. The parties, therefore, are at an impasse on this issue, and Apotex will seek relief from the Court.

## III. Apotex's Responses and Objections to Eagle's Requests for Production

### a) RFP Nos. 45, 46, and 55

Apotex is compiling supplemental financial information that it anticipates producing by May 2.

### b) RFP No. 41

Apotex is collecting responsive documents and anticipates producing by May 2.

### c) RFP No. 52

After a reasonable search, Apotex has not identified any "materials used to train its sales team" or "any materials that the sales team uses to market and promote" its bendamustine products that have not already been produced in this case.

### d) RFP Nos. 47-49, 54, and 56

Apotex is compiling supplemental pricing documents that it anticipates producing by May 2.

### e) RFP No. 57

Apotex's selection of Mr. Michael Bohling and Mr. David Link as custodians for the ESI search agreed upon by the parties was appropriate because these individuals are the persons within Apotex that are most knowledgeable regarding the "sale, marketing, pricing and/or promotion" of Apotex's bendamustine products. As previously discussed, Apotex has previously produced all non-privileged documents uncovered from this search. Apotex further responds that it does not employ a "sales force" for its bendamustine products, and thus, there are no such custodians for additional searching.

# Katten

{name}|\n
April 25, 2025
Page 7

**f) RFP Nos. 33 and 37**

Apotex does not maintain the requested organizational charts. Apotex is reviewing the personnel files of listed individuals for any CVs and, if they exist, will produce the same.

**g) RFP No. 34**

Apotex has conducted a reasonable search for the requested meeting minutes. No documents responsive to this request exist.

**h) RFP No. 42**

Apotex is collecting this information and will provide early next week.

\* \* \* \*

For the reasons set forth above, supplementation is necessary by April 30, 2025, so that Apotex can adequately prepare for the noticed depositions in this case. If Eagle is unable, or unwilling to supplement any of the discovery identified above, please provide your availability for a meet and confer the week of April 28.

Sincerely,

*Lauren Eiten*

Lauren Eiten

# EXHIBIT 18

# EXHIBIT REDACTED IN ITS ENTIRETY

# EXHIBIT 19





HIGHLY CONFIDENTIAL

APOBENDA64_018777

# EXHIBIT 20

## Shah, Rushabh (CH)

| | |
|---|---|
| **From:** | Vallabhaneni, Ramya (NY) |
| **Sent:** | Wednesday, May 7, 2025 12:51 PM |
| **To:** | Eiten, Lauren; Shah, Rushabh (CH) |
| **Cc:** | Grabowski, Alex (CH) |
| **Subject:** | RE: Meet & Confer -- Bendamustine Litigations |

Hi Lauren,

Below are the bates numbers.

APOBENDA64_024296
APOBENDA64_018777

Regards,
Ramya

**Ramya Sri Vallabhaneni**
*Pronouns: she/her/hers*

**LATHAM & WATKINS LLP**
1271 Avenue of the Americas | New York, NY 10020
D: +1.212.906.2931

---

**From:** Eiten, Lauren <lauren.eiten@katten.com>
**Sent:** Wednesday, May 7, 2025 1:37 PM
**To:** Vallabhaneni, Ramya (NY) <Ramya.Vallabhaneni@lw.com>; Shah, Rushabh (CH) <Rushabh.Shah@lw.com>
**Subject:** RE: Meet & Confer -- Bendamustine Litigations

Hi Ramya and Rushabh,

Can you please send me the bates number for the documents identified during the meet and confer yesterday?

Thank you,

Lauren

**Lauren Eiten**
Associate

# Katten

Katten Muchin Rosenman LLP
525 W. Monroe Street | Chicago, IL 60661-3693
direct +1.312.902.5268
lauren.eiten@katten.com | katten.com

---

**From:** Ramya.Vallabhaneni@lw.com <Ramya.Vallabhaneni@lw.com>
**Sent:** Monday, May 5, 2025 12:36 PM
**To:** Judah.Bellin@dechert.com; DSilver@McCarter.com; wproctor@McCarter.com; rast-gmoser@windelsmarx.com;
Ferenc, Christopher B. <christopher.ferenc@katten.com>; akayal@windelsmarx.com; amiller@windelsmarx.com;

# EXHIBIT 21

## Chin, Michelle (CH)

| | |
|---|---|
| **From:** | Ferenc, Christopher B. <christopher.ferenc@katten.com> |
| **Sent:** | Friday, May 9, 2025 12:01 PM |
| **To:** | Chin, Michelle (CH); Welsh, Kelly (DC); Kenneth Dorsney; Cortlan Hitch; ippara@morrisjames.com; El-Khoury, Dawn S.; Soderstrom, Lance A.; Soderstrom, Lance A.; Janusz, Joe; Mukerjee, Deepro R.; Malik, Jitty; Schwees, Rachel; Sodikoff, Brian; Eiten, Lauren |
| **Cc:** | #C-M EAGLE BENDAMUSTINE LITIGATION - LW TEAM; EagleLitigation@McCarter.com |
| **Subject:** | RE: Eagle Pharmaceuticals, Inc., et al. v. Apotex Inc., et al., C.A. Nos. 24-64-JLH & 25-74-JLH (D. Del.) - Infringement Stipulation |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Counsel,

We have considered your proposal to resolve the "samples" dispute. Apotex cannot agree to this stipulation for several reasons. First, Apotex is not bound to any statements of fact made in the RTU case, as a different patent was at issue in that case and the parties made compromises solely to streamline issues for trial in that action. Notably, the parties only reached this agreement late in the case after Eagle had proffered its expert report on the relevant limitation. Second, the issues of infringement in the RTU case are readily distinguishable from the present action. As Eagle made clear in its opposition to Apotex's Rule 12(c) motion, "[w]hether Apotex's NDA Product infringes depends on its composition when the act of infringement occurs. ... But, the subject of infringement is Apotex's NDA Product *as imported into, sold, and used in the United States*[.]" D.I. 60 at 6 (emphasis in original). In the RTU case, Apotex had not yet launched its liquid bendamustine product, so no similar issues existed. Third, the proffered stipulation exceeds the scope of Eagle's prior offer, as it includes claim elements not at issue in the RTU case (e.g., claim 4 of the '214 and '248 patents; claim 8 of the '783 patent). If you have evidence of infringement on this issue, please provide the same so that we can consider it with our client.

Regarding the request for samples, we remain of the view that the number of samples sought by Eagle is excessive and imposes an unnecessary and excessive burden on Apotex. We renew our offer to provide Eagle with the requested 50 samples, on the condition that Eagle pays for the cost of the requested samples in advance, which is approximately ███████. We still have not received Eagle's response to this offer.

On the "sales force" dispute, we have reviewed the documents identified during the parties' meet and confer. Nothing in these documents impacts our prior representation that the previously agreed upon ESI search satisfied Apotex's obligations to respond to Eagle's RFP No. 57. As previously, explained, Mr. Bohling and Mr. Link are the two most knowledgeable individuals within Apotex regarding the sale of its liquid bendamustine product. Both of these individuals were custodians for the ESI search. As previously represented to Eagle, Apotex does not employ a "sales force" for its bendamustine products, so there is no further custodian to identify that would satisfy Eagle's demand for additional custodial searches. We further note that Eagle recently noticed the depositions of Mr. Bohling and Mr. Link and is free to explore these topics at their deposition.

Regards,
Chris

**Christopher B. Ferenc**
Partner

**Katten**
Katten Muchin Rosenman LLP