# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EAGLE PHARMACEUTICALS, INC., <br><br> Plaintiff, <br><br> v. <br><br> APOTEX INC., AND APOTEX CORP, <br><br> Defendants. | **REDACTED PUBLIC VERSION** <br> **FILED MAY 28, 2025** <br> C.A. No. 24-64-JLH <br><br> **JURY TRIAL DEMANDED** <br><br> ▮▮▮▮▮▮▮▮ <br> ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ <br> ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ <br> ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ |
| EAGLE PHARMACEUTICALS, INC., <br><br> Plaintiff, <br><br> v. <br><br> SLAYBACK PHARMA LLC, <br><br> Defendant. | C.A. No. 24-65-JLH <br><br> **JURY TRIAL DEMANDED** |

**LETTER TO THE HONORABLE CHRISTOPHER J. BURKE FROM DANIEL M. SILVER REGARDING PLAINTIFF'S REPLY DISCOVERY DISPUTE LETTER**

May 21, 2025<br>Page 1

Dear Judge Burke:

**I.     Defendants Should Produce Samples At No Cost To Plaintiff**

Defendants should bear the cost of producing samples of their accused NDA products. Defendants do not dispute that such samples are relevant or that Eagle is entitled to them. Defendants merely argue that 50 samples is excessive.  That argument fails.

Initially, Defendants distort several aspects of the parties' back-and-forth during the ***11 months*** in which Eagle has sought the samples at issue.  Eagle explained that those samples are relevant to infringement of the impurities limitation in all asserted claims.  *See* U.S. Patent No. 11,844,783 (Claim 1, 8); U.S. Patent No. 11,872,214 (Claims 1, 4, 6); U.S. Patent No. 12,138,248 (Claims 1, 4, 8).  Eagle was also willing to negotiate the number of samples.  Ex. 15; Ex. 8 at 3. And Eagle asked Defendants for their position of the acceptable number of samples. Ex. 15.  But Defendants never made a counter-offer.

Further, Eagle offered to forgo the samples entirely if Defendants would stipulate that the accused products met the "stability" limitation.  Ex. 13; Ex. 14.  Defendants claim this stipulation is "overbroad," but that is far from true—it goes to the precise claim limitation at issue, no more. In fact, Defendants stipulated that the ***exact same products*** met the ***exact same limitation*** in a prior case between the Parties.  *Eagle Pharm., Inc. v. Slayback Pharma LLC, et al.*, No. 21-1256 (D. Del.), D.I. 102, Ex. 1 ¶¶ 65, 67-68, 77, 79-80.  This same stipulation cannot now be "overbroad." And, regardless, Defendants never made a stipulation counter-offer.

Instead of adopting their prior stipulation or countering on the number of samples, Defendants demand Eagle pay ▮▮▮▮▮▮ per Defendant.  That demand is extraordinary and should be rejected.  Defendants cite *Oppenheimer Fund, Inc. v. Sanders*, but that case supports Eagle because the Court explained "the presumption is that the ***responding party must bear the expense*** of complying with discovery requests."  437 U.S. 340, 358 (1978).  Courts in this circuit have also held that in addition to that "general presumption," the "***responding party also has the burden of proof on a motion or request for cost-shifting*** to demonstrate cost-shifting is warranted."  *MSP Recovery Claims, Series, LLC v. Sanofi-Aventis U.S. LLC*, No. 18-2211, 2023 WL 4562998, at *5 (D.N.J. July 14, 2023); *see also Procter & Gamble Co. v. Be Well Mktg., Inc.*, No. 12-392, 2013 WL 152801, at *4 (M.D. Pa. Jan. 15, 2013) (ordering producing party to produce samples at its own cost because it did not show that producing them would be an undue burden).

Defendants have not done so here.  Defendants admittedly base their request not on their actual costs of producing the requested discovery, but rather on the wholesale acquisition cost ("WAC") of the drug products.  Resp. Ltr. at 2.  In doing so, Defendants are attempting to turn a profit on providing discovery.  Defendants' price of ▮▮▮▮▮▮ for 50 vials amounts to an alleged cost of ▮▮▮▮ per vial.  Yet, Apotex and Slayback's documents make clear that their costs per unit are almost 100 times less than that.  Ex. 22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; Ex. 23 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); Ex. 24 (▮▮▮▮▮▮ Ex. 25 (▮▮▮▮▮▮ Notably, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, which confirms the unreasonableness of Slayback and Apotex's position.  Thus, Eagle respectfully requests the Court compel Defendants to provide fifty (50) samples of the



accused NDA products at their own expense.[1]

## II. Apotex Should Produce Communications Among Its Sales Force

Apotex does not dispute that communications among its sales team are relevant. As Eagle explained in its opening brief, numerous courts have recognized the same. *See* Op. Ltr. at 3. Apotex merely argues that it has met its burden based on its ESI search and Paragraph 3 disclosures.

Apotex's argument that its ESI search was sufficient is based on the incorrect premise that it "does not employ a 'sales force' for its bendamustine products." Resp. Ltr. at 3. Apotex's own documents confirm that it has a sales team and communicates with them. *Id.*; Ex. 19; Ex. 18. Apotex also points to documents showing chat messages with Mr. Bohling identifying a customer service script (Apotex Ex. E) and an actual customer service script (Apotex Ex. F). Ex. 26 at -840. but she was not identified as a relevant custodian. Ex. 28. These materials demonstrate that Apotex's initial search was insufficient as there appear to be other custodians with additional sales responsibilities who were not searched and who likely have relevant communications beyond Mr. Bohling's Ex. 18. Further, regardless of whether Apotex uses a third party "sales force" company for its sales, Eagle is nonetheless entitled to discovery of communications between the internal sales teams that are responsible for selling, marketing, pricing, or promoting Apotex's NDA Product, as well as communications between those employees and any third-party salesforce. Resp. Ltr. at 3. Apotex's search was insufficient as it has admitted to the existence of such communications, but has not produced the communications between its employees, who are involved in Apotex's sales strategy. The Court has the authority to order Apotex to expand its searches, including beyond the seven custodians identified by Apotex, and should do so here.

Apotex also claims that Eagle is free to explore the contents of the documents produced from its ESI search during upcoming depositions. *Id.* That is not sufficient, as Eagle is entitled to review these materials in advance in order to prepare for its depositions. Indeed, Apotex itself has argued much the same, claiming supplementation of Eagle's document production "is necessary [] so that Apotex can adequately prepare for the noticed deposition in this case." Ex. 27 at 4-5, 7.

Eagle respectfully requests the Court grant its motion to compel the requested discovery.

---

[1] Defendants' reliance on the CREATES Act is misplaced. Resp. Ltr. at 2. That Act concerns the purchase of competing products for purposes of comparative testing, not the production of sample accused products in discovery. CREATES Act, H.R. 1865, 116th Cong. § 610(a)(10)(A) (2020).

May 21, 2025<br>Page 3

Respectfully submitted,

/s/ *Daniel M. Silver*

Daniel M. Silver (#4758)

cc: Counsel of Record (via CM/ECF)