## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EAGLE PHARMACEUTICALS, INC. AND EAGLE SUB1 LLC, <br><br> Plaintiffs, <br><br> v. <br><br> APOTEX INC., AND APOTEX CORP., <br><br> Defendants. | C.A. No. 24-64-JLH <br> (CONSOLIDATED) <br><br> **JURY TRIAL DEMANDED** |
| EAGLE PHARMACEUTICALS, INC. AND EAGLE SUB1 LLC, <br><br> Plaintiffs, <br><br> v. <br><br> SLAYBACK PHARMA LLC AND AZURITY PHARMACEUTICALS, INC., <br><br> Defendants. | C.A. No. 24-65-JLH <br> (CONSOLIDATED) <br><br> **JURY TRIAL DEMANDED** |
| EAGLE PHARMACEUTICALS, INC. AND EAGLE SUB1 LLC, <br><br> Plaintiffs, <br><br> v. <br><br> BAXTER HEALTHCARE CORPORATION, <br><br> Defendants. | C.A. No. 24-66-JLH <br> (CONSOLIDATED) <br><br> **JURY TRIAL DEMANDED** |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' REQUEST TO
SHARE HIGHLY-CONFIDENTIAL INFORMATION**

Dear Judge Tennyson:

      The defendants in the above-captioned litigations collectively oppose Plaintiffs' motion to share their highly-confidential financial and customer information across the three separate cases. The Protective Order entered in these cases explicitly prohibits such sharing across the cases without consent – and the defendants do not consent. (C.A. No. 24-64, D.I. 74, C.A. No. 24-65, D.I. 54; C.A. No. 24-66, D.I. 54, at ¶ 4(d))  Nor have plaintiffs made any showing that such a serious breach of confidentiality is "reasonably necessary."  *See, e.g.*, *American Standard, Inc. v. Pfizer, Inc.*, 828 F.2d 734, 741 (Fed. Cir. 1987).  Plaintiffs seek this "third-party" information for two limited purposes: (i) establishing demand for the patented products; and (ii) as objective evidence of non-obviousness.  However, other discovery in each case serves the same purpose – including Plaintiffs own sales, the sales of each defendant in their own respective cases, and other publicly-available information regarding sales of other bendamustine products.  Permitting Plaintiffs to introduce superfluous, highly-confidential, third-party financial information will prejudice the defendant against which this evidence is introduced.  Plaintiffs should not be permitted to end-run the Protective Order and their request should be denied.

## I.     BACKGROUND

      Plaintiffs seek disclosure of detailed financial documents and detailed spreadsheets that identify the defendant's customers and the sales figures associated with those customers.  Such information is, by definition, highly-confidential – and subject to strict controls under the protective order.  That is not disputed.  Paragraph 4(d) of the Protective Order governs all of these cases and was entered by the Court after the hearing that Plaintiffs cite.  It states:

> **For the avoidance of doubt, nothing in this Order shall permit any Receiving Party to give, show, make available, discuss, or otherwise communicate in any manner Confidential Information or Highly Confidential Information produced by any Producing Party in its respective above-captioned action to any party in a different action without permission of the Producing Party**.  Notwithstanding the foregoing, to the extent necessary to facilitate the filing and/or service of documents containing, and the conduct of proceedings involving, **more than one Producing Party's Confidential Information or Highly Confidential Information**, such information may be included

(C.A. No. 24-64, D.I. 74, at ¶ 4(d) (emphasis added))  The latter sentence does not apply to the current circumstance because the documents sought by plaintiffs to be shared do not contain *multiple* parties' confidential information.

      The prohibition on sharing makes sense – prohibiting each defendant from seeing the other's highly confidential information and also preventing Plaintiffs from cherry-picking documents from one case to selectively use against defendants in different cases – where *only* the Plaintiffs have access to the *full* productions from each defendant.  The prejudice and impracticality of all of this greatly outweighs any proportional need of Plaintiffs.

      Plaintiffs claim relevance based on (i) commercial success and (ii) demand for the patented product. Yet, Plaintiffs already possess significant other discovery on these issues – their own sales,

the sales of the accused products in each case, and general sales data available from public sources like IQVIA and other subscription databases. Thus, there is no proportional need for this cumulative information from third-parties.

## II. ARGUMENT

There is no dispute that the documents that plaintiffs seek are highly confidential. Thus, the burden shifts to the plaintiffs to show the necessity for disclosure. *See, e.g.*, *American Standard, Inc.*, 828 F.2d at 741 (emphasis added) ("Where . . . information sought is confidential and [] its disclosure might be harmful, **the burden shifts to the party seeking discovery to establish that disclosure of trade secrets and confidential information is relevant and necessary** to its case."); *Mannington Mills v. Armstrong World*, 206 FRD 525, 528-29 (D. Del. 2002) (emphasis added) (quashing subpoena: "The Federal Circuit has addressed the issue of a party obtaining sales and financial information . . . from a nonparty . . . . **this court is required to apply the balancing standards -- relevance, need, confidentiality and harm**. And **even if the information sought is relevant, discovery is not allowed where no need is shown**, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit."); *Shared Memory Graphics v. Apple, Inc.*, No. C-10-2475, 2010 WL 4704420, at *2 (N.D. Cal. Nov. 12, 2010) (applying the N.D. Cal. "reasonably necessary" standard).

Plaintiffs cannot meet their burden to show "necessity" where the information that they seek is cumulative to other information that they already have. By contrast, the harm and prejudice to defendants from disclosure is self-evident. Plaintiffs seek the exact sort of highly-sensitive commercial information (e.g., specific customers, sales volumes, pricing data, etc.) that compromise specific business strategies and approaches. The case law strongly disfavors the sharing of such highly-confidential financial information that has potential to injure the standing of the disclosing party in the competitive marketplace. *See, e.g.*, *American Standard, Inc.*, 828 F.2d at 741 ("Courts have presumed that disclosure to a competitor is more harmful than disclosure to a noncompetitor."); *Direct Purchaser Class v. Apotex Corp.*, No. 16-62492-MC, 2017 WL 4230124, at *3 (S.D. Fla. May 15, 2017) (citation omitted) ("And consistent with the presumption 'that disclosure to a competitor is more harmful than disclosure to a noncompetitor,' the Court finds that Respondent Apotex Corp. has carried its burden of establishing potential harm from disclosure of its sales data."); *Goldenberg v. Indel, Inc.*, No. 09-5202, 2012 WL 15909, at *3 (D.N.J. Jan. 3, 2012) ("District Courts in the Third Circuit have also repeatedly found serious harm in disclosing financial information which would injure a party's standing in the competitive marketplace."). Nor does the fact that such information might initially be limited to outside counsel's eyes remedy the harm. *See, e.g., In re Pioneer Corp. v. Technicolor, Inc.*, 2018 WL 4961911, at *12 (C.D. Cal. Sept. 12, 2018) ("[P]rotective orders are not always a perfect means to protect confidential information. The information may be disclosed without protection at trial, or disclosed to competing experts."); *Saxon Innovations, LLC v. Nokia Corp.*, 2009 WL 10677277, at *4 (E.D. Tex. Oct. 30, 2009) (discovery into third-party confidential information would violate the "spirit, if not the actual terms, of the Protective Order.")

Additionally, the forced cross-use of this information also works to prejudice Defendants. As noted above, Plaintiffs should not be permitted to cherry-pick documents from one case for use in another. Defendants should not be forced to request and review the full productions of a nonparty to put themselves on equal footing with Plaintiffs. Further discovery disputes are likely

to arise as Defendants seek to participate in depositions concerning the financial documents sought to be disclosed and/or access to additional financial documents. The broad and likely harm to defendants greatly outweighs the relatively minor significance of this cumulative information. In addition, Plaintiffs' approach would require proof in one case that the other defendants' products (whose sales data are being shared from the other cases) infringe – an impractical infringement case within an infringement case. The request should be denied.

### III. RESPONSE TO VARIOUS OTHER ARGUMENTS FROM PLAINTIFFS

Plaintiffs argue that defendants have "unreasonably withheld" permission for plaintiffs to breach defendants' highly-confidential information. (Pltfs' Ltr. at 3) However, Paragraph 4(d) of the Protective Order simply prohibits the sharing of confidential information across the separate cases "without permission." There is no condition or limitation placed on when that "permission" may or may not be given. The prohibition is absolute. Regardless, protecting highly-confidential sales and customer data from direct competitors is eminently reasonable.

Plaintiffs also argue that defendants have already shared their highly-confidential information with plaintiffs. (Pltfs' Ltr. at 2) This circular reasoning would vitiate all Protective Orders. Confidential information shared under a Protective Order does not become non-confidential. The defendants shared their highly-confidential information with plaintiffs in reliance on a Protective Order that prohibits further sharing. *See, e.g.*, *Saxon Innovations*, 2009 WL 10677277, at *3 (emphasis added) ("RIM certainly has not agreed to have its Protected Documents reviewed by the Remaining Defendants' counsel. RIM relied on Paragraph 20 to refuse this disclosure and Saxon provides no reason to undermine that reliance. **Furthermore, the Court has no reason to believe that RIM did not rely on this paragraph to inform its decisions throughout fact discovery**.").

Finally, Eagle's attempt to avoid the Latham-specific provisions of the Protective Order fails. (Pltfs' Ltr. at 3). Due to an undisputed ethical conflict, Latham cannot participate in the Baxter Action, receive Baxter confidential information unless certain narrow exceptions apply, or "use Baxter information adverse to Baxter." (C.A. No. 24-66, D.I. 54, at ¶ 27) Baxter produced its confidential information to Eagle's counsel at McCarter & English, LLP, who are permitted to use it against Baxter in the Baxter Action. Although Eagle purports to share Baxter's confidential information with its Latham counsel under the guise of using it "only . . . against Apotex and Slayback," (Pltfs' Ltr. at 3), in reality Latham will work with Eagle's damages experts and other witnesses to create a damages model encompassing the entire liquid bendamustine market that will then be used against all three defendants, including Baxter. This is an end run around the Protective Order. Latham will have used Baxter's confidential information against Baxter, even if it has not entered an appearance in the Baxter Action. Eagle can resolve this issue by representing that only its McCarter counsel will work with its damages experts and have access to Baxter's confidential information even if that information is permitted to be used across all three cases, but Eagle has refused. Accordingly, the Court should deny Eagle's request.

### IV. CONCLUSION

Plaintiffs' request to reveal defendants' highly-confidential information across these separate cases – and effectively vitiate the Protective Order – should be denied.

3

Respectfully submitted,

Dated: October 30, 2025

| | |
|---|---|
| */s/ Kenneth L. Dorsney* | */s/ Daniel A. Taylor* |
| Kenneth L. Dorsney (#3726) | Neal C. Belgam (No. 2721) |
| Cortlan S. Hitch (#6720) | Daniel A. Taylor (No. 6934) |
| **MORRIS JAMES LLP** | **SMITH KATZENSTEIN & JENKINS LLP** |
| 3205 Avenue North Boulevard, Suite 100 | 1000 N. West Street, Suite 1501 |
| Wilmington, DE 19803 | Wilmington, DE 19801 |
| (302) 888-6800 | (302) 652-8400 |
| kdorsney@morrisjames.com | nbelgam@skjlaw.com |
| chitch@morrisjames.com | dtaylor@skjlaw.com |
| | |
| *Of Counsel:* | *Of Counsel:* |
| | |
| Deepro R. Mukerjee | Constance S. Huttner |
| Lance A. Soderstrom | Jason A. Lief |
| KATTEN MUCHIN ROSENMAN LLP | Robyn Ast-Gmoser |
| 50 Rockefeller Center | WINDELS MARX LANE & MITTENDORF, LLP |
| New York, NY 10020-1605 | One Giralda Farms |
| deepro.mukerjee@katten.com | Madison, NJ 07940 |
| lance.soderstrom@katten.com | (973) 966-3200 |
| | chuttner@windelsmarx.com |
| Jitendra Malik | jlief@windelsmarx.com |
| Joseph M. Janusz | rast-gmoser@windelsmarx.com |
| KATTEN MUCHIN ROSENMAN LLP | |
| 550 South Tyron Street, Suite 2900 | Alan H. Pollack |
| Charlotte, NC 28202 | WINDELS MARX LANE & MITTENDORF, LLP |
| jitty.malik@katten.com | 156 West 56th Street |
| joe.janusz@katten.com | New York, NY 10019 |
| | (212) 237-1000 |
| Christopher B. Ferenc | apollack@windelsmarx.com |
| KATTEN MUCHIN ROSENMAN LLP | |
| 1919 Pennsylvania Avenue, NW Suite 800 | *Attorneys for Defendants Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.* |
| Washington, DC 20006 | |
| Christopher.ferenc@katten.com | |
| | |
| Rachel L. Schweers | |
| KATTEN MUCHIN ROSENMAN LLP | |
| 525 W. Monroe Street | |
| Chicago, IL 60661 | |
| rachel.schweers@katten.com | |
| | |
| *Attorneys for Defendants Apotex Inc. and Apotex Corp.* | |

4

*/s/ Philip A. Rovner*
Philip A. Rovner (#3215)
Andrew M. Moshos (#6685)
**POTTER ANDERSON & CORROON LLP**
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
amoshos@potteranderson.com

*Of Counsel:*

Martin J. Black
Judah Bellin
DECHERT LLP
Cira Centre, 2929 Arch St.
Philadelphia, PA 19104
(215) 994-4000

Amanda K. Antons
DECHERT LLP
230 Northgate Street #209,
Lake Forest, IL 60045
(312) 646-5800

Noah M. Leibowitz
DECHERT LLP
Three Bryant Park,
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3538

*Attorneys for Defendant Baxter Healthcare Corporation*