**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| EAGLE PHARMACEUTICALS, INC. and EAGLE SUB1 LLC,<br><br>Plaintiffs,<br><br>v.<br><br>APOTEX INC. AND APOTEX CORP.,<br><br>Defendants. | REDACTED PUBLIC VERSION FILED AUGUST 7, 2026<br><br>C.A. No. 24-64-JLH (CONSOLIDATED)<br><br>**JURY TRIAL DEMANDED**<br><br> |
| EAGLE PHARMACEUTICALS, INC. and EAGLE SUB1 LLC,<br><br>Plaintiffs,<br><br>v.<br><br>SLAYBACK PHARMA LLC and AZURITY PHARMACEUTICALS, INC,<br><br>Defendants. | C.A. No. 24-65-JLH (CONSOLIDATED)<br><br>**JURY TRIAL DEMANDED**<br><br> |

**OPENING BRIEF IN SUPPORT OF PLAINTIFFS EAGLE PHARMACEUTICALS, INC.'S AND EAGLE SUB1 LLC'S *DAUBERT* MOTION TO EXCLUDE THE <u>OPINIONS OF DEFENDANTS' EXPERT, DAVID BUGAY</u>**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..............................................................................................1

II.   STATEMENT OF FACTS .................................................................................1

III.  LEGAL STANDARD.........................................................................................4

IV.  ARGUMENT......................................................................................................4

V.   CONCLUSION...................................................................................................5

# TABLE OF AUTHORITIES[1]

## CASES

*Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009) ........................... 4

*In re Zoloft (Sertraline Hydrochloride) Products Liability Litigation*, 858 F.3d 787, 800 (3d. Cir. 2017) ..................................................................................................................................... 4

*Shire Dev. Inc. v. Cadila Healthcare Ltd.*, No. 10-581, 2015 WL 4596410, at *7 (D. Del. July 28, 2015), *aff'd sub nom.*, 688 F. App'x 912 (Fed. Cir. 2017) ......................................................... 1

*Trudell Med. Int'l Inc. v. D R Burton Healthcare, LLC.*,
127 F.4th 1340, 1349 (Fed. Cir. 2025) ................................................................................... 4, 5

## RULES

Fed. R. Evid. 401 ..................................................................................................................... 5

Fed. R. Evid. 403 ..................................................................................................................... 5

Fed. R. Evid. 702 ..................................................................................................................... 5

---

[1] All emphasis added, and internal citations and quotation marks omitted, unless otherwise noted. All docket index cites to Case No. 24-CV-00064, unless otherwise noted.

## I.    INTRODUCTION

Eagle requests the exclusion of the anticipation and obviousness opinions of Defendants' joint invalidity expert, Dr. David Bugay, because he applied the incorrect construction of the claim term, "consisting of." The law is clear that "consisting of" is a closed term, with certain limited exceptions. The Court and the parties all agreed to this construction at the *Markman* hearing. However, in addressing anticipation and obviousness, Dr. Bugay treated "consisting of" as an open-ended term that somehow allows for solvents other than those specifically recited in the asserted claims. There is no mystery to why Dr. Bugay did this; the two primary prior art references upon which he relies teach away from the solvents recited in the asserted claims after the "consisting of" limitations. Dr. Bugay's opinions contradict the law and should be excluded.

## II.    STATEMENT OF FACTS

Each asserted claim requires that the formulation include "a pharmaceutically acceptable fluid ***consisting of*** polyethylene glycol ["PEG"] and optionally one or more of propylene glycol ["PG"], ethanol, benzyl alcohol, and glycofurol." *E.g.*, D.I. 1 at Ex.B, cl. 1. "Consisting of" is an "exclusionary term specifying that the element contains only what is expressly set forth in a recited list, but not excluding impurities and substances unrelated to said element." *Shire Dev. Inc. v. Cadila Healthcare Ltd.*, No. 10-581, 2015 WL 4596410, at *7 (D. Del. July 28, 2015), *aff'd sub nom.*, 688 F. App'x 912 (Fed. Cir. 2017). Defendants agree on both the exclusionary nature of "consisting of" and the existence of the exceptions. D.I. 98 at 2, 48-49. The phrase was discussed at length during the *Markman* hearing, with the word "consisting" appearing 40 times in the transcript. Ex. 1, Index at 3. The Court even stated "everybody in this room knows what 'consisting of' and 'comprising' means." *Id.* at 66:15-16. And the Court was clear that "consisting of" excludes compositions containing a material volume of an unlisted solvent, subject to the known exceptions. *Id.* at 25:21-26:20, 67:23-25.

1

Dr. Bugay opines the asserted claims are invalid based on two primary references: (i) WO 2010/036702 A1 ("Drager") and (ii) German Democratic Republic Patent No. 159289 ("Olthoff"). Ex. 2 at 4-5.  Both references teach the use of solvents other than those enumerated in the asserted claims, which all parties agree fall outside the scope of the "consisting of" limitation.  Importantly, neither reference discloses a solvent system consisting of PEG and optionally one of the other recited solvents in the asserted claims.  Thus, in order to attempt to generate opinions of anticipation and obviousness with regard to the "consisting of" limitation, Dr. Bugay applied an incorrect construction of "consisting of" that *did not* exclude unlisted solvents, testifying that his understanding of "what 'consisting of' means in the context of patent law" was "it is a component thereof."  Ex. 3 at 93:18-24.  Dr. Bugay's report states that he "treated the claims as directed to a liquid bendamustine composition merely "*containing* bendamustine, PEG and an antioxidant." Ex. 2 at p. 92 n.9.

Drager discloses numerous exemplary formulations with solvents other than those listed in the claims.  *E.g.* Ex. 4 at p. 10 Table II (showing stability data for formulations containing, among others, dimethyl acetamide, dimethylformamide, and dimethyl sulfoxide).  Dr. Bugay relies on the disclosures containing those other solvents, including that table, without ever considering the presence of excluded solvents in the disclosed formulations.  Ex. 2 ¶¶ 242, 245.  Drager also explicitly requires the use of an additional class of solvents, known as aprotic solvents, in its formulations—none of which are recited in the "consisting of" limitation.  Ex. 4 at p. 3 ll. 14-17 ("It has been determined that pharmaceutically acceptable liquid formulations of bendamustine . . . can be prepared by combining bendamustine . . . with a polar aprotic solvent or mixture of polar aprotic solvents."); *see also Cephalon, Inc. v. Slayback Pharma LLC*, 456 F.Supp.3d. 594, 607 (D. Del. 2020) (finding "Drager teaches away from the use of only protic solvents" in a prior

2

bendamustine case involving Slayback and Apotex).  Dr. Bugay did not consider whether aprotic solvents were required in all of Drager's formulations.  Ex. 3 at 94:10-15.  Nor did Dr. Bugay consider whether the solvents listed in the pharmaceutically acceptable fluid term would qualify as aprotic.  In fact, for all five solvents listed, Dr. Bugay either confirmed that they were protic, rather than aprotic, or did not have an opinion.  *See id.* at 94:23-96:10.

Olthoff also teaches solvents other than those listed.  Indeed, the passage Dr. Bugay relies on as disclosing PEG actually discloses the broader categories of "monohydric alcohols, glycols and other polyhydric alcohols."  Ex. 2 at ¶ 270 (citing Olthoff at 5).  PEG is one such polyhydric alcohol, also referred to as a polyol.  *Id.*  However, as Dr. Bugay conceded at deposition, "[t]here are other polyols besides PEG."  Ex. 3 at 81:24-82:1.  Dr. Bugay did not consider how many other polyols there might be or which ones are pharmaceutically relevant.  *Id.* at 82:2-10. In short, the only alleged disclosure of PEG in Olthoff discloses solvents outside the recited list.

Further, Olthoff discloses stability data for formulations that have PG, but contains no stability data for any formulation with PEG.  Ex. 5 at 5.  Even then, while Olthoff's PG data appeared positive, Drager reviewed that data, attempted to replicate it, and found it to be not reproducible.  Ex. 3 at 105:1-16.  Dr. Bugay did not opine on how the conflict between Olthoff and Drager would impact a POSA's view of Olthoff's or its lack of aprotic solvents.  *Id.* at 105:17-20. Notably, this Court specifically addressed the interplay between Drager and Olthoff, holding that "Drager taught away from using protic solvents, such as PEG and PG, alone with bendamustine," and that "a POSITA would have credited Drager's data and conclusions over those in Olthoff."  *Cephalon, Inc.*, 456 F.Supp.3d. at 607.

The solvent system recited in the asserted claims thus poses fundamental problems for Dr. Bugay vis-à-vis his asserted prior art references.  So, Dr. Bugay effectively assumed it away by

3

being "focused with regard to PEG" and "did not have opinions with regard to the other components, ethanol, benzyl alcohol, and glycofurol." Ex. 3 at 54:6-16. At his deposition, Dr. Bugay asserted that "the *Markman* hearing considered that other liquids could be incorporated into the pharmaceutical fluid," and he made an "assumption" that other solvents could be present "throughout [his] analysis." *Id.* at 54:17-55:2. The only basis for Dr. Bugay's "assumption" is a statement from Eagle's counsel at *Markman* that an unlisted fluid could be present, "depend[ing] on what it is, in what amount, and at what function." *Id.*; *see also* Ex. 2, Op. ¶ 241 (citing 1/30/25 Markman Tr. at 12:21-13:1). However, Dr. Bugay simply ignored the Court's later statement that "I think we all agree that there can't be another solvent system that's not on the list of pharmaceutically acceptable fluids." Ex. 1 at 67:23-25.

## III.    LEGAL STANDARD

"Because expert testimony 'can be both powerful and quite misleading,' the district court's gatekeeping function under Rule 702 is an important one." *Trudell Med. Int'l Inc. v. D R Burton Healthcare, LLC.*, 127 F.4th 1340, 1349 (Fed. Cir. 2025). "As a gatekeeper, courts are supposed to ensure that the testimony given to the jury is reliable and will be more informative than confusing." *In re Zoloft (Sertraline Hydrochloride) Products Liability Litigation*, 858 F.3d 787, 800 (3d. Cir. 2017). In *Trudell*, the Federal Circuit held that the district court abused its discretion by allowing expert testimony "untethered from the district court's claim constructions." 127 F.4th at 1349-50. Similarly, the Federal Circuit explained in *Exergen Corp. v. Wal-Mart Stores, Inc.* that such proposed testimony fails Federal Rule of Evidence because "[n]o party may contradict the court's construction to a jury." 575 F.3d 1312, 1321 (Fed. Cir. 2009).

## IV.    ARGUMENT

Dr. Bugay's invalidity opinions should be excluded because they are based on a construction that is not only "untethered" from the Court's (and the patent law's) construction of

4

"consisting of," but are diametrically opposed to it. At *Markman*, the Court and the parties were clear that "consisting of" was a closed term, subject to limited exceptions. *Supra* at 1-2. Dr. Bugay was equally clear that he instead applied a construction of "consisting of" which is open-ended under which unrecited solvents "could be incorporated into the pharmaceutical fluid." *Supra* at 2-3. Thus, Dr. Bugay's opinions are predicated on an erroneous construction.

Dr. Bugay's manifestly incorrect construction impacts each of his anticipation and obviousness opinions. Dr. Bugay relies on Drager or Olthoff as a lead reference for each such opinion. But he applied an erroneous claim construction in that regard—the lone disclosures of PEG in both references also disclose scores of additional solvents that fall outside the solvents listed in the asserted claims and which are excluded by way of the "consisting of" language.

Given the foregoing, Dr. Bugay plainly utilized a claim construction that renders "consisting of" superfluous, which is plain error. Further, Dr. Bugay did not analyze whether the prior art would have taught a POSA to include one or more of the other solvents required by Drager but excluded by the "consisting of" language, his opinions regarding invalidity based on Drager are fundamentally flawed. Similarly, he failed to consider how Drager's teachings that Olthoff's formulations did not provide adequate stability without those other, excluded solvents means that his opinions regarding Olthoff are equally flawed. Thus, Dr. Bugay's opinions on anticipation and obviousness are based on an incorrect claim construction, irrelevant, and unhelpful and confusing to the jury. They should be excluded. *See* Fed. R. Evid. 401, 403, 702; *and Trudell Med. Int'l*, 127 F.4th at 1349-50 (holding that expert's testimony should have been excluded for "methodological unsoundness," where an expert construed "a vane" to "require[] more than one vane" and failed to consider whether a single vane could infringe.).

## V.    CONCLUSION

Eagle requests the Court exclude Dr. Bugay's opinions on anticipation and obviousness.

5

Dated: June 5, 2026

**MCCARTER & ENGLISH, LLP**

OF COUNSEL:

*/s/ Alexandra M. Joyce*

Daniel M. Silver (#4758)

Kenneth G. Schuler
Alexandra M. Joyce (#6423)

Marc N. Zubick
405 N. King Street, 8th Floor

Alex Grabowski
Wilmington, DE 19801

Michelle Chin
(302) 984-6300

LATHAM & WATKINS LLP
dsilver@mccarter.com

330 North Wabash Avenue, Suite 2800
ajoyce@mccarter.com

Chicago, IL 60611

(312) 876-7700

kenneth.schuler@lw.com
*Attorneys for Plaintiffs*

marc.zubick@lw.com

alex.grabowski@lw.com

michelle.chin@lw.com

Brett M. Sandford
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 9411
(415) 391-0600
brett.sandford@lw.com

Ramya Sri Vallabhaneni
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
ramya.vallabhaneni@lw.com

Kelly A. Welsh
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
(202) 637-2200
kelly.welsh@lw.com

6

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that true and correct copies of the foregoing documents were caused to be served on June 5, 2026, on the following counsel in the manner indicated:

**VIA EMAIL:**

Kenneth L. Dorsney
Cortlan S. Hitch
MORRIS JAMES LLP
3205 Avenue North Boulevard, Suite 100
Wilmington, DE 19803
kdorsney@morrisjames.com
chitch@morrisjames.com

Deepro R. Mukerjee
Lance A. Soderstrom
KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Center
New York, NY 10020-1605
Deepro.mukerjee@katten.com
Lance.soderstrom@katten.com

Jitendra Malik
Joseph M. Janusz
KATTEN MUCHIN ROSENMAN LLP
550 South Tyron Street, Suite 2900
Charlotte, NC 28202
Jitty.malik@katten.com
Joe.janusz@katten.com

Christopher B. Ferenc
KATTEN MUCHIN ROSENMAN LLP
1919 Pennsylvania Avenue, NW Suite 800
Washington, DC 20006
Christopher.ferenc@katten.com

ME1\61334417.v1

Rachel L. Schweers
Matthew T. Messina
KATTEN MUCHIN ROSENMAN LLP
525 W. Monroe Street
Chicago, IL 60661
Rachel.schweers@katten.com
Matthew.messina@katten.com

*Attorneys for Defendants Apotex, Inc. and Apotex Corp.*

Neal C. Belgam
Daniel A. Taylor
SMITH KATZENSTEIN & JENKINS LLP
1000 West Street, Suite 1501
Wilmington, DE 19801
nbelgam@skjlaw.com
dtaylor@skjlaw.com

Jason A. Lief
Alan H. Pollack
Audrey R. Sparschu
WINDELS MARX LANE & MITTENDORF, LLP
156 West 56th Street
New York, NY 10019
jlief@windelsmarx.com
apollack@windelsmarx.com
asparschu@windelsmarx.com

Andrew Miller
Ajay Kayal
Robyn Ast-Gmoser
Kiersten Fowler
Daniel Forchheimer
WINDELS MARX LANE & MITTENDORF, LLP
One Giralda Farms
Madison, NJ 07940
amiller@windelsmarx.com
akayal@windelsmarx.com
rast-gmoser@windelsmarx.com
kfowler@windelsmarx.com
dforchheimer@windelsmarx.com

*Attorneys for Defendants Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

/s/ Alexandra M. Joyce
Alexandra M. Joyce (#6428)

ME1\61334417.v1