# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EAGLE PHARMACEUTICALS, INC. and EAGLE SUB1 LLC,<br><br>Plaintiffs,<br><br>v.<br><br>APOTEX INC. and APOTEX CORP.,<br><br>Defendants. | REDACTED PUBLIC VERSION FILED AUGUST 7, 2026<br><br>C.A. No. 24-64-JLH (CONSOLIDATED)<br><br>**JURY TRIAL DEMANDED**<br><br> |
| EAGLE PHARMACEUTICALS, INC. and EAGLE SUB1 LLC,<br><br>Plaintiffs,<br><br>v.<br><br>SLAYBACK PHARMA LLC and AZURITY PHARMACEUTICALS, INC.,<br><br>Defendants. | C.A. No. 24-65-JLH (CONSOLIDATED)<br><br>**JURY TRIAL DEMANDED**<br><br> |

**PLAINTIFFS EAGLE PHARMACEUTICALS, INC. AND EAGLE SUB 1 LLC'S OPPOSITION TO DEFENDANTS' JOINT *DAUBERT* MOTION TO EXCLUDE THE OPINIONS OF PLAINTIFFS' DAMAGES EXPERT, DR. CHRISTOPHER VELLTURO**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................................1

II.   FACTUAL BACKGROUND .................................................................................................2

      A.    The ███████████████████████ ..............................................................................2

      B.    The Opinions of Eagle's Damages Expert, Dr. Christopher Vellturo ....................2

III.  LEGAL STANDARD .............................................................................................................4

IV.   ARGUMENT ..........................................................................................................................4

      A.    Dr. Vellturo Conducted A Proper Apportionment Analysis....................................5

      B.    Dr. Vellturo Properly Relied On ███████████ .....................................................10

      C.    Dr. Vellturo Properly Accounted For The Differences Between The Eagle-Cephalon Agreement And The Hypothetical License ...........................................13

      D.    Dr. Vellturo's ███████ Is Independent From His Per-Unit Royalty Rate...........14

V.    CONCLUSION.....................................................................................................................14

# TABLE OF AUTHORITIES

## CASES

*Acceleration Bay LLC v. Activision Blizzard Inc.*,
No. 16-453, 2019 WL 4194060 (D. Del. Sept. 4, 2019) ............................................................ 10

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
694 F.3d 1312 (Fed. Cir. 2012) ...................................................................................... 13

*Albritton v. Acclarent, Inc.*,
No. 16-3340, 2020 WL 11627275 (N.D. Tex. Feb. 28, 2020). ................................................... 8

*Arigna Tech. Ltd. v. Nissan Mtr. Co.*,
No. 22-126, 2022 WL 14328350 (E.D. Tex. Oct. 24, 2022) ...................................................... 5

*Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*,
No. 15-152, 2018 WL 4691047 (D. Del. Sept. 28, 2018) ........................................................ 14

*Bio-Rad Labs., Inc. v. 10X Genomics Inc.*,
967 F.3d 1353 (Fed. Cir. 2020) ............................................................................... 1, 5, 7

*Bio-Rad Labs., Inc. v. 10X Genomics Inc.*,
No. 15-152, 2018 WL 5729732 (D. Del. Nov. 2, 2018)............................................................. 7

*Board of Regents Univ. of Texas Sys. v. Boston Sci. Corp.*,
No. 18-392, 2022 WL 17584180 (D. Del. Dec. 12, 2022) .................................................... 8, 10

*Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*,
809 F.3d 1295 (Fed. Cir. 2015) ....................................................................................... 7

*Ericsson, Inc. v. D-Link Sys., Inc.*,
773 F.3d 1201 (Fed. Cir. 2014) ................................................................................. 10, 14

*Estee Lauder Inc. v. L'Oreal, S.A.*,
129 F.3d 588 (Fed. Cir. 1997) ......................................................................................... 6

*Golden Bridge Tech. v. Apple Inc.*,
No. 12-4882, 2014 WL 2194501 (N.D. Cal. May 18, 2014) ................................................. 9, 10

*Helios Software, LLC v. SpectorSoft Corp.*,
No. 12-81, 2015 WL 3622399 (D. Del. June 5, 2015) ........................................................... 10

*Immersion Corp. v. HTC Corp.*,
No. 12-259, 2015 WL 834209 (D. Del. Feb. 24, 2015) ........................................................... 7

*Intel Corp. v. Future Link Sys., LLC*,
No. 14-377, 2017 WL 2482881 (D. Del. June 1, 2017) ........................................................... 7

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009) ........................................................................................ 7

*Medtronic Sofamor Danek USA, Inc. v. Globus Med., Inc.*,
   637 F. Supp. 2d 290 (E.D. Pa. 2009) .............................................................................. 13

*MLC Intellectual Prop., LLC v. Micron Tech., Inc.*,
   10 F.4th 1358 (Fed. Cir. 2021) ....................................................................................... 10

*RSB Spine, LLC v. DePuy Synthes Sales, Inc.*,
   No. 19-1515, 2022 WL 17084156 (D. Del. Nov. 18, 2022)............................................. 8

*Shopify Inc. v. Express Mobile, Inc.*,
   No. 19-439, 2021 WL 4288113 (D. Del. Sept. 21, 2021) ................................................ 7

*Sioux Steel Co. v. Prairie Land Mill Wright Serv.*,
   No. 16-2212, 2022 WL 17184469 (N.D. Ill. Nov. 23, 2022)........................................... 8

*Summit 6, LLC v. Samsung Elecs. Co.*,
   802 F.3d 1283 (Fed. Cir. 2015) .................................................................................... 4, 5

*SUNOCO Partners Marketing & Terminals L.P. v. Powder Springs Logistics, LLC*,
   No. 17-1390, 2020 WL 7330715 (D. Del. Jan. 13, 2020) .............................................. 12

*Trustees of Boston Univ. v. Everlight Elecs. Co.*,
   No. 12-11935, 2015 WL 6408118 (D. Mass. Oct. 23, 2015)......................................... 12

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011) ..................................................................................... 10

*United States v. Mitchell*,
   365 F.3d 215 (3d Cir. 2004) ............................................................................................ 4

*Willis Elec. Co. v. Polygroup Ltd.*,
   166 F.4th 1363 (Fed. Cir. 2026) .................................................................................. 5, 8

*Wonderland Switzerland AG v. Evenflo Co.*,
   No. 20-727, 2023 WL 5574139 (D. Del. Jan. 5, 2023) ........................................ 4, 6, 14

*Zak v. Facebook, Inc.*,
   No. 15-13437, 2021 WL 4481588 (E.D. Mich. Sept. 30, 2021) ..................................... 6

## TABLE OF EXHIBITS

| Ex. | Description |
|---|---|
| 1 | Expert Report of Christopher A. Vellturo, Ph.D., C.A. No. 24-cv-64 (3/6/2026) |
| 2 | Reply Expert Report of Christopher A. Vellturo, Ph.D., C.A. No. 24-cv-64 (4/13/2026) |
| 3 | Expert Report of Christopher A. Vellturo, Ph.D., C.A. No. 24-cv-65 (3/6/2026) |
| 4 | Reply Expert Report of Christopher A. Vellturo, Ph.D., C.A. No. 24-cv-65 (4/13/2026) |
| 5 | Deposition Transcript of Christopher A. Vellturo, Ph.D., C.A. No. 24-cv-65 |
| 6 | Opening Expert Report of Dr. Bernhardt Trout, Ph.D., C.A. No. 24-cv-64 (2/6/2026) |
| 7 | Opening Expert Report of Dr. Bernhardt Trout, Ph.D., C.A. No. 24-cv-65 (2/6/2026) |
| 8 | Expert Report of Dr. George Korenko, C.A. No. 24-cv-64 (3/16/2026) |
| 9 | Deposition Transcript of Dr. George Korenko, C.A. No. 24-cv-64 (5/26/2026) |
| 10 | Expert Report of James Malackowski, C.A. No. 24-cv-65 (3/16/2026) |
| 11 | Deposition Transcript of James Malackowski, C.A. No. 24-cv-65 (4/15/2026) |
| 12 | Production Document with Bates No. EAGLEBEN-SA_00375590 |

*All emphasis added, and internal citations and quotation marks omitted, unless otherwise noted.

## I.  INTRODUCTION

Defendants' motion is a transparent attempt to usurp the jury's role.  They do not challenge Dr. Vellturo's qualifications, the relevance of his opinions, his lost profits opinions, ▮▮▮▮▮ ▮▮▮▮▮▮▮ or his application of the *Georgia Pacific* factors.  Instead, Defendants challenge only the apportionment underlying Dr. Vellturo's use of the ▮▮▮▮▮▮▮▮▮▮▮▮▮ — an agreement that they ***admit*** is both economically and technically comparable.  Having conceded comparability, Defendants are left only to quibble with his apportionment methodology, arguing that he should have sliced the data differently or assigned precise numerical values to each variable.

The law forecloses this gambit.  "There is no blanket rule of quantitative apportionment in every comparable license case," and every reasonable royalty analysis "necessarily involves an element of approximation and uncertainty."  *Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1372, 1376 (Fed. Cir. 2020).  Defendants' demand for mathematical precision finds no support in the law and confuses a disagreement about an expert's application of methodology— properly tested at trial through cross-examination—with a failure to undertake a methodology.

Far from ignoring the differences between the hypothetical license and the ▮▮▮▮▮▮▮ ▮▮▮▮▮ Dr. Vellturo devoted at least 28 paragraphs to analyzing the distinguishing features— assessing whether each factor exerted upward or downward pressure on the royalty, including the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  He relied on the unchallenged analysis of Eagle's technical expert, Dr. Trout, establishing that the Asserted Patents are "foundational and enabling patents" that command the majority of value in the licensed portfolio.  Ex. 1 ¶ 228.  And he conservatively adopted ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—that he determined "represents a substantially understated measure of the value of the Asserted Patents."  *Id.* ¶ 230.  Notably, even Apotex's damages expert derived and used ▮▮▮▮▮▮▮ from this Agreement.

1

In sum, Defendants mischaracterize Dr. Vellturo's analysis, at most raise factual questions about the weight of his testimony, and fall far short of the extraordinary remedy of exclusion.

## II.    FACTUAL BACKGROUND

Eagle owns U.S. Patent Nos. 11,872,214 ("'214 patent") and 12,138,248 ("'248 patent"), which claim novel liquid bendamustine-containing compositions suitable for long-term storage, addressing the clinical inconvenience and storage limitations of prior art lyophilized formulations.

**A.    ████████████████████████**

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

**B.    The Opinions of Eagle's Damages Expert, Dr. Christopher Vellturo**

Dr. Vellturo's primary opinion is that the *Panduit* test is met and Eagle should recover lost profits. Ex. 1 ¶¶ 14-17; Ex. 3 ¶¶ 14-17. Defendants did not challenge these opinions. Dr. Vellturo also opines that, if lost profits are not warranted, Eagle should recover reasonable royalties. Ex. 1 ¶ 18; Ex. 3 ¶ 18. Dr. Vellturo assesses the reasonable royalty using an ██████████████████,

which presents  Ex. 1 ¶¶ 18-19; Ex. 3 ¶¶ 18-19.  He then analyzes the *Georgia-Pacific* factors and conservatively adopts . *See* Ex. 1 ¶¶ 20-21; Ex. 3 ¶¶ 20-21.  Defendants do not challenge Dr. Vellturo's  or application of the *Georgia-Pacific* factors to the , which yields his per unit royalty rates.  *See id.*

Dr. Vellturo relies on the  to corroborate his primary analysis.  Dr. Vellturo analyzes the agreement and explains that, while there "are multiple context specific factors that temper the direct comparability," when they "are properly accounted for," there would be .  Ex. 1 ¶ 221; Ex. 3 ¶ 215.  Dr. Vellturo then specifically addresses each factor in the Agreement that would place upward, and downward, pressure on the royalty resulting from the hypothetical negotiation.

First, Dr. Vellturo explains that Eagle obtained  exerting upward pressure on the reasonable royalty.  Ex. 1 ¶¶ 222-223; Ex. 3 ¶¶ 216-217.  Second, Eagle received   *See* Ex. 1 ¶¶ 224, 226; Ex. 3 ¶¶ 218, 220.   Ex. 1 ¶ 225; Ex. 3 ¶ 219.   Ex. 1 ¶ 227; Ex. 3 ¶ 221.  Dr. Vellturo then acknowledged the factors placing downward pressure on the reasonable royalty.  Relying on

Dr. Trout, he acknowledged that the

Ex. 1 ¶¶ 209, 228; Ex. 3 ¶¶ 203, 222.  He also explained, relying on Dr. Trout (Ex. 1 ¶ 228; Ex. 3 ¶ 222), the Asserted Patents are "foundational," "enabling," and "relatively ███ valuable" ████████████████, but found ████████

████████████ would ████████████████████████████████████

████████████ *Id.*  Dr. Vellturo concludes that "in full consideration of the[se] elements,"

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ Ex. 1 ¶ 230; Ex. 3 ¶ 224.

## III.    LEGAL STANDARD

Rule 702 has three requirements for the admission of expert testimony: "qualification, reliability, and fit."  *United States v. Mitchell*, 365 F.3d 215, 245 (3d Cir. 2004).  While the offering party has the burden to prove admissibility of the testimony by a preponderance of the evidence, "the rejection of expert testimony is the exception rather than the rule."  *Wonderland Switzerland AG v. Evenflo Co.*, No. 20-727, 2023 WL 5574139, at *5 (D. Del. Jan. 5, 2023).  Where "the methodology is reasonable and its data or evidence are sufficiently tied to the facts of the case, the gatekeeping role of the court is satisfied, and the inquiry on the correctness of the methodology" belongs to the jury.  *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015).

## IV.    ARGUMENT

There is no dispute that Dr. Vellturo properly relied on the ████████████████, which Defendants "agree … is an appropriate comparable."  D.I. 340 at 1.  Defendants challenge only apportionment, but that challenge fails because Dr. Vellturo relied on technical input from

Dr. Trout, identified the economic differences between the Agreement and hypothetical license, and accounted for those differences by conservatively adopting ███████████████████ .

### A.     Dr. Vellturo Conducted A Proper Apportionment Analysis

Apportionment ensures that "[a] reasonable royalty is measured by the value of what was taken." *Willis Elec. Co. v. Polygroup Ltd.*, 166 F.4th 1363, 1372 (Fed. Cir. 2026). In apportioning damages, "it is improper to assume that a conventional element cannot be rendered more valuable by its use in combination with an invention." *Id.* The appropriateness of an expert's apportionment analysis is one for the jury because "the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." *Summit 6*, 802 F.3d at 1296.

The ████████████████ is indisputably comparable to the hypothetical license. D.I. 370 at 1. Where an agreement "involves comparable technology, is economically comparable, and arises under comparable circumstances," a "baseline comparability exists" and the expert's opinions are "properly admitted." *Bio-Rad*, 967 F.3d at 1372. Defendants only argue that Dr. Vellturo improperly applied ██████████████████████████ "in full to only the two asserted patents" without "quantitative" apportionment. D.I. 370 at 4-6. But this argument flouts established law that "there is *no* blanket rule of *quantitative* apportionment." *Bio-Rad*, 967 F.3d at 1372. Further, Dr. Vellturo did properly apportion, and Defendants' criticisms go to weight as "[d]etermining the accuracy of the apportionment methodology is for the jury." *Arigna Tech. Ltd. v. Nissan Mtr. Co.*, No. 22-126, 2022 WL 14328350, at *1-3 (E.D. Tex. Oct. 24, 2022).

Dr. Vellturo did not simply apply the ██████████ without adjustment. He analyzed the Agreement across 28 paragraphs, identified its distinguishing features, and explained why that rate represents a conservative floor for the value of the Asserted Patents. Ex. 1 ¶¶ 206-215, 221-230, 234-235; Ex. 2 ¶¶ 23, 106-110; Ex. 3 ¶¶ 200-209, 215-224; Ex. 4 ¶¶ 20, 100-106. He also acknowledged the hypothetical license would cover only the Asserted Patents ███████ ██

███████████████████████████████████████ (*see* Ex. 1 ¶ 228; Ex. 2 ¶ 107; Ex. 3 ¶ 222; Ex. 4 ¶ 189) and explained that the factors exerting downward pressure are more than offset by those exerting significant upward pressure. *See, e.g.*, Ex. 1 ¶¶ 206-215, 221-222; Ex. 2 ¶¶ 107-110; Ex. 3 ¶¶ 200-209, 215-224; Ex. 4 ¶¶ 188-191. He grounded his apportionment on Dr. Trout's technical analysis finding that the Asserted Patents are "foundational," "enabling," and "relatively ████ valuable"████████████████████. *See* Ex. 1 ¶ 228 (citing Ex. 6 ¶¶ 409-420), Ex. 2 ¶ 107 (citing Ex. 6 ¶ 228); Ex. 3 ¶ 222 (citing Ex. 7 ¶¶ 409-420); Ex. 4 ¶ 153. Dr. Vellturo's apportionment analysis is thus proper. *See, e.g.*, *Wonderland*, 2023 WL 5574139, at *5 (finding argument that expert must do a quantitative apportionment "goes to the weight of the evidence").

Notably, Defendants ignore Dr. Trout's opinions and did ***not*** challenge them at *Daubert*. Lacking any technical rebuttal, Defendants assert the licensed patents are "all directed to similar liquid bendamustine formulation technology" and have "substantial similarities" in "claim scope." D.I. 340 at 4-5. But that is exactly what Dr. Trout analyzed (Exs. 7 and 8 ¶¶ 409-420), which Dr. Vellturo relied on. *See, e.g.*, Ex. 1 ¶ 228; Ex. 3 ¶ 222. In contrast, ████████████████████ ██████████████████████ and the conclusory assertion in their brief is inadmissible attorney argument[1] that is wrong in any event (as Dr. Trout explains, Ex. 6 ¶¶ 409-420). "Courts have held that disputes with an expert's conclusion apportioning relative value among patents in a transaction go to the weight that should be afforded an expert's opinion, not its admissibility." *Zak v. Facebook, Inc.*, No. 15-13437, 2021 WL 4481588, at *3 (E.D. Mich. Sept. 30, 2021). Here, any disagreement with Dr. Trout's "technical analysis … goes to weight" and "can be fully explored

---

[1] Defendants only ████████████████████████████████████████████████████████████████ (Ex. 9 at 40:18-41:22; Ex. 11 at 25:5-26:3) and "arguments of counsel cannot take the place of evidence lacking in the record." *Estee Lauder Inc. v. L'Oreal, S.A.*, 129 F.3d 588, 595 (Fed. Cir. 1997).

on cross-examination." *Shopify Inc. v. Express Mobile, Inc.*, No. 19-439, 2021 WL 4288113, at *21 (D. Del. Sept. 21, 2021); *see also, e.g.*, *Immersion Corp. v. HTC Corp.*, No. 12-259, 2015 WL 834209, at *2-3 (D. Del. Feb. 24, 2015) (finding argument that expert's calculation rested "on the premise that the patents-in-suit are the most valuable in the portfolio" went to weight of opinion).

Defendants' demand that Dr. Vellturo "***quantify[]***" each variable invites legal error.  D.I. 340 at 5; *see also id.* at 7-8 (claiming Dr. Vellturo offers "no methodology for quantifying" the *Georgia Pacific* factors).  It is black letter law that "any reasonable royalty analysis necessarily involves an element of approximation and uncertainty," including for apportionment.  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009).  "The Federal Circuit has made clear that there is no single, exacting way to conduct an apportionment analysis, since damages models are fact-dependent."  *Intel Corp. v. Future Link Sys., LLC*, No. 14-377, 2017 WL 2482881, at *5 (D. Del. June 1, 2017); *accord Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015) ("[U]nder this apportionment principle, there may be more than one reliable method for estimating a reasonable royalty.").  "[T]here is no blanket rule of quantitative apportionment in every comparable license case."  *Bio-Rad*, 967 F.3d at 1376-77 (denying *Daubert* motion based on expert's "fail[ure] to provide any numerical value to support his analysis"); *see also Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, No. 15-152, 2018 WL 5729732, at *2 (D. Del. Nov. 2, 2018) ("In fact, it may be impossible to quantitatively determine the exact percentage of a royalty rate that corresponds to each component of a licensed product").[2]

Here, Dr. Vellturo accounted for the economic differences and relied on Dr. Trout's "substantial qualitative analysis" of the technical value of the Asserted Patents.  *See supra* § II.B.

---

[2] As in *Bio-Rad*, Mr. Malackowski acknowledges there is "built-in" apportionment here.  *See, e.g.*, Ex. 10 § 11.1.13 ("the concept of apportionment was presumably considered by the parties …").

7

The "lack of quantitative analysis does **not** preclude admissibility." *Board of Regents Univ. of Texas Sys. v. Boston Sci. Corp.*, No. 18-392, 2022 WL 17584180, at *4 (D. Del. Dec. 12, 2022). Defendants' "complaints conflate admissibility questions for the court with factual questions for the jury." *Willis*, 166 F.4th at 1377.  An expert's analysis "does not become unreliable simply because a party believes an expert should have presented information to the jury differently," *id.*, and any disagreement about proper apportionment "is more properly submitted to the jury." *Sioux Steel Co. v. Prairie Land Mill Wright Serv.*, No. 16-2212, 2022 WL 17184469, at *9-10 (N.D. Ill. Nov. 23, 2022) ("competing apportionment analyses is more properly submitted to the jury"); *Albritton v. Acclarent, Inc.*, No. 16-3340, 2020 WL 11627275, at *19 (N.D. Tex. Feb. 28, 2020).

Defendants argue that Dr. Vellturo's deposition testimony shows a failure to apportion. D.I. 340 at 5.  The opposite is true—it confirms he apportioned.  *See, e.g.*, Ex. 5 at 116:16-117:18 ("Q. Did you undertake any effort to apportion the value of the ███████████ that are licensed in the ████████████████ ? A. Well, yes, I spoke to Dr. Trout about that exact issue.").  Defendants cite one answer but misleadingly omit the next answer, where Dr. Vellturo explained:

Q.  Well, then how do you reconcile that?

A.  How I provide in my report is, again, Dr. Trout indicated that, to the extent the other patents have value, it's far less; and █████████████████████████ ██████████████████████████████████████ ████████████████████████████ the hypothetical negotiation. And, as I said, I list all of that, and that all militates ████████████████████████ So on balance when you consider -- what I learned from Dr. Trout and the presence of all of these many, many factors that point towards a much higher rate ███████████ ████████████████████████████████████

*Id.* at 117:21-118:19; *see also id.* at 118:20-121:4.  Because Dr. Vellturo properly accounted for ████████████████████, "[f]urther exploration of the similarities or differences" is "a factual, rather than methodological, exercise and can be addressed on cross examination." *RSB Spine, LLC v. DePuy Synthes Sales, Inc.*, No. 19-1515, 2022 WL 17084156, at *2 (D. Del. Nov. 18, 2022)

(denying *Daubert* motion for alleged failure to apportion where the comparable license included "the same patents," similar products, the same commercial relationship, and the expert "provide[d] reasoning for why he does not think [other patents] impact his overall calculation").

Defendants argue that Slayback's expert, Mr. Malackowski, "performed the apportionment Dr. Vellturo refused to," and "Dr. Vellturo never attempted to discredit" this analysis. D.I. 340 at 2. Not true. As an initial matter, Defendants fail to inform the Court that Apotex's expert, Dr. Korenko, ██████████████████████████████████ and used that rate as the high-end of his reasonable royalty range. Ex. 8 ¶ 147; Ex. 9 ███████████████████

████████████████████████████████████████████

██████████████████████████████ Dr. Korenko's analysis is consistent with Dr. Vellturo's opinion and shows Mr. Malackowski's analysis is flawed:

| Royalty Rates Derived From ██████████████ | | |
|---|---|---|
| **Dr. Vellturo (Eagle)** | **Dr. Korenko (Apotex)** | **Mr. Malackowski (Slayback)** |
| ██ | ██ | ██ |

Defendants' assertion that Dr. Vellturo "never attempted to discredit" Mr. Malackowski's analysis is false. D.I. 340 at 2. Dr. Vellturo detailed why Mr. Malackowski's patent-counting exercise—which simply ███████████████████████████—is unreliable:



Ex. 4 ¶ 16; *see also id.* ¶¶ 52-54. As explained in Eagle's *Daubert* motion (D.I. 345 at 6-8), "the case law is clear that ██████████████████████████ to conduct an appropriate apportionment analysis. *Golden Bridge Tech. v. Apple Inc.*, No. 12-4882, 2014 WL 2194501, at

*6 (N.D. Cal. May 18, 2014). Thus, it was Slayback's expert—not Dr. Vellturo—that failed to obtain technical input or properly apportion the royalty rate in the ███████████████ .

Defendants' cited cases are inapt or support Eagle. D.I. 340 at 1, 4, 7-8. In *Ericsson, Inc. v. D-Link Sys., Inc.*, the Federal Circuit affirmed the admission of comparable-license testimony and rejected the apportionment challenge, holding "the fact that a license is not perfectly analogous generally goes to the weight of the evidence." 773 F.3d 1201, 1227-28 (Fed. Cir. 2014). *Uniloc USA, Inc. v. Microsoft Corp.* addressed the ███████████████ which Dr. Vellturo did not apply. 632 F.3d 1292, 1317 (Fed. Cir. 2011). In *MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, the court found the licenses were ***not*** comparable and the expert "conducted no assessment of the licensed technology"—neither applies here. 10 F.4th 1358, 1374-75 (Fed. Cir. 2021). And in *Acceleration Bay LLC v. Activision Blizzard Inc.*, the expert did not apportion based on a survey that did not account for value-driving factors—wholly unlike this case. No. 16-453, 2019 WL 4194060, at *4 (D. Del. Sept. 4, 2019). This case is more like *Board of Regents Univ. of Texas*, which distinguished *Acceleration Bay* and held the expert properly apportioned by evaluating whether factors in comparable licenses "could affect whether the hypothetical negotiation would result in a higher or lower royalty rate." 645 F. Supp. 3d at 334. Defendants concede comparability (D.I. 340 at 1 ¶ 1); Dr. Vellturo relied on Dr. Trout's analysis concluding the Asserted Patents command the majority of the value; and he accounted for the economic differences, finding they conservatively justify ██████████ *See supra* § II.A. Defendants' "criticisms of the adequacy of [his] apportionment analysis … can be addressed … through cross-examination." *Helios Software, LLC v. SpectorSoft Corp.*, No. 12-81, 2015 WL 3622399, at *4 (D. Del. June 5, 2015).

**B.**   ███████████████████████████████████

Defendants next argue that Dr. Vellturo should have begun with ██████████████

███████████████████████████████████████████████████

10

D.I. 340 at 2, 6-7. Defendants are wrong; this criticism at most goes to weight, not admissibility.

The premise underlying Defendants' argument—███████████████████████████ ████████████████████████████████████)—is wrong. As Dr. Vellturo explained, ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████ *Id.* ¶ 150 (citing Ex. 12). Dr. Vellturo also explained that the ████████████████████████████████████

████████████████████████████████ *Id.* ¶ 151. ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████ *Id.* ¶¶ 151, 191. He confirmed this analysis at deposition:

Q.    And why did you choose the ████████ ?

A.    … I have an existing license from ████████████ that includes the patents-in-suit that, at the time of the hypothetical negotiation -- ████████████████ ████████████████████, and that would have significantly governed the interactions between the parties.

Q.    Why do you choose ████████████████ ?

A.    Well, I don't -- ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

11

 but I elected to be conservative…

Q.

A.

.

Ex. 5 at 111:6-113:9 (cleaned up).  Defendants may believe ▮▮▮▮▮▮ reflects "regulatory value," not "any patent claim" (D.I. 340 at 4), but Dr. Vellturo explains that it reflects established commercial acceptance that would be considered at the hypothetical negotiation; any disagreement on that score involves "factual questions that go to the weight" of his testimony and are for the jury.[3] *Trustees of Boston Univ. v. Everlight Elecs. Co.*, No. 12-11935, 2015 WL 6408118, at \*2-4 (D. Mass. Oct. 23, 2015) ("Why Cree and BU lowered the original 2% running royalty to 1% in the amended agreement, and whether additional payments … make the licensing scheme the economic equivalent of a 3% running royalty, are factual questions that go to the weight.").

Defendants' sole cited case has nothing to do with allegedly using the wrong royalty rate. D.I. 340 at 6.  In *SUNOCO Partners Marketing & Terminals L.P. v. Powder Springs Logistics, LLC*, the expert relied on "supply agreements" that licensed patents and "additional services," but "never engage[d] in an apportionment analysis" or "articulate[d] why the value of the licensed patents drive demand."  No. 17-1390, 2020 WL 7330715, at \*7 (D. Del. Jan. 13, 2020).  Here, Dr. Vellturo systematically assessed each distinguishing feature of the ▮▮▮▮▮▮▮▮▮▮, explained why each royalty rate was tied to the licensed patents, relied on Dr. Trout, and explained how each factor would impact the applicable rate at the hypothetical negotiation.  *Supra* §§ II.B.

---

[3] Defendants also improperly discount the undisputed fact that, as of the hypothetical negotiation, the prevailing rate was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 9 at 254:5-17.

**C.** **Dr. Vellturo Properly Accounted For The Differences Between The ▇▇▇ ▇▇▇▇▇▇▇▇▇▇ And The Hypothetical License**

Defendants argue—without citation to Dr. Vellturo's reports, his deposition, or ▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇—that Dr. Vellturo did not account for the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇, or ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇ That is wrong and, again, Defendants' criticisms go to weight, not admissibility.

Dr. Vellturo expressly accounted for each factor that Defendants claim he ignored. He repeatedly acknowledged the ▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 1 ¶¶ 64, 179, 206, 209, 213, 231-232; Ex. 2 ¶¶ 113-115; Ex. 3 ¶¶ 63, 175, 200, 203, 207, 227; Ex. 4 ¶¶ 155-157; *see also, e.g.*, Ex. 5 at 118:20-120:4. He explained that, while these factors would exert downward pressure on the royalty, they are more than offset by the many factors exerting significant upward pressure. *See* Ex. 1 ¶¶ 206-215, 221-222; Ex. 2 ¶¶ 107-110; Ex. 3 ¶¶ 215-224; Ex. 4 ¶¶ 20, 32, 100-106, 154, 162; *see also, e.g.*, Ex. 5 at 114:3-115:6 (explaining that he "considered … ▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ at 117:21-118:19, 120:20-121:4.

Even accepting Defendants' arguments, their criticisms are for cross-examination. They cite no case excluding opinions for not accounting for ▇▇▇▇▇▇▇▇▇▇ between licenses. D.I. 340, *passim*.[4] Controlling law holds that "any failure on the part of [an] expert to control for certain variables are factual issues best addressed by cross examination and not by exclusion." *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012)

---

[4] Defendants' only cited case (D.I. 340 at 7) set a royalty rate after a bench trial while noting the unremarkable proposition that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Medtronic Sofamor Danek USA, Inc. v. Globus Med., Inc.*, 637 F. Supp. 2d 290, 310 (E.D. Pa. 2009).

(dispute over whether a license fee covering "patents and software services" was attributable to asserted patents is a "factual issue[] best addressed by cross examination"); *Ericsson*, 773 F.3d at 1227. Dr. Vellturo addressed and accounted for these differences, finding that the overall balance of factors—███████████████████████████. *Supra* § II.B. Whether that conclusion is correct is a question for the jury. *Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, No. 15-152, 2018 WL 4691047, at *4 (D. Del. Sept. 28, 2018) (argument that "reduction to account ████████ was "arbitrary" goes "to the weight""); *Wonderland*, 2023 WL 5574139, at *3-4.

**D.    Dr. Vellturo's ███████ Is Independent From His Per-Unit Royalty Rate**

Defendants seek to exclude the "entirety" of Dr. Vellturo's "reasonable royalty testimony" ████████████████████████████ D.I. 340 at 8. That is wrong. While the Court need not reach this argument because Dr. Vellturo's analysis is reliable, Defendants provide no basis for their sweeping request. Dr. Vellturo's affirmative royalty opinion is a ***per unit*** reasonable royalty based on an ██████████ analysis that Defendants did ***not*** challenge. *See* Ex. 1 ¶¶ 183-203, 275-278; Ex. 3 ¶¶ 173-175, 179-197, 266-269. He independently analyzes the ███████████████ under a different methodology—the Market Approach and *Georgia Pacific* Factor 1—to set a lower-bound ***percentage-based*** royalty rate. *See* Ex. 1 ¶¶ 205-215, 221-230, 277; Ex. 3 ¶¶ 199-209, 215-224, 268. Indeed, Dr. Vellturo expressly compares and differentiate the two (*see* Ex. 3 ¶ 224), and no part of his per-unit royalty depends on his analysis of the ███████████████. Ex. 5 at 120:5-13. Thus, even if the Court found an issue with that analysis, there is no basis to exclude his independently derived per-unit royalty opinion.

**V.    CONCLUSION**

Eagle requests that the Court deny Defendants' motion to exclude Dr. Vellturo's opinions.

14

Dated: July 1, 2026

OF COUNSEL:

Kenneth G. Schuler
Marc N. Zubick
Alex Grabowski
Michelle Chin
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
(312) 876-7700
kenneth.schuler@lw.com
marc.zubick@lw.com
alex.grabowski@lw.com
michelle.chin@lw.com

Brett M. Sandford
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 9411
(415) 391-0600
brett.sandford@lw.com

Ramya Sri Vallabhaneni
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
ramya.vallabhaneni@lw.com

Kelly A. Welsh
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
(202) 637-2200
kelly.welsh@lw.com

MCCARTER & ENGLISH, LLP

*/s/ Alexandra M. Joyce*

Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
405 N. King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com

*Attorneys for Plaintiffs*

15

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that true and correct copies of the foregoing documents were caused to be served on July 1, 2026, on the following counsel in the manner indicated:

**VIA EMAIL:**

Kenneth L. Dorsney
Cortlan S. Hitch
MORRIS JAMES LLP
3205 Avenue North Boulevard, Suite 100
Wilmington, DE 19803
kdorsney@morrisjames.com
chitch@morrisjames.com

Deepro R. Mukerjee
Lance A. Soderstrom
KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Center
New York, NY 10020-1605
Deepro.mukerjee@katten.com
Lance.soderstrom@katten.com

Jitendra Malik
Joseph M. Janusz
KATTEN MUCHIN ROSENMAN LLP
550 South Tyron Street, Suite 2900
Charlotte, NC 28202
Jitty.malik@katten.com
Joe.janusz@katten.com

Christopher B. Ferenc
KATTEN MUCHIN ROSENMAN LLP
1919 Pennsylvania Avenue, NW Suite 800
Washington, DC 20006
Christopher.ferenc@katten.com

Rachel L. Schweers
Matthew T. Messina
KATTEN MUCHIN ROSENMAN LLP
525 W. Monroe Street
Chicago, IL 60661
Rachel.schweers@katten.com
Matthew.messina@katten.com

*Attorneys for Defendants Apotex, Inc. and Apotex Corp.*

ME1\61693533.v1

Neal C. Belgam
Daniel A. Taylor
SMITH KATZENSTEIN & JENKINS LLP
1000 West Street, Suite 1501
Wilmington, DE 19801
nbelgam@skjlaw.com
dtaylor@skjlaw.com

Jason A. Lief
Alan H. Pollack
Audrey R. Sparschu
WINDELS MARX LANE & MITTENDORF, LLP
156 West 56th Street
New York, NY 10019
jlief@windelsmarx.com
apollack@windelsmarx.com
asparschu@windelsmarx.com

Andrew Miller
Ajay Kayal
Robyn Ast-Gmoser
Kiersten Fowler
Daniel Forchheimer
WINDELS MARX LANE & MITTENDORF, LLP
One Giralda Farms
Madison, NJ 07940
amiller@windelsmarx.com
akayal@windelsmarx.com
rast-gmoser@windelsmarx.com
kfowler@windelsmarx.com
dforchheimer@windelsmarx.com

*Attorneys for Defendants Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

*/s/ Alexandra M. Joyce*

Alexandra M. Joyce (#6423)

ME1\61693533.v1