**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| EAGLE PHARMACEUTICALS, INC. and EAGLE SUB1 LLC,<br><br>Plaintiffs,<br><br>v.<br><br>APOTEX INC. and APOTEX CORP.,<br><br>Defendants. | REDACTED PUBLIC VERSION FILED AUGUST 7, 2026<br><br>C.A. No. 24-64-JLH (CONSOLIDATED)<br><br>**JURY TRIAL DEMANDED**<br><br>█████████████ |
| EAGLE PHARMACEUTICALS, INC. and EAGLE SUB1 LLC,<br><br>Plaintiffs,<br><br>v.<br><br>SLAYBACK PHARMA LLC and AZURITY PHARMACEUTICALS, INC.,<br><br>Defendants. | C.A. No. 24-65-JLH (CONSOLIDATED)<br><br>**JURY TRIAL DEMANDED**<br><br>█████████████ |

**DECLARATION OF ALEX GRABOWSKI IN SUPPORT OF
PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR
<u>PARTIAL SUMMARY JUDGMENT OF DAMAGES</u>**

I, Alex Grabowski, declare as follows:

1.　　I am an attorney at the law firm of Latham & Watkins LLP and counsel for Eagle Pharmaceuticals, Inc. and Eagle Sub1 LLC ("Eagle") in the above-captioned case.  I am admitted to practice before the Court *pro hac vice*.

2.　　I make this declaration in support of Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment of Damages.

3.　　I have personal knowledge of the facts set forth in this declaration, and if called as a witness, could and would competently testify thereto.

4.　　Attached as **Exhibit 1** is a true and correct copy of correspondence between case counsel, dated between June 23, 2026 and June 30, 2026.

5.　　Attached as **Exhibit 2** is a true and correct copy of excerpts of the Expert Report of Dr. George Korenko.

6.　　Attached as **Exhibit 3** is a true and correct copy of excerpts of the Expert Report of James Malackowski.

I declare under penalty of perjury that the foregoing is true and correct.

July 1, 2026　　　　　　　　　　　　　　　　　　*/s/* Alex Grabowski　　
　　　　　　　　　　　　　　　　　　　　　　　　Alex Grabowski

1

# EXHIBIT 1
# FILED UNDER SEAL

# EXHIBIT 2
# FILED UNDER SEAL

# HIGHLY CONFIDENTIAL – CONTAINS HIGHLY CONFIDENTIAL INFORMATION OF APOTEX

**HIGHLY CONFIDENTIAL**
**ATTORNEYS' EYES ONLY**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| EAGLE PHARMACEUTICALS, INC. and EAGLE SUB1 LLC<br><br>Plaintiffs,<br><br>v.<br><br>APOTEX INC. and APOTEX CORP.<br><br>Defendants. | C.A. No. 24-64-JLH |

**EXPERT REPORT OF DR. GEORGE KORENKO, PH.D.**

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

## I.    QUALIFICATIONS AND ASSIGNMENT

1.      My name is George G. Korenko. I am a Partner at Edgeworth Economics, L.L.C. ("Edgeworth"). Edgeworth is a consulting firm that provides clients with objective expert economic and financial analysis for complex litigation and public policy debates. Edgeworth's experts work in numerous areas including antitrust, intellectual property, class certification, tax and transfer pricing, data management, and labor and employment.

2.      I received my B.S. degree *cum laude* with majors in Economics and Finance from Virginia Polytechnic Institute and State University, my Master's degree in Economics from Virginia Polytechnic Institute and State University, and my Ph.D. from the University of North Carolina at Chapel Hill ("UNC"). My areas of specialization at UNC were industrial organization, macroeconomics and monetary policy, and econometrics—the application of statistics to economic problems. My career as a professional economist has spanned over three decades, with 25 years in economic consulting. As an economic consultant, I have provided expert testimony in cases involving antitrust, commercial damages, tax issues, labor and employment, executive compensation, medical malpractice, and international trade. I have written expert reports and conducted economic analyses for intellectual property disputes and multinational taxation issues. I have also evaluated the economics of class certification, assessed the merits of antitrust allegations, estimated antitrust damages, performed valuations, and written reports in dozens of litigation matters. I have been recognized as a top competition economist by clients and peers. I have served as an Adjunct Professor in Georgetown University's McCourt School of Public Policy, where I taught the graduate-level course *Antitrust and Public Policy*.

3.      I previously held positions as a Senior Economist at the Federal Housing Finance Agency ("FHFA") and a Funds Management Systems Associate at First Union National Bank. I also held positions as an Assistant Professor of Business and Economics at Meredith College and an Instructor at UNC, where I taught classes in finance, investments, labor economics, microeconomics, macroeconomics, international trade, and international monetary economics. In my position with the FHFA, I performed economic, financial, and statistical analyses related to various safety and soundness issues, including executive compensation and risk-based capital. I wrote reports and presented my work to United States ("U.S.") Congressional staff and the Director of the FHFA.

4.      I have written papers and given presentations on topics related to valuation of businesses and intellectual property, estimating lost profits, economic damages, antitrust, transfer pricing, executive compensation, risk management, and intellectual property protection. I have been accepted as an expert

5

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

- He uses a different approach to calculate Bendeka's but-for net prices, using the 2023 average net price as a baseline then using a trend from Q4 2020 to Q2 2022 to project forward. Once again, he ignores additional pricing data available before Q4 2020 and the associated trends.

13.     I revise his estimates by using internal company data and fitting a line based on all available data beginning with the Q2 2018 launch of Belrapzo through Q3 2022 (Dr. Vellturo's cutoff for units). When I make these revisions, Dr. Vellturo's lost profit and price erosion damages for Belrapzo and Bendeka total ███████████.

14.     I also conduct an analysis under the assumption that a portion of the allegedly infringing unit sales would have gone to powder bendamustine products based on their share of unit sales during the relevant period.  Adding this consideration to my revisions further reduces Dr. Vellturo's lost profit and price erosion damages to ███████████.

***Dr. Vellturo's*** ██████████████████████ ***Are Not Causally Attributable to the Alleged Infringement.***

15.     Dr. Vellturo attributes ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

16.     Moreover, even taking Dr. Vellturo's analysis on its face, he fails to limit his analysis to just Apotex's infringement and relies on his flawed lost profits analysis to estimate but-for funds available. Given Dr. Vellturo's failure to establish a causal link between Eagle's entry into the ████████

8

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

████████████████████████████████████████████████████████████

████████████

***Dr. Vellturo's reasonable royalty analysis is biased by his inappropriate lost profits estimates, fails to consider Apotex's non-infringing alternatives, and relies on an inappropriate analysis of the primary license agreement on which he bases the royalty rate.***

17.     Dr. Vellturo concludes that Eagle would accept as a reasonable royalty no less than its lost profits from the alleged infringement, which he estimates to be ████████████. As an initial matter, a reasonable royalty based on a fixed dollar amount per unit is not a realistic outcome of the hypothetical negotiation and is inconsistent with the license agreements he reviewed for his analysis and I reviewed in this matter, all of which specify a royalty rate as a percentage of sales or profits. Moreover, his per unit royalty represents a royalty rate of approximately ████ of Apotex's net sales—which is unsupported by any comparable agreements and is more than double the ████ royalty rate he arrives at based on his analysis of *Georgia-Pacific* Factor 1. This is, in part, because his per unit royalty is based on his flawed lost profits analysis.

18.     In addition, Dr. Vellturo fails to consider that license negotiations would have taken into account royalties for the period through January 28, 2031, which would have resulted in a lower royalty rate, as substitute products continued to erode bendamustine usage. ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

55.     As a result of a request from Eagle, the FDA ministerially listed both the '214 and '248 patents in the Orange Book for Belrapzo and Bendeka.[117]

### D.  Plaintiffs' Allegations

56.     Plaintiffs allege that Apotex's "importation into the United States, and use, sale and/or offer for sale" of its "NDA product, Bendamustine Hydrochloride Injection 100 mg/4 mL (25 mg/mL) " infringed at least one claim of the '214 patent and '248 patents."[118] Plaintiffs allege that "Eagle has suffered monetary damages, including but not limited to lost profits" as a result of these infringements.[119] Further, they assert that Eagle is "entitled to damages for ███████ caused by Apotex's infringement," and that Eagle may pursue "a reasonable royalty for any infringing sale not subject to lost profits."[120]

57.     Further, Eagle is claiming damages related to "the cost to Eagle from the loss of Bendeka royalties due to the ███████████."[121] Specifically, Plaintiffs alleged that absent the alleged infringement by Apotex, Eagle would have had ███████████████████████████████ ██████████████████████████████████████ Thus, Eagle seeks damages, estimated by Dr. Vellturo, related to the royalties it would have earned had it not ████████████ ███████████

## IV.    FRAMEWORK FOR PATENT INFRINGEMENT DAMAGES

58.     If a patent is found to be infringed, I understand that a successful plaintiff in a patent infringement suit is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer."[123] From an economic perspective, "damages adequate to compensate for the infringement" for the owner of a valid and infringed patent equal the difference between the amount the patent owner would have received in the world absent infringement (the "but-for" world) and the amount actually received. Appropriately

---

[117] Second Amended Complaint, ¶¶ 32,35; First Amended Complaint ¶¶ 27, 30.

[118] Second Amended Complaint, ¶1. [Need to update this source to include '248 patent]

[119] Second Amended Complaint, ¶¶ 66, 75.

[120] Plaintiffs' Fifth Supplemental Objections and Responses to Defendants Apotex Inc. and Apotex Corp.'s First Set of Interrogatories, pp. 7, 15.

[121] Vellturo Report, ¶170.

[122] Vellturo Report, ¶170.

[123] 35 U.S.C. § 284.

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

infringing sales would have gone to Belrapzo and ▮ to Bendeka, then uses this allocation to estimate damages.[134] He also performs a similar analysis using internal unit sales data, ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ However, he does not provide a corresponding estimate of damages based on the internal data.[136]

64.    Dr. Vellturo then estimates the but-for prices of Belrapzo and Bendeka absent the alleged infringement by Apotex, Slayback, and Baxter, relying in part on the pricing history of these products from Q4 2020 through Q4 2023.[137] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

65.    Dr. Vellturo also calculates price erosion damages ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ As a final step, he allocates these lost profit and ▮▮▮▮▮▮▮▮▮▮ to Apotex based on its share of "Apotex's, Baxter's, and Slayback's liquid bendamustine products unit sales."[141] He presents his estimates of lost profits and ▮▮▮▮▮▮ damages in Figure 1 of his report.

66.    ==Dr. Vellturo calculates purported damages based on the costs Eagle incurred under its== ▮▮▮▮▮▮▮▮▮▮▮, ==which he understands from Eagle's counsel "can be attributable as damages due to Apotex's infringement."[142]== He states that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[134] Vellturo Exhibit 17.

[135] Vellturo Exhibit 17.1.

[136] Vellturo Report, Footnote 364.

[137] *Id.*, ¶¶ 156-157.

[138] As per Vellturo Exhibit 15, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[139] Vellturo Report, ¶ 167 and Vellturo Exhibits 5 and 5-A.

[140] Vellturo Report, ¶ 167 and Vellturo Exhibits 4, 4-A, 6, and 6-A.

[141] Vellturo Report, ¶ 167 and Vellturo Exhibits 3-6-A.

[142] ==Vellturo Report, ¶ 170.==

[143] ==*Id.*, ¶ 169.==

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

███████████████████████████████████████████

███████████████ █ ████████████████████████

███████████████████████████████████████████

███████████████████████████████████████ █ ██

████████████████████████████████████████

████████████████████████████████████

67.     Finally, Dr. Vellturo calculates reasonable royalty damages "should the finder of fact determine damages should be awarded in the form of a reasonable royalty."[146] He evaluates a hypothetical licensing negotiation between Eagle and Apotex on the eve of the first alleged infringement, which he identifies as January 16, 2024, the date of issuance of the '214 patent.[147] ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████[148] He

presents the results of his reasonable royalty discussion in Figure 2 of his report.

68.     Dr. Vellturo's analyses rely on numerous flawed assumptions and fail to account for ██████████████████████████, each of which inflates the damages he calculates. In **Section VI**, I explain how these issues affect his lost profits and ███████████ damages analyses and present revisions to address them. In **Section VII**, I address Dr. Vellturo's evaluation of damages related to the ███████████████. Finally, in **Section VIII**, I evaluate and revise his reasonable royalty damages analysis.

## VI. DR. VELLTURO'S LOST PROFITS AND ███████████ ANALYSIS IS FLAWED AND SUBSTANTIALLY OVERSTATES DAMAGES

### A.  Dr. Vellturo Does Not Establish An Absence of Non-Infringing Substitutes

69.     As discussed above, one of the *Panduit* factors requires the absence of non-infringing substitutes available at the time of infringement. At the time of the alleged infringement, Apotex had

---

[144] Ibid.

[145] Vellturo Report, ¶ 170.

[146] *Id.*, ¶ 173.

[147] *Id.*, ¶¶ 174, 176.

[148] *Id.*, ¶¶ 206-215 and 221-230.

pharmacist has decision-making authority to choose which format of bendamustine to administer and would do so based on economic and operational (e.g., chair time) considerations.[201]

95.     I revise Dr. Vellturo's analysis by allowing powder bendamustine products to capture a share of the allegedly infringing sales based on their actual share of total bendamustine unit sales during the period from Q1 2024 through Q4 2025. During this period, powder bendamustine products accounted for 5.4% of all bendamustine unit sales.[202]

96.     I revise Dr. Vellturo's analysis to account for powder sales by assuming that 5.4% of the allegedly infringing sales would have gone to powder bendamustine products in the but-for world, with the remainder allocated between Bendeka and Belrapzo based on the revised ratios I calculated above. The resulting damages are reported in **Exhibit 13** below, which presents a revised version of Figure 1 in the Vellturo Report that also accounts for substitution between powder and liquid bendamustine products. If the finder of fact were to determine that Eagle has not shown that the alleged ▮▮▮▮▮▮▮ damages were caused by Apotex and conclude that Eagle is not entitled to ▮▮▮▮▮▮▮ damages, then the total lost profits would be reduced to ▮▮▮▮▮▮ .

## VII.     DR. VELLTURO'S ▮▮▮▮▮▮▮▮▮▮ DAMAGES ARE NOT CAUSALLY ATTRIBUTABLE TO THE ALLEGED INFRINGEMENT

97.     Dr. Vellturo states that he understands that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[201] Shah Report, ¶ 145.

[202] During 2024–2025, powder bendamustine products accounted for 90,653 extended units out of 1,680,557 total bendamustine extended units, or approximately 5.4 percent.

[203] Vellturo Report, ¶ 168.

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

███████████████████████████████████████████████████████

████████ ████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████

**A.** ███████████████████████████████████████████████
███████

██    ███████████████████████████████████████████████

███████████████████████████

█    ███████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

- On November 9, 2023, Eagle announced that it would be delaying the release of its third quarter 2023 results pending a review of potential adjustments relating to the reporting of sales of Pemfexy and that it expected to revise its 2023 full year guidance downward.[207] Eagle filed a Form 12b-25 on that same date stating that the company "is reviewing and expects potential adjustments to reserves for returns and price adjustments of approximately $15.0 million to $20.0 million. These potential adjustments primarily relate to returns and a price adjustment for PEMFEXY® substantially stemming from slower-than anticipated pull-through from one wholesale customer predominantly due to expiry of inventory."[208]

---

[204] Ibid.

[205] With respect to proximate cause, Dr. Vellturo has not shown that Apotex could have reasonably foreseen that the alleged infringement would have caused Eagle to default on its credit agreement with JP Morgan, that it would have entered into an agreement to provide Blue Owl with rights to certain Bendeka royalties, or that these events were a direct result of Apotex's alleged infringement.

[206] EAGLEBEN-SA_00347447 at 7477.

[207] "Eagle Delays Third Quarter 2023 Results and Conference Call," Eagle, November 9, 2023, https://investor.eagleus.com/news-releases/news-release-details/eagle-delays-third-quarter-2023-results-and-conference-call.

[208] Eagle Pharmaceuticals, Inc., Form 12b-25, November 9, 2023.

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

- On November 29, 2023, Eagle announced that it had received a notice from the Listing Qualifications Department of the Nasdaq Stock Market LLC ("Nasdaq") two days earlier.[209] The notice stated that Eagle was not in compliance with continued listing requirements that required timely filing of all periodic financial reports with the SEC due to the delay in the third quarter filing. Also on November 29, Eagle's Founder, President and Chief Executive Officer announced his resignation and retirement from his positions with the company.[210] In a Form 8-K filing, the company announced, "After consideration of various alternatives, including termination with or without cause, the Board accepted Mr. Tarriff's resignation. Mr. Tarriff will be on leave until his last day of employment with the Company on December 31, 2023."[211]

- In December 2023, Eagle's Audit Committee concluded that the company's consolidated financial statements for the quarter ended June 30, 2023, as filed with the SEC, "should no longer be relied upon and should be restated."[212]

- On April 12, 2024, Eagle announced that it had received another notice from Nasdaq because of its failure to file its Form 10-K for the year ended December 31, 2023 in a timely manner. The company further announced that there could be no assurance that it would "be able to regain compliance or maintain compliance with the rule or other listing requirements.[213]

- In May 2024, Eagle received a notice from Nasdaq that it initiated a process to delist Eagle's securities from Nasdaq because Eagle had not filed its quarterly report (Form 10-Q)

---

[209] Eagle Pharmaceuticals Announces Receipt of Notification of Deficiency from Nasdaq Regarding Requirement to Timely File Quarterly Report on Form 10-Q," Eagle Pharmaceuticals, Inc., November 29, 2023, https://investor.eagleus.com/news-releases/news-release-details/eagle-pharmaceuticals-announces-receipt-notification-deficiency.

[210] "Eagle Pharmaceuticals Announces Management Change," Eagle, November 29, 2023, https://investor.eagleus.com/news-releases/news-release-details/eagle-pharmaceuticals-announces-management-change.

[211] Eagle Pharmaceuticals, Inc. Form 8-K, November 27, 2023.

[212] Eagle Pharmaceuticals, Inc. Form 8-K, December 12, 2023.

[213] "Eagle Pharmaceuticals Announces Receipt of Notification of Deficiency from Nasdaq Regarding Requirement to Timely File Annual Report on Form 10-K," Eagle, April 12, 2024, https://investor.eagleus.com/news-releases/news-release-details/eagle-pharmaceuticals-announces-receipt-notification-0.

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

for the quarter ended September 30, 2023 or its annual report (Form 10-K) for the year ended December 31, 2023 in a timely manner.[214]

- Eagle's stock was suspended from trading on October 3, 2024 and on November 15, 2024 it announced that it intended to delist its stock from the Nasdaq.[215]

-

- By November 2024, Eagle's Audit Committee had concluded that several additional financial statements also needed to be restated.[220] Specifically, on November 21, 2024, Eagle announced that its Audit Committee concluded that its audited consolidated financial statements for the fiscal year ended December 31, 2022 and its unaudited financial statements for quarters ended June 30, 2022, September 30, 2022, and March 31, 2023 should not "be relied upon and the financial statements should be restated."[221] Eagle's

---

[214] "Eagle Pharmaceuticals Announces Receipt of Delisting Notification from Nasdaq," Eagle, May 22, 2024, https://investor.eagleus.com/news-releases/news-release-details/eagle-pharmaceuticals-announces-receipt-delisting-notification.

[215] "Eagle Announces Update on Delisting from Nasdaq and SEC Deregistration," Eagle, November 15, 2024, https://investor.eagleus.com/news-releases/news-release-details/eagle-announces-update-delisting-nasdaq-and-sec-deregistration.

[216] Krawtschuk Deposition, 15:20 – 16:23.

[217] Krawtschuk Deposition, 16:24 – 17:11.

[218] Krawtschuk Deposition, 17:12 – 18:8.

[219] Krawtschuk Deposition, 28:2 – 31:20.

[220] Eagle Pharmaceuticals, Inc. Form 8-K, November 21, 2024; "Eagle Pharmaceuticals (EGRX) Enters Limited Waiver and First Amendment to Third Amended and Restated Credit Agreement," StreetInsider.com, January 16, 2024.

[221] Eagle Pharmaceuticals, Inc. Form 8-K, November 21, 2024.

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

failures to deliver timely financial statements resulted in several waiver and amendment agreements with respect to its credit agreement with JPMorgan.[222]

- ███████████████████████████████████████████████████████████
  ███████████████████████████████████████████████████████████
  ███████████████████████████████████████████

99.    The lack of audited financial statements and the delisting of a company's stock can make it more difficult for the company to raise capital. ████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
██████████████████████████████████ On March 31, 2025, Eagle announced that it had entered into a royalty purchase agreement with an entity related to Blue Owl Capital Inc. ("Blue Owl").  This agreement provided for Eagle to sell its royalty interest in annual net sales of Bendeka for $69 million.[225] Eagle stated that it planned to use the funds to "repay in full its existing Third Amended and Restated Credit Agreement, dated November 1, 2022, among Eagle, the lenders party thereto and JPMorgan Chase Bank, N.A.," which included "the remaining balance under a drawn term loan of $27.5 million, as well as $25 million under a revolving credit facility."[226]

100.    I analyzed Eagle's financial position in the years preceding the alleged infringement, focusing on the company's cash and cash equivalents and its short- and long-term debt. ████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████

---

[222] Eagle Pharmaceuticals, Inc., Audited Consolidated Financial Statements For the Years Ended December 31, 2024 and 2023 (Krawtschuk, Exhibit 1), Note 13; Krawtschuk Deposition, 33:3–8.

[223] Krawtschuk Deposition, 34:4–16; Eagle Pharmaceuticals, Inc., Audited Consolidated Financial Statements For the Years Ended December 31, 2024 and 2023 (Krawtschuk, Exhibit 1), Note 13.

[224] Krawtschuk Deposition, 34:4–16; Eagle Pharmaceuticals, Inc., Audited Consolidated Financial Statements For the Years Ended December 31, 2024 and 2023 (EAGLEBEN-SA_00347447 at 7477), Note 13.

[225] "Eagle Pharmaceuticals Announces $69 Million Agreement to Monetize BENDEKA® Royalties," Eagle, March 31, 2025, https://investor.eagleus.com/news-releases/news-release-details/eagle-pharmaceuticals-announces-69-million-agreement-monetize.

[226] "Eagle Pharmaceuticals Announces $69 Million Agreement to Monetize BENDEKA® Royalties," Eagle, March 31, 2025, https://investor.eagleus.com/news-releases/news-release-details/eagle-pharmaceuticals-announces-69-million-agreement-monetize.

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY



Source: Eagle Pharmaceuticals, Inc. 10-K, 2018 Annual Report, p. F-3; Eagle Pharmaceuticals, Inc. 10-K, 2019 Annual Report, p. F-3; Eagle Pharmaceuticals, Inc. 10-K, 2020 Annual Report, p. F-4; Eagle Pharmaceuticals, Inc. 10-K, 2021 Annual Report, p. F-4; Eagle Pharmaceuticals, Inc. 10-K, 2022 Annual Report, p. F-5; Eagle Pharmaceuticals, Inc. 10-K, 2023 Annual Report, p. F-4; EAGLEBAN-SA_00347447 at 00347450; and Eagle Pharmaceuticals, Inc. Condensed Consolidated Financial Statements As of March 31, 2025 and the Three-Month Periods Ended March 31, 2025 and 2024 ("Eagle March 2025 Financial Statement"), p. F-2.

101.    Dr. Vellturo does not analyze Eagle's financial condition or address the numerous events unrelated to the alleged infringement that led to a deterioration in the company's financial condition. Instead, he ignores these facts and claims that declining profits due to the alleged infringement caused Eagle to enter into the ██████████████ .

### B.  Dr. Vellturo's Analysis of Eagle's ████████████████████████████████ Is Flawed

102.    Even putting aside Dr. Vellturo's failure to establish that Apotex's alleged infringement caused Eagle to enter into the ██████████████ , his analysis of Eagle's ability to make the payments required under its loan agreement with JPMorgan but-for infringement is flawed. In support of his claim, he conducts an analysis of Eagle's cash on hand and cash flows in which he states that the

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

company's available cash was ███████████████████████████████████ ████████████████████ He then estimates Eagle's available cash in a but-for world "where Belrapzo and Bendeka are the only liquid bendamustine products on the market after January 2024."[228] Based on this analysis, he concludes that when the incremental but-for profits he ████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████

103.    Dr. Vellturo ignores relevant facts and instead claims that declining profits due to the alleged infringement caused Eagle ██████████████████████████ It is not clear which figures Dr. Vellturo compares in reaching this conclusion. Presumably, he compares the sum of Eagle's actual cash flows and cash on hand and the cumulative difference between its actual profits and his but-for profits as of Q1 2025 to the ████████████████████████████████████ ██████████████████████. If this is the comparison he performs, his analysis suffers from the following flaws:

- He ignores that Eagle's cash position was substantially reduced relative to prior years, leaving the company with limited liquidity and limited cash that was needed to fund ongoing operations rather than pay down debt.

- ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████

- He improperly includes profits on Belrapzo and Bendeka sales but-for the alleged infringement by Baxter, Slayback, and Apotex, rather than limiting the analysis to a but-for world involving only Apotex.[231]

- His calculation of Eagle's alleged lost profits is inflated because it incorporates the methodological flaws discussed in **Section VI**.

104.    Assuming I have identified his methodology, when his analysis is corrected for these flaws, the cumulative difference between but-for and actual profits changes from his estimate of ██████████ to

---

[227] Vellturo Report, ¶ 169.

[228] Ibid.

[229] Vellturo Report, ¶ 169; Vellturo Exhibit 19.

[230] EAGLEBEN-SA_00347447 at 7480.

[231] Vellturo Exhibit 19, note 2.

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY



105.    Additionally, in its more recent Q1 2025 financial statements (auditor's report signed October 6, 2025), Eagle confirmed that as of October 2025, its "cash and cash equivalents has significantly deteriorated from March 31, 2025."[234] Eagle acknowledged that it "had incurred operating losses for the last two years and continued to incur operating losses in 2025."[235] There is no discussion of alleged infringement as a *cause* of Eagle's financial condition, much less Apotex's alleged infringement specifically. Instead, the product it points to as a cause for Eagle's increasing losses is Pemfexy and it notes that there was "substantial doubt regarding the Company's ability to continue as a going concern."[236]

106.    Dr. Vellturo has not demonstrated any causal link between Apotex's alleged infringement and Eagle's decision to ███████████████████. When Dr. Vellturo's analysis is corrected, it does not support his conclusion that, but for the alleged infringement, Eagle would have had sufficient cash to remain in compliance with its ███████████████████

## VIII.    DR. VELLTURO'S REASONABLE ROYALTY ANALYSIS IS FLAWED

### A.    Overview

107.    Dr. Vellturo assesses a hypothetical licensing negotiation between the patentee and Apotex on the eve of the first alleged infringement, January 16, 2024, the date of issuance of the '214 patent.[237] At this point in time, Apotex had already been selling its liquid bendamustine product for nearly nine months and had also sold a powder bendamustine product. In his discussion of reasonable royalty, Dr. Vellturo relies on the *Georgia-Pacific* factors as the underlying economic framework. He claims to

---

[232] Exhibit C-9, Revised Vellturo Exhibit 19.

[233] Vellturo Exhibit 19.

[234] Eagle March 2025 Financial Statement, p. F-8.

[235] Ibid.

[236] Ibid. ("Increased competitive market dynamics indicated a substantial negative chance in the Company's market share and customer demand for PEMFEXY.")

[237] Vellturo Report, ¶ 176.

**HIGHLY CONFIDENTIAL**
**ATTORNEYS' EYES ONLY**

incorporated them into my discussions of other factors, no other adjustments are warranted with respect to Factor 14.

### E. Conclusion on Reasonable Royalty

147. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ compensated Eagle for a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Adopting a conservative approach—I conclude that a royalty rate of ▮▮▮ of net sales represents a reasonable royalty.

### F. Calculation of Reasonable Royalty Damages

148. Apotex's allegedly infringing sales amount to ▮▮▮▮▮▮▮▮ for the period from January 16, 2024, through November 2025. Applying a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

I declare under the penalty of perjury that the foregoing is true and correct.

Dated this 16th day of March, 2026 in Bonita Springs, Florida.

_____

Dr. George G. Korenko

# EXHIBIT 3
# FILED UNDER SEAL

# HIGHLY CONFIDENTIAL – CONTAINS HIGHLY CONFIDENTIAL INFORMATION OF SLAYBACK



**EAGLE PHARMACEUTICALS, INC, AND EAGLE SUB1 LLC.**

**V.**

**SLAYBACK PHARMA LLC AND AZURITY PHARMACEUTICALS, INC.**

Civil Action No. 1:24-cv-00065-JLH

United States District Court for the District of Delaware

---

# EXPERT REPORT OF JAMES MALACKOWSKI

**March 16, 2026**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**INTELLECTUAL CAPITAL EQUITY**

# 1    FIRM BACKGROUND AND QUALIFICATIONS

I am the Chief Intellectual Property Officer (CIPO) of J.S. Held LLC and the firm's Intellectual Property (IP) Practice Leader.  I am also a Co-founder and Senior Managing Director of Ocean Tomo, LLC, a part of J.S. Held.  Ocean Tomo provides Financial Expert, Management Consulting, Advisory, and Specialty Services focused on matters involving IP and other intangible assets.  Practice offerings address economic damage calculations and testimony; technical and intangible asset valuation; strategy and risk management consulting; debt and equity private placement; and IP brokerage.  With more than 100 offices globally, J.S. Held assists clients – corporations, insurers, law firms, governments, and institutional investors – on complex technical, scientific, and financial matters across all assets and value at risk.[1]

Along with Supreme Court Justice Stephen Breyer, I was inducted into the IP Hall of Fame in 2022, chosen by the IP Hall of Fame Academy from a long list of nominees put forward by the global IP community.  I was recognized by the Academy in 2022 with the Q. Todd Dickinson Award, which honors those who have made significant contributions to IP as a business asset.  My inclusion into the IP Hall of Fame follows annual recognition since 2007 by leading industry publications as one of the "World's Leading IP Strategists."  Significantly, I have been listed among "50 Under 45" by IP Law & Business™; included in the National Law Journal's inaugural list of 50 Intellectual Property Trailblazers & Pioneers; and named as one of "The Most Influential People in IP" by Managing Intellectual Property™.  I was named as one of 50 individuals, companies, and institutions that framed the first 50 issues of IAM Magazine as well as one of 60 leading global Economics Expert Witnesses by the same publication in 2014.  In 2011, I was selected by the World Economic Forum as one of less than twenty members of the Network of Global Agenda Councils to focus on questions of IP policy.  In 2013, I was inducted into the Chicago Area Entrepreneurship Hall of Fame by the Institute for Entrepreneurial Studies at the University of Illinois at Chicago College of Business Administration.  In 2018, I joined the Standards Development Organization Board of the Licensing Executives Society (USA & Canada), Inc. governing voluntary consensus-based professional practices that are guided in their development by the American National Standards Institute's (ANSI's) Essential Requirements.  LES standards are designed to encourage and teach consensus practices in many of the business process aspects of intellectual capital management.

On more than one hundred occasions, I have served as an expert in U.S. Federal Court, U.S. Bankruptcy Court, State Court, Court of Chancery, the Ontario Superior Court of Justice, the U.S. Patent and Trademark Office Patent Trial and Appeal Board, and global arbitrations on questions relating to intellectual property economics including the subject of valuation, reasonable royalty, lost profits, price erosion, commercial success, corrective advertising, creditor allocations, Hatch Waxman Act market exclusivity, business significance of licensing terms including RAND obligations, venture financing including expected risk / return, and equities of a potential injunction.  My experience extends to matters of general business valuation and commercial disputes, both domestic and foreign.  I have publicly addressed policy issues affecting

---

[1] J.S. Held, its affiliates and subsidiaries are not certified public accounting firm(s) and do not provide audit or attest services.  J.S. Held is not a law firm and does not provide legal advice.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY





Eagle's equity securities began trading over the Nasdaq stock exchange in February 2014.[45]  However, the Nasdaq exchange suspended the trading of Eagle's securities in October 2024, and they were subsequently delisted.[46]  The delisting of Eagle's securities was "due to [its] inability to regain compliance with Nasdaq Listing Rule 5250(c)(1)," requiring listing companies to file periodic financial reports containing audited financial statements.[47]  Eagle's securities are currently traded on the Over-the-Counter ("OTC") Expert Market.[48]

---

[42] EAGLEBEN-SA_00072300 – 400 at 301.

[43] https://ir.tevapharm.com/news-and-events/press-releases/press-release-details/2011/Teva-Completes-Acquisition-of-Cephalon/default.aspx.

[44] https://www.tevausa.com/news-and-media/press-releases/cms-establishes-unique-j-code-for-bendeka-bendamustine-hydrochloride-injection/.

[45] https://investor.eagleus.com/news-releases/news-release-details/eagle-pharmaceuticals-announces-pricing-initial-public-offering.

[46] https://www.nasdaq.com/press-release/eagle-announces-update-delisting-nasdaq-and-sec-deregistration-2024-11-15.

[47] https://www.nasdaq.com/press-release/eagle-announces-update-delisting-nasdaq-and-sec-deregistration-2024-11-15; https://listingcenter.nasdaq.com/rulebook/nasdaq/rules/nasdaq-5200-series.

[48] https://www.nasdaq.com/press-release/eagle-announces-update-delisting-nasdaq-and-sec-deregistration-2024-11-15.

[49] EAGLEBEN-SA_00347447-500 at 477.

[50] EAGLEBEN-SA_00347447-500 at 477.

[51] EAGLEBEN-SA_00347447-500 at 477.

[52] EAGLEBEN-SA_00347447-500 at 499.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTELLECTUAL CAPITAL EQUITY

██████████████████████████████████████████████████████████████████

## 4.2    Plaintiff – Eagle Sub1 LLC

Plaintiffs contend that Eagle Sub1 LLC is a Delaware limited liability company located at the same New Jersey address as Eagle.[54]  Eagle Sub1 LLC is a wholly owned subsidiary of Eagle.[55]

As indicated above, ███████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████

## 4.3    Defendant – Slayback Pharma LLC

Slayback is a Delaware corporation[59] formed in 2011 and based in Princeton, New Jersey.[60]  According to Slayback, it is a pharmaceutical R&D firm that conceptualizes and develops complex generic and specialty pharmaceutical drugs and products. Slayback contends that it "focuses on products that are complex to develop and/or manufacture, such as oil-in-water emulsions, a sterile long acting injectable using nano-spheres, sterile suspensions with particle physics, and hormonal products with cross-contamination issues."[61]

Slayback was acquired in September 2023 by Azurity from investors which included Kohlberg Kravis Roberts & Co. L.P. ("KKR") and Everstone Capital.[62]  Slayback is now a wholly owned subsidiary of Azurity.[63]

## 4.4    Defendant – Azurity Pharmaceuticals, Inc

Azurity is a Delaware corporation located in Woburn, Massachusetts.[64]  According to Azurity, it is a privately-held company committed to delivering innovative, high quality medicines for overlooked patients.[65]  Azurity maintains a global footprint operating in 50 countries with a diversified portfolio of more than 50 medicines

---

[53] Deposition of Christopher Krawtschuk, December 5, 2025, pp. 39 – 40; EAGLEBEN-SA_00346062-439 at 078.

[54] Second Amended Complaint, June 12, 2025, pp. 2 – 3.

[55] Second Amended Complaint, June 12, 2025, p. 3.

[56] EAGLEBEN-SA_00347447-500 at 499.

[57] EAGLEBEN-SA_00347447-500 at 499.

[58] Deposition of Christopher Krawtschuk, December 5, 2025, pp. 39 – 40; EAGLEBEN-SA_00346062-439 at 078.

[59] Defendants' Response to Second Amended Complaint, July 8, 2025, p. 4.

[60] https://pitchbook.com/profiles/company/169368-76#overview.

[61] https://www.capitaliq.spglobal.com/apisv3/spg-webplatform-core/company/profile?id=5322477.

[62] https://azurity.com/azurity-pharmaceuticals-acquires-slayback-pharma/.

[63] https://azurity.com/azurity-pharmaceuticals-acquires-slayback-pharma/.

[64] Defendants' Response to Second Amended Complaint, July 8, 2025, p. 4.

[65] https://azurity.com/.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

products unit sales sold by Slayback during the damages period."[590]  Vellturo Exhibit 18 contains Dr. Vellturo's allocation of his purported price erosion losses which allocates 44.9 percent to Vivimusta®.[591]  This is erroneous given that, as set forth above, Vivimusta® had little, if any, influence on the pricing of Belrapzo® or Bendeka® – especially relative to the influence of Treanda® generics and Apotex's and Baxter's bendamustine products.

### 12.3.4   Dr. Vellturo Fails to Consider Price Elasticity of Demand

For the same reasons set forth in Sections 12.2.2 and 12.2.3 concerning lost profits from lost unit sales, Dr. Vellturo's failure to consider price elasticity of demand renders his ███████ analyses defective and unreliable.  According to Dr. Vellturo, with respect to Belrapzo®, he calculates "the difference between Belrapzo's operating profit per unit in the but-for world and the actual world as Belrapzo ███████ unit in each quarter."[592]

The quarterly operating profit per unit figures of Dr. Vellturo's ███████ analyses are the same as his quarterly lost profits analyses.  Dr Vellturo assumes the same average revenue-per-unit price increases reflected in **Figures 19** and **20** above.  █████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████.

In so contending, Dr. Vellturo ignores the evidence of purchaser price sensitivity due in part to the CMS's quarterly publications of ASPs.  According to Dr. Brandt and Mr. Mathew, the ASPs of competing products are considered by hospitals and cancer clinics in their drug purchasing decisions, including decisions concerning bendamustine products.[594]  Notwithstanding this evidence, Dr. Vellturo fails to consider the influence of price elasticity of demand, which renders his price erosion analyses defective and unreliable.

### 12.4      Dr. Vellturo's Opinions Re: ██████████████████ are Defective and Unreliable

### 12.4.1   ████████████████████████████

█████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████

---

[590] Vellturo Report, February 6, 2026, p. 64.

[591] Vellturo Report, February 6, 2026, Exhibit 18.

[592] Vellturo Report, February 6, 2026, p. 64.

[593] Appendix 7.2.

[594] Discussion with Dr. Michael L. Brandt, March 6, 2026.  Discussion with Mr. Josh Mathew, March 6, 2026.

[595] Vellturo Report, February 6, 2026, p. 65.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTELLECTUAL CAPITAL EQUITY



[596] EAGLEBEN-SA_00347447-500 at 477.

[597] EAGLEBEN-SA_00347447-500.

[598] EAGLEBEN-SA_00347447-500 at 477.

[599] EAGLEBEN-SA_00347447-500 at 477.

[600] EAGLEBEN-SA_00347447-500 at 477.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**INTELLECTUAL CAPITAL EQUITY**

In response to Eagle's filing financial statements with the SEC that did not present fairly Eagle's financial condition and operating results, Nasdaq suspended the trading of Eagle's securities in October 2024, and Eagle's securities were subsequently delisted.[602]  The delisting of Eagle's securities was "due to [its] inability to regain compliance with Nasdaq Listing Rule 5250(c)(1)" requiring listing companies to file periodic financial reports containing audited financial statements.[603]  Eagle's securities are currently traded on the Over-the-Counter ("OTC") Expert Market.[604]

**12.4.3    Eagle Enters the ███████████████ to Repay the ████████████████**

[601] EAGLEBEN-SA_00347447-500 at 478.

[602] https://www.nasdaq.com/press-release/eagle-announces-update-delisting-nasdaq-and-sec-deregistration-2024-11-15.

[603] https://www.nasdaq.com/press-release/eagle-announces-update-delisting-nasdaq-and-sec-deregistration-2024-11-15; https://listingcenter.nasdaq.com/rulebook/nasdaq/rules/nasdaq-5200-series.

[604] https://www.nasdaq.com/press-release/eagle-announces-update-delisting-nasdaq-and-sec-deregistration-2024-11-15.

[605] EAGLEBEN-SA_00346062-439 at 066.

[606] EAGLEBEN-SA_00346062-439 at 078.

[607] EAGLEBEN-SA_00346062-439 at 082; EAGLEBEN-SA_00347447-500 at 499.

[608] EAGLEBEN-SA_00347447-500 at 478.

[609] Deposition of Christopher Krawtschuk, December 5, 2025, p. 15.

[610] Deposition of Christopher Krawtschuk, December 5, 2025, pp. 45 – 47.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**INTELLECTUAL CAPITAL EQUITY**

### 12.4.4    Dr. Vellturo's ███████████████ Opinions are Defective and Unreliable

Dr. Vellturo contends that "should Slayback be liable for damages Eagle incurred relating ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Dr. Vellturo's opinions related to the ███████████ are defective and unreliable for at least the following reasons.

#### 12.4.4.1    Dr. Vellturo Fails to Consider Eagle's Interest Expense Savings

Dr. Vellturo's analysis of the purported damages associated with the ███████████ apportioned to Slayback is contained in Exhibit 20 of the Vellturo Report.  As indicated therein, Eagle's purported losses total ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

The $███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

#### 12.4.4.2    Dr. Vellturo Incorrectly Cites Alleged Infringement as Reason ███████████

According to Dr. Vellturo, he understands ███████████████████████████████████████████████████████████████████████[2]  Dr. Vellturo contends that "in a world where Belrapzo and Bendeka are the only liquid bendamustine products on the market after January 2024, these but-for incremental ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Dr. Vellturo's contentions are erroneous.  First, Dr. Vellturo's calculations of incremental Belrapzo® profits and retained Bendeka® royalties of ███████████ suffer from the same limitations set forth above – including Dr. Vellturo's contention that ███████████ of Vivimusta® unit sales replaced Belrapzo® sales (**Figure 17**), Belrapzo® quarterly but-for unit sales increases as reflected in **Figure 18**, and Belrapzo® but-for average

---

[611] Vellturo Report, February 6, 2026, p. 67.
[612] Vellturo Report, February 6, 2026, p. 67.
[613] Vellturo Report, February 6, 2026, p. 66.
[614] Eagle Consolidated Financial Statements as of March 31, 2025, p. F-2; Vellturo Report, February 6, 2026, Exhibit 19.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**INTELLECTUAL CAPITAL EQUITY**

revenue per unit of ████ as reflected in **Figure 19**. Thus, for example, if it is determined that 91.1 percent of Vivimusta® sales <u>did not</u> replace Belrapzo® sales, Dr. Vellturo's opinions concerning the ████████████ are defective and unreliable.

Second, Dr. Vellturo fails to recognize that, even if Eagle had available an additional ███████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

Third, Dr. Vellturo fails to even acknowledge that ████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

### 12.4.4.3    Dr. Vellturo's Allocation of Purported ██████████ Losses is Erroneous

███████████████████████████████████████████

███████████████████████████████████████████

As set forth above, Dr. Vellturo's purported loss allocation is erroneous because Vivimusta® had little, if any, influence on the sales or pricing of Belrapzo® – especially relative to the influence of Treanda® generics and Apotex's and Baxter's bendamustine products.

## 12.5    Dr. Vellturo Fails to Properly Evaluate Eagle License Agreements

### 12.5.1    Dr. Vellturo Fails to Apportion the Royalty of the ████████████████

Dr. Vellturo fails to properly evaluate the influence of the ██████████████████████ on the hypothetical negotiated license for rights to the Asserted Patents. According to Dr. Vellturo:

> [R]ecognizing that the goal of the reasonable royalty damages exercise is to compensate the patentee for the accused infringer's use of the patented invention(s), I conservatively adopt ███████████████████████████████████████ Further, I

---

615 ████████████████████████

616 Vellturo Report, February 6, 2026, Exhibit 19; Eagle Consolidated Financial Statements as of March 31, 2025, p. F-2.

617 Eagle Consolidated Financial Statements as of March 31, 2025, p. F-2.

618 Vellturo Report, February 6, 2026, p. 67.

619 Vellturo Report, February 6, 2026, Exhibit 18.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**INTELLECTUAL CAPITAL EQUITY**

## 14    SIGNATURE

Respectfully submitted,

_____                    March 16, 2026
James E. Malackowski                        _____
                                            Date

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that true and correct copies of the foregoing documents were caused to be served on July 1, 2026, on the following counsel in the manner indicated:

**VIA EMAIL:**
Kenneth L. Dorsney
Cortlan S. Hitch
MORRIS JAMES LLP
3205 Avenue North Boulevard, Suite 100
Wilmington, DE 19803
kdorsney@morrisjames.com
chitch@morrisjames.com

Deepro R. Mukerjee
Lance A. Soderstrom
KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Center
New York, NY 10020-1605
Deepro.mukerjee@katten.com
Lance.soderstrom@katten.com

Jitendra Malik
Joseph M. Janusz
KATTEN MUCHIN ROSENMAN LLP
550 South Tyron Street, Suite 2900
Charlotte, NC 28202
Jitty.malik@katten.com
Joe.janusz@katten.com

Christopher B. Ferenc
KATTEN MUCHIN ROSENMAN LLP
1919 Pennsylvania Avenue, NW Suite 800
Washington, DC 20006
Christopher.ferenc@katten.com

Rachel L. Schweers
Matthew T. Messina
KATTEN MUCHIN ROSENMAN LLP
525 W. Monroe Street
Chicago, IL 60661
Rachel.schweers@katten.com
Matthew.messina@katten.com

*Attorneys for Defendants Apotex, Inc. and Apotex Corp.*

ME1\61693533.v1

Neal C. Belgam
Daniel A. Taylor
SMITH KATZENSTEIN & JENKINS LLP
1000 West Street, Suite 1501
Wilmington, DE 19801
nbelgam@skjlaw.com
dtaylor@skjlaw.com

Jason A. Lief
Alan H. Pollack
Audrey R. Sparschu
WINDELS MARX LANE & MITTENDORF, LLP
156 West 56th Street
New York, NY 10019
jlief@windelsmarx.com
apollack@windelsmarx.com
asparschu@windelsmarx.com

Andrew Miller
Ajay Kayal
Robyn Ast-Gmoser
Kiersten Fowler
Daniel Forchheimer
WINDELS MARX LANE & MITTENDORF, LLP
One Giralda Farms
Madison, NJ 07940
amiller@windelsmarx.com
akayal@windelsmarx.com
rast-gmoser@windelsmarx.com
kfowler@windelsmarx.com
dforchheimer@windelsmarx.com

*Attorneys for Defendants Slayback Pharma LLC and Azurity Pharmaceuticals, Inc.*

*/s/ Alexandra M. Joyce*
Alexandra M. Joyce (#6423)

ME1\61693533.v1